NIGHT BOX
FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JUL 02

CASE NO. 02-14008-CIV-MIDDLEBROOKS

CLERK, USDC / SDFL

IN RE: NITRO LEISURE PRODUCTS, LLC

_____/

## NOTICE OF FILING DECLARATION

Acushnet Company gives notice that it has filed the accompanying Declaration of Richard F. Davis in support of its Response in Opposition to Nitro Leisure Products LLC's Motion to Disqualify Greenberg Traurig

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Notice and of accompanying declaration of Richard F. Davis was served by Federal Express this 1st day of July, 2002 on Steven E. Siff, McDermott, Will & Emery, 201 South Biscayne Boulevard, 22nd Floor, Miami, Florida 33131-4336 and Mark W. Yocca, Yocca Patch & Yocca, LLP, 19900 MacArthur Boulevard, Suite 650, Irvine, California 92612.

GREENBERG TRAURIG, P.A.
885 Third Avenue
New York, New York 10022
Telephone: (212) 801-2100
Facsimile: (212) 688-2449

Harley I. Lewin
  lewinh@gtlaw.com
Daniel A. Ladow
  ladowd@gtlaw.com
G. Roxanne Elings
  elingsr@gtlaw.com
Todd S. Sharinn
  sharinnt@gtlaw.com

1
REEDER & REEDER P.A.

CASE NO. 02-14008-CIV-MIDDLEBROOKS

        REEDER & REEDER P.A.
        675 W. Indiantown Road, Suite 201
        Jupiter, Florida 33458
        Tel: 561-575-9750
        Fax: 561-575-9765

        By: /s/ Martin Reeder
        L. Martin Reeder, Jr., Esq.
        Florida. Bar No. 308684

*Attorneys for Acushnet Company*

2
REEDER & REEDER P.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 02-14008 CIV-MIDDLEBROOKS

IN RE: NITRO LEISURE PRODUCTS, LLC.
_____/

    I, Richard F. Davis, under oath, depose and state as follows:

    1.    I am the Managing Shareholder in the Los Angeles office of the law firm of Greenberg Traurig, LLP ("GT"). I am also a member in good standing of the bar of the State of California as well as the bar of the District of Columbia, and am admitted to practice before the United States Tax Court and the United States Supreme Court. I concentrate my practice in the areas of Real Estate, Corporate and Securities, Tax and Golf and Resort issues.

    2.    While at Greenberg Traurig, I have represented Wellington Capital Partners Inc., a Delaware corporation, and its affiliates, ("Wellington Capital"), since as early as June of 2000. My representation of Wellington Capital has consisted of representing various entities and parties in connection with the purchase, sale and refinancing of real property. Greenberg Traurig renders its bills in connection with these services to Wellington Capital.

    3.    During my representation, I took direction from the Chief Executive Officer of Wellington Capital, Amin J. Khoury. In addition, I have, on occasion, represented Amin J. Khoury, individually, to the extent that I have provided legal opinions to lenders regarding loans where Mr. Khoury has been a guarantor for Wellington Capital. A copy of one such letter is annexed hereto as Exhibit A. The bills for this work were rendered to Wellington Capital as stated above.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Los Angeles, CA on July 1, 2002.

*[signature]*

Richard F. Davis

**EXHIBIT A**



February 12, 2002

**VIA FACSIMILE AND
FEDERAL EXPRESS**

Principal Life Insurance Company
801 Grand Avenue
Des Moines, Iowa 50392-0490

    Re:    Loan to Charlotte Wellington Partners, L.P. by Principal Life Insurance Company
             in the principal amount of $14,300,000

Ladies and Gentlemen:

    We have acted as counsel to Charlotte Wellington Partners, L.P., a Delaware limited partnership ("Borrower") and Amin J. Khoury ("Guarantor"), in connection with that certain loan (the "Loan") in the principal amount of up to Fourteen Million Three Hundred Thousand Dollars ($14,300,000) to be made to Borrower by Principal Life Insurance Company, an Iowa corporation ("Lender") pursuant to the "Loan Documents" (as described below) and in such capacity we have been asked to render the opinion hereinafter stated.

### 1. MATTERS REVIEWED.

    1.1.   <u>Documents</u>. In rendering this opinion, we have reviewed originals or copies of the following documents and have made no other investigation or inquiry except as expressly set forth herein:

        1.1.1.   <u>Loan Documents</u>. The following documents (the "Loan Documents"):

            (1)     That certain Secured Promissory Note in the original principal amount of Fourteen Million Three Hundred Thousand Dollars ($14,300,000), dated as of February 12, 2002, from Borrower to Lender;

            (2)     That certain Deed of Trust, Security Agreement and Assignment of Rents dated as of February 12, 2002, by Borrower for the benefit of Lender;

            (3)     That certain Assignment of Leases and Rents dated as of February 12, 2002, from Borrower to Lender;

Principal Life Insurance Company
February 12, 2002
Page 2

    (4)    That certain Environmental Indemnity Agreement dated as of February 12, 2002, by Borrower in favor of Lender;

    (5)    That certain Escrow Security Agreement dated as of February 12, 2002, by Borrower and Lender; and

    (6)    That certain Guaranty (the "Guaranty") dated as of February 12, 2002, by Amin J. Khoury (the "Guarantor") for the benefit of Lender.

    1.1.2.    Organizational/Authorization Documents. The following documents (the "Organizational Documents"):

    (1)    That certain Agreement of Limited Partnership of Charlotte Wellington Partners, L.P. made and entered into as of August 26, 1999, by and among Wellington GP I, Inc., a Delaware corporation ("GP"), and Wellington Capital Partners, L.P., a Delaware limited partnership, as amended and restated by that certain agreement captioned "Amended and Restated Agreement of Limited Partnership of Charlotte Wellington Partners, L.P." made and entered into as of February 7, 2002, to be effective as of February 11, 2002, certified as true and correct and in full force and effect by the secretary of GP, the general partner of Borrower, as of February 12, 2002;

    (2)    That certain Certificate of Limited Partnership of Borrower dated July 26, 1999 and filed with the Delaware Secretary of State on July 26, 1999, certified as true and correct by the Delaware Secretary of State on January 18, 2002;

    (3)    That certain Certificate of Foreign Limited Partnership of Borrower dated July 26, 1999 and filed with the North Carolina Secretary of State on August 3, 1999, certified as true and correct by the North Carolina Secretary of State on January 22, 2002;

    (4)    That certain Certificate of Authorization of Borrower issued by the North Carolina Secretary of State on January 22, 2002;

    (5)    That certain Certificate of Incorporation of GP dated January 25, 1999, filed with the Delaware Secretary of State on January 26, 1999, certified as true and correct by the Delaware Secretary of State on January 18, 2002;

    (6)    Those certain By-Laws of GP certified as true and correct by the Secretary of Borrower as of February 12, 2002;

    (7)    That certain Certificate of Good Standing of GP issued by the Delaware Secretary of State on January 22, 2002;

    (8)    That certain Application for Certificate of Authority of GP dated July 29, 1999 and filed with the North Carolina Secretary of State on August 3, 1999, certified as true and correct by the North Carolina Secretary of State on January 22, 2002;

WLA-SRV01\124257\04\2702.04000

GREENBERG TRAURIG, LLP

Principal Life Insurance Company
February 12, 2002
Page 3

(9) That certain Certificate of Authorization of GP issued by the North Carolina Secretary of State on January 22, 2002;

(10) That certain Certificate of Incumbency for GP, dated February 7, 2002;

(11) Those certain Resolutions of the Board of Directors of GP, dated February 7, 2002, authorizing GP, in its capacity as general partner of Borrower, to execute the Loan Documents and certified as true and correct by the Secretary of GP as of February 12, 2002.

## 2. ASSUMPTIONS.

We have made the following assumptions with your approval and without independent investigation that:

(1) All signatures on the documents submitted to us are genuine, all documents submitted to us as originals are authentic, and all documents submitted to us as copies or drafts conform with the original executed documents.

(2) All natural persons who are involved on behalf of Borrower have sufficient legal capacity to enter into and perform the obligations of Borrower under the Loan Documents.

(3) The execution and delivery of the Loan Documents is free from any fraud, misrepresentation, undue influence, duress, mutual mistake, or criminal activity.

(4) The Organizational Documents and the exhibits thereto and the certificates given with respect to the Organizational Documents are still true and correct, without amendment or modification, as if dated as of the date hereof.

## 3. OPINION.

On the basis of the foregoing and solely in reliance thereon, and subject to the qualifications hereinafter stated, we advise you that as of the date hereof, it is our opinion that:

(1) Borrower is a limited partnership duly formed and validly existing under the laws of the State of Delaware, is in good standing under the laws of Delaware, has the power and authority to own, lease and operate its properties and carry on its business as now conducted, and is duly qualified to transact business under the name Charlotte Wellington Partners, Limited Partnership and is in good standing in the State of North Carolina.

(2) GP is a corporation duly incorporated and validly existing under the laws of the State of Delaware, is in good standing under the laws of Delaware, has the power and authority to act as the general partner of Borrower and is the general partner of Borrower, has taken all necessary corporate action to execute and deliver the Loan Documents on behalf of Borrower, which execution and delivery does not conflict with GP's articles of incorporation or

WLA-SRVOT\2\CST\ON\2702.040200

GREENBERG TRAURIG, LLP

Principal Life Insurance Company
February 12, 2002
Page 4

bylaws, and has been issued a certificate of authority to transact business and is in good standing in the State of North Carolina.

(3) The Loan Documents (other than the Guaranty) have been duly authorized by all necessary actions, executed and delivered by GP in its capacity as the general partner of Borrower.

(4) The execution and delivery of the Loan Documents (other than the Guaranty) and the performance by the Borrower of its obligations thereunder are within the power of Borrower and do not and will not violate or constitute a default under, or conflict with or violate any provisions of, the Borrower's Certificate of Limited Partnership.

(5) The Guaranty has been duly authorized, executed and delivered by Guarantor.

## 4. LIMITATION ON USE AND SCOPE OF OPINION.

The foregoing opinion applies only insofar as the general corporation laws of the State of Delaware and the State of North Carolina may be concerned and we express no opinion with respect to the laws of any other jurisdiction. No responsibility is undertaken for any future legislative changes or judicial decisions.

This letter is provided as a legal opinion and not as a guaranty or warranty. It is limited to the matters expressly set forth herein, and no opinion is implied or may be inferred beyond the opinions expressly so stated. This letter is rendered only to Lender its successors and assigns and any subsequent holder of the Note and is solely for their benefit in connection with the Loan. This opinion may not be relied upon by any other person or for any other purpose without our written consent.

Very truly yours,

Greenberg Traurig, LLP

*Greenberg Traurig LLP*

WLA-SKV01\32257\v01\02702.040000

GREENBERG TRAURIG, LLP

THIS GUARANTY (as the same may from time to time hereafter be modified, supplemented or amended, the "Guaranty") is made as of February __12__, 2002, by AMIN J. KHOURY, an individual, having an office at _____ ("Guarantor"), in favor of PRINCIPAL LIFE INSURANCE COMPANY, an Iowa corporation, having a principal place of business and post office address at c/o Principal Capital Management, LLC, 801 Grand Avenue, Des Moines, Iowa 50392-1450 ("Lender").

### RECITALS:

Lender has agreed to make a loan (the "Loan") in the original principal sum of Fourteen Million Three Hundred Thousand and 00/100 Dollars ($14,300,000.00) (the "Loan Amount") to Charlotte Wellington Partners, L.P., a Delaware limited partnership ("Borrower"); and

The Loan is evidenced by Borrower's secured promissory note made payable and delivered to Lender (as the same may from time to time hereafter be modified, amended, supplemented, extended or consolidated in writing, and any note(s) issued in exchange therefor or replacement thereof, the "Note") and further evidenced and secured by a "Mortgage" (it being agreed that "Mortgage" as hereinafter used shall be construed to mean "mortgage" or "deed of trust" or "trust deed" or "deed to secure debt" as the context so requires) on certain real estate located in Mecklenburg County, North Carolina, together with all existing improvements constructed thereon, said Premises being more particularly described in said Mortgage, and an Assignment of Leases ("Assignment of Leases"); and

In connection with the Loan, the Borrower has also executed that certain Environmental Indemnity ("Environmental Indemnity") for the benefit of Lender (the Note, Environmental Indemnity, Mortgage and Assignment of Leases and all other instruments or agreements by which the Loan is evidenced or secured are hereinafter collectively referred to as the "Underlying Instruments"); and

It is a condition of Lender's agreement to make the Loan that Guarantor be unconditionally liable for and personally guarantee the payment and performance of certain liabilities and obligations of the Borrower under the Underlying Instruments upon the terms and conditions as are hereinafter set forth; and

WHEREAS, Guarantor is financially interested in Borrower and is materially benefited by the consummation of the Loan and has agreed to unconditionally and personally guarantee the payment and performance of certain liabilities and obligations of Borrower under the Underlying Instruments upon the terms and conditions as are hereinafter set forth.

-2-

NOW, THEREFORE, in order to induce Lender to make the Loan to Borrower, Guarantor intending to be legally bound, hereby makes the following representations and warranties to the Lender and hereby covenants and agrees with the Lender as follows:

1. The Guarantor absolutely, irrevocably and unconditionally guarantees to the Lender payment and the full, faithful and timely performance of any and all liabilities and obligations of Borrower whether now existing or hereafter incurred under the Environmental Indemnity and paragraph 9 of the Note (all of which payments, liabilities and obligations are hereinafter collectively referred to as the "Guaranteed Obligations").

2. The Guarantor absolutely, irrevocably and unconditionally waives notice of acceptance of this Guaranty and notice of any payment, liability or obligation to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of such liabilities under this Guaranty or any of the Underlying Instruments creating the Guaranteed Obligations and any suit or taking other action by the Lender against, and any other notice to, any party liable thereon or any property which may be security therefor. The Guarantor further waives any right conferred by N.C.G.S. §26-7 et seq.

3. The Lender may at any time and from time to time without the consent of, or notice to, the Guarantor, without incurring any responsibility to the Guarantor and without impairing or releasing any of the obligations of the Guarantor hereunder, upon or without any terms or conditions and in whole or in part:

    (a) renew, alter or change the interest rate, manner, time, place or terms of payment or performance of any of the Guaranteed Obligations, or any liability incurred directly or indirectly in respect thereof, whereupon the guaranty herein made shall apply to the Guaranteed Obligations as so changed, extended, renewed or altered;

    (b) sell, exchange, release, surrender, and in any manner and in any order realize upon or otherwise deal with any property at any time directly and absolutely assigned or pledged or mortgaged to secure the Guaranteed Obligations or any liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof;

    (c) exercise or refrain from exercising any rights against Borrower or any other person (including the Guarantor) or otherwise act or refrain from acting with regard to the Underlying Instruments, Guaranteed Obligations or this Guaranty;

-3-

(d) settle or compromise any of the Guaranteed Obligations, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or subordinate the payment of all or any part thereof to the payment of any liability of Borrower (whether or not then due) to creditors of Borrower other than the Lender and the Guarantor;

(e) apply any sums in whatever manner paid or realized to any liability or liabilities of Borrower to the Lender regardless of what liability or liabilities of Borrower remain unpaid;

(f) consent to or waive any breach of or any act, omission or default under the Underlying Instruments or otherwise amend, modify or supplement any of such instruments or agreements; and/or

(g) sell, convey or assign, whether into a securitized transaction or otherwise, all or any part of Lender's interest in this Guaranty and the Underlying Instruments.

4. (a) No invalidity, irregularity or unenforceability of all or any part of the Underlying Instruments, the Guaranteed Obligations or this Guaranty, or of any security therefor, shall affect, impair or constitute a defense to this Guaranty. This Guaranty is a direct and primary obligation of the Guarantor, and Guarantor's obligations hereunder are not as a surety. This is a guaranty of payment and performance, and not merely a guaranty of collection.

(b) Guarantor acknowledges and agrees that this Guaranty and Guarantor's obligations with respect to payments and performance under the Environmental Indemnity shall remain in full force and effect, notwithstanding the fact that the Note and payments due under the other Underlying Instruments have been paid in full.

5. (a) Notwithstanding any payment or payments made by the Guarantor hereunder, the Guarantor will not assert or exercise any right of the Lender or of such Guarantor against Borrower to recover the amount of any payment made by such Guarantor to the Lender by way of subrogation, reimbursement, contribution, indemnity or otherwise arising by contract or operation of law, and Guarantor shall not have any right of recourse to or any claim against assets or property of Borrower, whether or not the obligations of Borrower have been satisfied, all of such rights being herein expressly waived by Guarantor. The provisions of this paragraph shall survive the termination of this Guaranty, and any satisfaction and discharge of Borrower by virtue of any payment, court order or any applicable law.

-4-

(b) Notwithstanding the provisions of Section 5(a), the Guarantor shall have and be entitled to all rights of subrogation otherwise provided by applicable law in respect of any payment Guarantor may make or be obligated to make under this Guaranty, and to assert and enforce the same, in each case on and after, but at no time prior to, the date (the "Subrogation Trigger Date") which is 91 days after the date on which all obligations under the Underlying Instruments shall have been paid or performed in full, if and only if the existence of Guarantor's rights under this Section 5(b) would not make the Guarantor a creditor (as defined in the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101 et seq., and the regulations adopted and promulgated pursuant thereto) of Borrower in any insolvency, bankruptcy, reorganization or similar proceeding commenced on or prior to the Subrogation Trigger Date.

(c) In the event that the Guarantor shall advance or become obligated to pay any sums with respect to any obligation hereby guaranteed or in the event that for any reason whatsoever the Borrower or any subsequent owner of the collateral securing the Loan is now, or shall hereafter become, indebted to the Guarantor, Guarantor agrees that the amount of such sums and of such Indebtedness together with all interest thereon, shall at all times be subordinate as to the lien, time of payment and in all other respects, to all sums, including principal, interest and other Indebtedness, at any time owing to the Lender under any of the Underlying Instruments. Nothing herein contained is intended or shall be construed to give to the Guarantor any right to participate in any way in the right, title or interest of the Lender in or to the collateral securing the Loan, notwithstanding any payments made by the Guarantor under this Guaranty, all such rights of participation being hereby expressly waived and released.

6. The Guarantor agrees that to the extent that Borrower makes a payment or payments to Lender, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required, for any of the foregoing reasons or for any other reasons, to be repaid or paid over to a custodian, trustee, receiver or any other party under any bankruptcy act, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the obligation or part thereof intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been made.

7. The Guarantor makes the following representations and warranties which shall survive the execution and delivery of this Guaranty:

(a) Guarantor has and, until the Indebtedness is paid in full, will continue to have the requisite power to execute, deliver and perform its obligations under this Guaranty.

-5-

(b) The execution, delivery and performance of this Guaranty (i) are within the applicable powers of the Guarantor; (ii) have been authorized by all requisite action; (iii) have received all necessary approvals and consents, corporate, governmental or otherwise; (iv) does not and will not violate, conflict with, result in a breach of or constitute (with notice or lapse of time, or both) a default under any provision of law, any order or judgment of any court or governmental authority, the articles of incorporation, by-laws, partnership, operating or trust agreement, or other governing instrument of Guarantor, or any indenture, agreement or other instrument to which Guarantor is a party or by which Guarantor or any of Guarantor's assets is or may be bound or affected; (v) does not and will not result in the creation or imposition of any lien, charge or encumbrance whatsoever upon any of Guarantor's assets; and (vi) does not and will not require any authorization or license from, or any filing with, any governmental authority or other body.

(c) This Guaranty constitutes the legal, valid and binding obligations of Guarantor, enforceable against Guarantor in accordance with its terms, except as may be limited by (i) bankruptcy, insolvency, reorganization or other similar laws affecting the rights of creditors generally, and (ii) general principles of equity (regardless of whether considered in a proceeding in equity or at law).

8. Guarantor and Borrower are separate and distinct entities.

9. Guarantor is related and/or affiliated with Borrower, has personal knowledge of and is familiar with Borrower's business affairs, books and records and has the ability to influence Borrower's financial decisions. Guarantor represents that Borrower is in sound financial condition as of the date of this Guaranty.

10. Nothing herein contained shall in any manner affect the lien or priority of the Mortgage, and upon the occurrence of an Event of a Default, the Lender may invoke any remedies it may have under the Underlying Instruments, or this Guaranty, either concurrently or successively and the exercise of any one or more of such remedies shall not be deemed an exhaustion of such remedy or remedies or a waiver of any other remedy or remedies and shall not be deemed an election of remedies. The Guarantor hereby specifically waives any defense to its performance under this Guaranty based upon an election of remedies by Lender, including but not limited to an election to foreclose by nonjudicial sale under any deed of trust or security agreement and pursue any other remedy which destroys, lessens or otherwise affects the Guarantor's subrogation rights and/or its rights to reimbursement from or to proceed against Borrower or any other person, when resulting from the judicial or nonjudicial foreclosure (under any deed of trust or security agreement) or the selling or otherwise disposing of or collecting or applying any property, real or personal, securing the

-6-

Note, or otherwise. The exercise by the Lender of any such remedies shall not release or discharge the Guarantor from its obligations hereunder unless and until the full amount of the Indebtedness evidenced by the Note and secured as aforesaid has been fully paid and satisfied, and any such release or discharge shall be subject to the provisions of paragraph 4(b) hereof.

11. This Guaranty shall remain in full force and effect until all obligations of the Borrower under the Underlying Instruments have been satisfied in full and are no longer subject to disgorgement under any applicable state or federal creditor rights or bankruptcy laws. No delay on the part of the Lender in exercising any options, powers or rights, or the partial or single exercise thereof, shall constitute a waiver thereof. No waiver of any rights hereunder, and no modification or amendment of this Guaranty, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, and each such waiver (if any) shall apply only with respect to the specific instance involved and shall in no way impair the rights of the Lender or the obligations of the Guarantor to the Lender in any other respect at any other time. This Guaranty and the rights and obligations of the Lender and of the Guarantor hereunder shall be governed and construed in accordance with the laws of the state of North Carolina, without regard to its conflicts of law principles and this Guaranty is binding upon the Guarantor, Guarantor's heirs, personal representatives and permitted successors or assigns, and shall inure to the benefit of the Lender and its successors or assigns.

Notwithstanding the above, Lender agrees to release the Guarantor from any further obligations under the Guaranty (excluding Guarantor's obligations to indemnify Lender for environmental loss or damage and Guarantor's obligations in the event of fraud or misrepresentation) provided: (a) Borrower's obligations are assumed by a proposed purchaser on such terms and conditions and evidenced by such documents as are acceptable to Lender as set forth in the Deed of Trust; (b) Guarantor's obligations are assumed by individuals or entities acceptable to Lender as set forth in the Deed of Trust; (c) all obligations of Borrower under the Loan Documents have been satisfied in full up to and including the date of the approved third party transfer; and (d) Borrower's obligations arising prior to completion of an approved third party transfer are no longer subject to disgorgement under any applicable state or federal creditor rights or bankruptcy laws. Guarantor's obligation to indemnify Lender for environmental loss or damage does not apply to hazardous material that exists on or is discharged from the Premises due to acts or omissions occurring after Borrower or any person or entity in any way related to Borrower no longer holds title to or has any interest in the Premises.

12. The Guarantor acknowledges that copies of the Underlying Instruments have been made available to the Guarantor and that the Guarantor is familiar with their contents.

-7-

Guarantor affirmatively agrees that upon any Permitted Transfer effected in accordance with the provisions of the Underlying Instruments, it shall not be necessary for Guarantor to reaffirm its continuing obligations under this Guaranty, but Guarantor will do so upon request by Lender.

13. Each notice, consent, request or other communication under this Guaranty or any other Loan Document (each a "Notice") which any party hereto may desire or be required to give to the other shall be deemed to be adequate and sufficient notice if given in writing and service is made by either (i) registered or certified mail, postage prepaid, in which case such notice shall be deemed to have been received three (3) business days following deposit to U.S. mail; or (ii) nationally recognized overnight air courier, next day delivery, prepaid, in which case such notice shall be deemed to have been received one (1) business day following delivery to such nationally recognized overnight air courier. All Notices shall be addressed to the Guarantor at its address given on the first page hereof and Lender shall exercise its best efforts to address a copy to Greenberg Traurig, LLP, 2450 Colorado Avenue, Suite 400E, Santa Monica, California, 90404, Attention: Richard F. Davis, Esq. but Lender shall incur no liability or responsibility and Borrower shall assert no defense against Lender if Lender fails to send such duplicate notice, or to Lender at c/o Principal Capital Management, LLC, 801 Grand Avenue, Des Moines, Iowa 50392-1450, Attn: Commercial Real Estate Servicing, Loan No. 753114, or to such other place as any party may by notice in writing to the other parties designate as a place for service of notice. Borrower shall not be permitted to designate more than two places for service of Notice concurrently.

14. Each of the Guarantors (if more than one) whose signature appears below shall be deemed to be bound by the provisions of this Guaranty and the Guaranteed Obligations, whether each signature was affixed at the same or different times, and the term "Guarantor" as used herein shall be deemed to refer to each individually, as well as collectively, and each of the undersigned shall be jointly and severally liable for the Guaranteed Obligations hereunder, both personally and with recourse, irrespective of the recourse or non-recourse nature of the Underlying Instruments. Guarantor agrees that if this Guaranty is placed in the hands of an attorney for enforcement, Guarantor will reimburse Lender all expenses incurred, including attorney's fees.

15. This Guaranty may be executed in counterparts, each of which shall be deemed an original; and such counterparts when taken together shall constitute but one agreement.

16. Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Underlying Instruments.

17. The Guaranteed Obligations hereunder are prior and superior to the obligations due under the Unsecured Partner Notes as defined in the Mortgage.

-8-

(Signatures on next page)

-9-

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be duly executed and delivered as of the date first set forth above.

___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___  
(Guarantor's Social Security Number)

_/s/ Amin Khoury_  
Amin J. Khoury (Guarantor)

DW\ag\s:\753114\gty  
01/14/02