UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-14008-CIV-MIDDLEBROOKS

IN RE NITRO LEISURE PRODUCTS, L.L.C.

_____/

FILED by WGG D.C.

AUG 14 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

ORDER GRANTING MOTION TO DISQUALIFY

This Cause comes before the Court upon the Motion to Disqualify Greenberg Traurig (DE # 83), filed by Plaintiff Nitro Leisure Products, LLC on June 17, 2002. This motion is ripe for resolution and the Court took oral argument on it on August 7, 2002. Upon review of the record and consideration of the arguments of counsel, I conclude that the Motion should be GRANTED and that the law firm of Greenberg Traurig P.A. should be disqualified as counsel of record for Acushnet Company.

This action was filed by Nitro Leisure Products, LLC ("Nitro") against Acushnet Company ("Acushnet") for violations of the Lanham Act (15 U.S.C. § 1051 *et seq.*), the Sherman Act (15 U.S.C. § 2) and Florida common law. Nitro alleges that Acushnet has sought to destroy its used golf ball business by engaging in false advertising, product disparagement, unfair competition and by attempting to eliminate Nitro as a competitor. Acushnet initially filed a trademark and patent infringement action in the United States District Court, Central District of California on January 15, 2002. That action was transferred to this Court and filed under Case No. 02-14091. By Order (DE # 33) dated April 30, 2002, the Court consolidated this action with

1

Case No. 02-14091. Acushnet has filed a number of counterclaims in this action alleging violations of federal and state trademark laws and patent infringement.

In its Motion for Disqualification, Nitro asserts that Greenberg P.A. ("Greenberg") is its current attorney in a matter currently pending in Georgia and that Greenberg did not obtain its consent before accepting representation of Acushnet. Nitro additionally asserts that Greenberg currently represents Amin J. Khoury and Robert Khoury whose interests are potentially adversely affected in this matter as they are principals of Nitro. Greenberg contends that it no longer represents Nitro and that the subject matter of this litigation does not adversely affect its representation of Amin J. Khoury and Robert Khoury.

The Court recognizes that an attorney's and a law firm's ethical obligations to their current and former clients are matters of significant importance. While disqualification is an extraordinary remedy, doubts regarding such issues are generally resolved in favor of disqualification. *Hilton v. Barnett Banks, Inc.*, No. 94-1036-Civ-T24(A), 1994 WL 776971 (M.D. Fla. 1994); *McPartland v. ISI Investment Services, Inc.*, 890 F.Supp. 1029, 1030-31 (M.D. Fla. 1995). The attorneys appearing in this matter are bound by the Rules Regulating the Florida Bar. S.D. Fla. L. R. 11.1(C). The parties dispute whether this issue is governed by Rule 4-1.7 or 4-1.9 of the Rules of Professional Conduct. It is the Court's determination that Rule 4-1.7 governs this issue as Nitro Leisure, Amin J. Khoury and Robert Khoury were current clients of Greenberg when Greenberg started its representation of Acushnet in this matter.

Rules 4-1.7 and 4-1.9 address conflicts of interest between a lawyer and client. Specifically, Rule 4-1.7 governs the lawyer's responsibility with respect to a current client and Rule 4-1.9 governs the lawyers responsibility with respect to a former client. Rule 4-1.7 states in

2

pertinent part as follows:

> A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
> (1) the lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and
> (2) each client consents after consultation.

Rule 4-1.9 provides in pertinent part that:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Rule 4-1.10 imputes disqualification of a lawyer subjected to either of the above rules to the law firm with which that lawyer is associated.

The requirement that an attorney should not take on a matter that conflicts with that of a current client is an important reminder of the attorney's obligation to his or her client. As stated in the comment to Rule 4-1.7 "as a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client's or another client's interests without the affected client's consent." In addition to the duty of loyalty owed to a client, the prohibition against representation of adverse interests against a current client is premised upon the principle that "a lawyer should never place himself in a position where a conflicting interest may, even inadvertently affect the obligations of an ongoing professional relationship." *Hilton v. Barnett Banks, Inc.*, 1994 WL 776971, *3. Although the Rules of Professional Conduct do not specifically counsel against an appearance of impropriety, the Florida courts recognize the duty upon an attorney to avoid the appearance of impropriety in addressing conflict of interest issues. *See State Farm Mutual Auto Ins. Co. v. K.A.W.*, 575 So.2d 630, 633-34 (Fla. 1991); *Junger*

3

*Utility & Paving Co. v. Myers*, 578 So.2d 1117 (Fla. 1st D.C.A. 1991).

*Representation of Nitro Leisure Products, LLC*

Greenberg argues that its representation of Nitro is concluded and that the Court should restrict its analysis to Rule 4-1.9. Greenberg argues that its representation of Nitro ended in early 2000. Nitro retained Greenberg attorney Ernest Greer in 1998 to represent it in a collection action in Georgia state court. Greenberg's representation of Nitro started in January of 2000, when Greenberg acquired the Atlanta firm of Minkin and Snyder. Decl. of Ernest Greer. Greenberg attorney Robert Spears, Jr. also assisted Mr. Greer in his representation of Nitro. Greenberg also represented Nitro in two non-litigation matters: one concerning an independent contractor agreement with a used golf ball supplier and the next to conduct trademark searches for Nitro's internet sales business. Greer Decl. at ¶ 3.

The state court action, *Nitro Leisure Products, Inc. v. G.S. Trading Co.*, sought recovery of approximately $200,000 for breach of contract. Greer Decl., Ex.4. In its Answer and Counterclaim, GS Trading asserted that Nitro had delivered non-conforming goods and that it suffered damages and was not obligated to pay for the merchandise. Greer Decl., Ex. 5. Greenberg contends that although this issue of the quality of the golf balls was raised in the state court action, it never conducted any investigations into Nitro's manufacture of new golf balls that would implicate Nitro's assertions in this matter. Greer Decl. at ¶¶ 10, 12-13. In September 1999, before the state court action was concluded, GS Trading filed a Petition for Bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. The state court action was automatically stayed in October 1999. Greenberg subsequently filed a Proof of Claim in the bankruptcy action on behalf of Nitro.

4

Greenberg asserts that it received direction from Nitro to take no further action in the bankruptcy matter in late January 2000. Greer Decl. at ¶ 25. Greenberg further notes that when it received a hearing notice on the bankruptcy matter in August 2001, it promptly notified Nitro's President, Amin C. Khoury, that Nitro should seek representation for this matter.[1] Greenberg additionally asserts that no substantial work was done on Nitro's behalf after March 2000 and that Nitro sent its final payment for services on October 3, 2000. Greer Decl. at ¶ 4. Nitro contests these assertions, arguing that it never intended to terminate its relationship with Greenberg. Nitro's President, Amin C. Khoury, asserts that he did not seek to terminate Greenberg as Nitro's counsel in the GS Trading Bankruptcy proceeding. Instead, he claims that he asked Robert Spears to keep him apprised of further actions in the matter and to seek his approval before performing additional work. Amin C. Khoury Decl. at ¶ 6. He contends that he was attempting to control the costs for the matter. *Id.* He also asserts that he never received Greenberg's letter advising him to obtain counsel for the September 2000 bankruptcy hearing. *Id.* Nitro further asserts that it never received any other indication that Greenberg was no longer its attorney; Greenberg kept its case file and never sent a letter officially terminating their relationship.

An attorney is required to clearly communicate the termination of his or her relationship with a client. Although not directly addressing the conflict issue, Rule 4-1.16 discusses the

---

[1] The letter from Robert E. Spears, a Greenberg attorney working under the direction of Ernest Greer, stated:
> During our last communication, you advised this firm to take no further action regarding the bankruptcy of GS Trading Company, Inc. We have received the enclosed Notice of Assignment of Hearing in the GS Trading bankruptcy. We are forwarding it to you so that Nitro Leisure products, Inc., may take appropriate measures to obtain representation if it so chooses.

affirmative steps that an attorney must take in terminating the attorney client relationship. Rule 4-1.16(d) states that when withdrawing as counsel and upon termination of representation, "a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned." In the absence of a clear statement, there must be an objectively reasonable basis upon which to find that the attorney client relationship has ended, such as a fee dispute. *See e.g. Artromick International, Inc. v. Drustar, Inc.,* 134 F.R.D. 226 (S.D. Ohio 1991)(attorney client relationship ended when fee dispute developed); *Manor-Electroalloys Corp. v. Amalloy Corp.,* 711 F. Supp. 188 (D. N.J. 1989)(rejected law firm's claim that defendant/third-party was not a client for four years, noting that the attorneys addressed the party as a "client" and that the firm could not state definitely when the relationship ended).

The Court finds that Greenberg did not clearly terminate its representation of Nitro. Greenberg did not follow any of the procedures outlined in Rule 4-1.16 in notifying the client that its representation ended. Nitro did not receive a termination letter. Additionally, although Greenberg states that it was under the impression that it no longer represented Nitro in the state action and related bankruptcy proceeding, it retained Nitro's files. The Court does not doubt that Greenberg proceeded cautiously in this matter. However, when the issue of a potential conflict arose, Greenberg did not consult Nitro in any manner. Decl. of Harley Lewin; Greer Decl.

Greenberg's failure to consult with Nitro and obtain its consent before proceeding with this matter militates on favor of its disqualification in this proceeding. In conducting its conflict search in conjunction with its representation of Acushnet in this matter, three Nitro matters

6

appeared as open matters. Lewin Decl. at ¶ 8; Lewin Decl., Ex. B. The conflict search indicated that these matters remained open. Lewin Decl., Ex. B. Acushnet's claims against Nitro in this matter go to the very heart of Nitro's business survival. Acushnet challenges Nitro's sale of refinished golf balls, which Nitro contends is a significant part of its business. Greenberg was therefore obligated to, at a minimum, consult with Nitro as to the true nature of the dispute and to obtain its consent before proceeding in this matter. *See* Fla. State Bar Rule 4-1.7; *see also Florida Bar v. Dunagan*, 731 So.2d 1237 (Fla. 1999)(the attorney has an obligation to fully inform the client about the nature of the conflict and obtain consent before proceeding in an adverse proceeding against the client). As such, Greenberg's disqualification is warranted here.

*Representation of Amin J. Khoury and Robert Khoury*

Nitro additionally asserts that Greenberg represented two of its principals: Amin J. Khoury, Nitro's Chief Executive Officer and Chairman of the Board of Directors, and Robert Khoury, a director. Amin J. Khoury asserts that he is a current Greenberg client and that both Richard Davis and Steven Lapidus have served as his attorneys on various personal matters. Mr. Lapidus, a Greenberg shareholder, contests Amin J. Khoury's assertion that he represented Mr. Khoury in a personal matter. Lapidus Decl. at ¶¶ 3-6. Mr. Davis, however, does not challenge this assertion. Davis Decl. Amin J. Khoury also states that he has recently received bills from Greenberg for legal services conducted in January and February of this year. With respect to Robert Khoury, Mr. Lapidus admits that he is a current client.

Greenberg contends that its disqualification is not required on the basis of its representation of the Khourys because this matter is not directly adverse to the their interests. The firm contends that its representation of Amin J. Khoury is limited to representing him as a

7

guarantor on a note in a real estate partnership and its representation of Robert Khoury is in a guardianship proceeding. Greenberg also cites to the entity rule as a basis for not finding their representation of the Khourys as adverse to their interests because the Khourys are not named in this action. *See e.g. Brennan v. Ruffner,* 640 So.2d 143 (Fla. 4th D.C.A. 1994)(holding that a closely held corporation's attorney owes no duty to a minority shareholder absent an agreement to represent the shareholder individually). Greenberg, however, currently represents Amin J. Khoury and Robert J. Khoury and as such owes them a duty of loyalty.

Greenberg's argument that its representation of the Khourys does not implicate their interests in this matter is unpersuasive. Although they are not listed as parties to this action, Acushnet's assertions against Nitro, if successful, will have an adverse affect on their interests. Their business interests are clearly implicated by Acushnet's actions in this matter. *See e.g. Hilton v. Barnett,* 1994 WL 776971 (finding conflict although client not listed in action where complaint sought an injunction against clients as affiliates of the defendant in the action). Greenberg failed to even consult with either of the Khourys with respect to its representation of Acushnet in this proceeding. *See also Florida Ins. Guaranty Assoc. v. Carey Canada, Inc.,* 749 F. Supp. 255 ((S.D. Fla. 1990)(noting the attorney's duty to identify the conflict and obtain proper consent from its client).

Greenberg contends that Nitro has raised this issue in an improper attempt to gain an advantage in this matter and that Nitro has waived its right to seek disqualification. The Court recognizes that Acushnet will be inconvenienced in having to obtain new counsel. The Court also notes that the contended four month delay in moving for disqualification does not counsel against disqualification. While a significant delay is considered cause for waiver of the

8

disqualification issue, this is not such a case. *See e.g. Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725 (11th Cir. 1988)(finding waiver where former client raised conflict objections over four years after the firm's representation and close to the trial date in the current matter). This matter is still in the preliminary stages and the trial for this matter is scheduled for the calendar period beginning on April 7, 2003. *See* Scheduling Order, DE. # 24. Acushnet will therefore have sufficient time to obtain new counsel and is not unduly prejudiced.[2]

In light of these circumstances and the importance of avoiding the appearance of impropriety in this action, the most prudent manner in which to proceed is to disqualify Greenberg from further representation of Acushnet in this matter. Upon consideration of the record and for the reasons stated above, it is hereby

ORDERED AND ADJUDGED that the Motion to Disqualify Greenberg Traurig is GRANTED. If is further ORDERED AND ADJUDGED that the Motion to Stay pending resolution of this issue (DE # 79) is DENIED AS MOOT.

DONE AND ORDERED in Chambers at West Palm Beach, Florida this /4 day of August, 2002.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

---

[2] In its Reply Memorandum, Nitro asserts that Reeder and Reeder should also be disqualified as counsel for Acushnet. This matter has not been fully briefed and there does not appear to be a sufficient basis upon which to warrant disqualification of Reeder.