NIGHT BOX
FILED

MAY 09 2003

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS MAXBOX

CLERK, USDC / SDFL / MIA

IN RE NITRO LEISURE PRODUCTS, L.L.C.

_____/

### ACUSHNET COMPANY'S MOTION TO COMPEL BETTER ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS AND SUPPORTING MEMORANDUM OF LAW

Defendant/Counter Plaintiff, ACUSHNET COMPANY ("Acushnet") pursuant to Rules 33, 34 and 37 of the Federal Rules of Civil Procedure and Local Rule 26.1, hereby moves to compel Plaintiff/Counter Defendant, NITRO LEISURE PRODUCTS, LLC. ("Nitro") to provide better answers/responses to interrogatories and to produce documents responsive to Acushnet's discovery requests.   In support of its Motion, Acushnet states as follows:

### INTRODUCTION

### Pertinent Factual Background

1.      This is a case which involves (among other things) intellectual property and antitrust claims.  It is, as Nitro has described it, "exceedingly complex and requires the parties to conduct significant discovery and investigation" and "subsequent expert analysis and review."  (Nitro's Motion for Continuance at ¶1; Nitro memorandum at p.2 D.E. 189-190).

2.      On January 16, 2003, Acushnet propounded its first, second, and third requests for production of documents ("Requests") on Nitro, along with its first set of interrogatories.  A true and correct copy of these discovery requests are attached hereto as Exhibits "A", "B", "C" and "D" respectively.

3.     On March 20, 2003, Nitro filed its responses to the Requests and its answers to Acushnet's interrogatories.   However, Nitro did not make its actual documents available for inspection by Acushnet until April 10, 2003.

4.     Accordingly, it was not until after April 10, 2003 that Acushnet was even able to ascertain what Nitro was producing, as Nitro's responses to the Requests and interrogatories were vague and ambiguous as to whether or not there was (a) responsive documentation to each Acushnet Request or (b) whether Nitro was withholding responsive documentation on the grounds set forth in one or more of Nitro's various objections.

5.     Although Nitro produced approximately 34,730 documents, 28,415 (approximately 82%) of these documents consist of individual invoices to Nitro customers with the customers' names and addresses redacted.   Furthermore, Nitro redacted its invoice numbers, and, on some of its invoices, the names of its salespersons and comment sections.   Not only is this information responsive to Acushnet's Requests and interrogatories, but it is relevant information that could lead to further discoverable and/or admissible evidence.   Nitro has no good faith basis for redacting this information, especially since Nitro did not consistently redact this information throughout.

6.     Additionally, Nitro's production was haphazard at best.  Nitro's invoices were not in chronological order as to the date of purchase; the production was not delineated by responsive category; and it does not appear to have been made in the ordinary course of business as the rules require.

7.     Furthermore, Nitro universally objects to Acushnet's Requests and interrogatories throughout "...on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery." Notwithstanding the fact that Nitro's objection is a mischaracterization of the facts, this objection is wholly improper.

8.     Nitro also improperly relies on a so-called "self-critical analysis privilege" in refusing to produce discoverable documents and further objects to any request for trade secret and/or other proprietary business information; however, the parties have an Interim Confidentiality Agreement in place which protects this information and, thus, should not be a basis for Nitro to withhold any documents.  A true and correct copy of the parties' Interim Confidentiality Agreement is attached hereto as Exhibit "E".  Nitro's privilege log does not identify any documents that it claims are protected by the "self-critical analysis privilege".   Furthermore, it is impossible to determine from Nitro's responses whether responsive documents have been withheld on the basis of the "self-critical analysis privilege" since Nitro reiterates this "privilege" throughout all of its responses and without reference to any particular document or set of documents.  See Nitro's Privilege Log, attached hereto as Exhibit "F".    If Nitro in fact withheld no documents on the basis of this alleged privilege, it should so state.

9.     Moreover, Nitro states in each of its responses that the discovery requested is irrelevant, immaterial, over burdensome and not likely to lead to admissible evidence.  Each of Acushnet's discovery requests were, in fact, reasonably calculated to lead to the discovery of admissible evidence, and it is improper for Nitro to avoid its

discovery obligations by invoking these broad objections without any apparent consideration of the particular information sought by Acushnet's Requests and interrogatories.

10.     Furthermore, the documents Nitro actually produced refer to a "chart for ball Type" and "pre-established range" for compression in Nitro's "Final Quality Inspection", yet none of these specs have been produced despite the fact that the specs (in addition to mix ratios, etc...) are specifically responsive to Request Nos. 56, 61, 65, 66, 68, 71, 72, 101, 169 and 170.

11.     Finally, Nitro's privilege log inappropriately identifies several e-mails and documents as protected by the work product privilege. For example, items 41 and 44—dated 10/26/99 and 10/25/00—are identified as e-mails between Amin Khoury and Nitro employees. Nitro characterizes the subject matter as "[d]ocuments regarding Nitro's legal matters" and "Nitro third party litigation" respectively. Interestingly, Nitro did not file this lawsuit until 2002, several years after these communications were made. Therefore, unless these communications were prepared in anticipation of litigation other than this litigation, they cannot be work product. It is impossible to determine from Nitro's subject matter description, however, whether Nitro is claiming that these documents constitute work product in this or some other litigation.

12.     Absent this necessary discovery, which is properly within the scope of the applicable rules, Acushnet cannot prepare expert reports or prepare experts for deposition in any meaningful way, nor can Acushnet properly prepare for its 30(b)(6) of witness depositions.

## Joint Scheduling Order

The pretrial deadlines in this matter are quickly approaching.   Previously, the parties agreed to the following deadlines:

| | |
|---|---|
| Initial Expert Reports | June 10 |
| Non-expert Discovery Cutoff | June 10 |
| Summary Judgment and Expert-Admissibility Motions | July 7 |
| Rebuttal Expert Reports | July 10 |

Without complete responses to interrogatories and full document production from Nitro in advance of the depositions of the claimants and witnesses in this matter, Acushnet cannot meaningfully prepare for further discovery in this case.   Additionally, Acushnet requires the requested information and documents in order for Acushnet's experts to have an opportunity to accurately assess any damages in this case.  In short, Acushnet cannot properly prepare its case in chief or defense in this litigation when Nitro is holding up such critical information such as customer names and addresses, salespersons, gross sales, costs, and net profits by product on a monthly basis over the last three years.  If there are no such responsive documents, Nitro should be required affirmatively to advise Acushnet of that fact.

In light of the imminent deadlines and a September 2003 trial date, Acushnet requests that Nitro be compelled to complete its document search and produce the remaining outstanding and unredacted (to the extent that it presently redacted information not protected by the work product doctrine or attorney-client privilege) responsive documents within ten days of the date of the order granting Acushnet's Motion, so this matter may properly and meaningfully proceed in accordance with the

previously agreed upon deadlines.  Otherwise, Acushnet will be prejudiced and will be placed in the untenable position of defending itself (and having its experts evaluate any damages) without the necessary information.

## MEMORANDUM OF LAW

**I.   Acushnet's   Interrogatories,   Nitro's   Corresponding   Responses   and Acushnet's Argument[1]:**

### A.    INTERROGATORY NO. 2:

Identify every individual interviewed, or with whom a discussion has been held in regard to this lawsuit, or from whom a statement (whether written, oral or otherwise recorded) has been taken, relating to this lawsuit, including answers to all pleadings and discovery.   For each such individual, state the substance of each such interview.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and general objections set forth  above as if fully set forth herein. Nitro objects to this Interrogatory on the basis that it is premature because Acushnet has not complied with Rule 26 of the Federal Rules of Civil Procedure, which is a  prerequisite to any discovery, and  therefore this interrogatory is premature. Nitro further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product doctrine. Nitro will not reveal information relating to individuals with whom its attorneys have  spoken  to or interviewed for this lawsuit, because such information is *prima facie* work product and not discoverable. Nitro further objects to this Interrogatory because it is over broad, burdensome, oppressive, and compound.

### ACUSHNET'S ARGUMENT SPECIFIC TO THIS INTERROGATORY:

Acushnet is entitled to request supplemental information to Nitro's Rule 26 Disclosures in order to adequately prepare for trial.   This Interrogatory is not overly broad,

---

[1] Legal analysis regarding Nitro's general objections stated in each of its responses follows after the Third Request to Produce and Nitro's Response as set forth below.

burdensome, or oppressive as it only requests the identity of other potential witnesses who have relevant information regarding this matter.   Furthermore, Acushnet is not seeking communications protected by the work product doctrine and/or attorney-client privileges.

## B.   **INTERROGATORY NO. 3**:

Explain with particularity and describe the detailed factual basis for Nitro's claims and defenses in this lawsuit, including without limitation, identification of all evidence, persons, acts and documents that support or tend to contradict Nitro's claims set forth in its Complaint, as amended, or that either support or tend to contradict Nitro's denials of allegations or defenses as set forth in its Reply, as amended, and further including without limitation, identification of all persons who have knowledge regarding Nitro's claims, denials and defenses.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and general objections set forth above as if fully set forth herein. Nitro objects to this Interrogatory on the basis that it is premature because Acushnet has not complied with Rule 26 of the Federal Rules of Civil Procedure, which is a prerequisite to any discovery, and therefore this interrogatory is premature. Nitro further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product doctrine. Nitro further objects to this Interrogatory because it is over broad, burdensome, oppressive, and compound, as Acushnet is asking for Nitro to lay out its entire case in answering this interrogatory. Accordingly, Nitro will attempt to respond below in good faith, but cannot be expected, in the context of this complex case, to recite herein each and every evidentiary fact that is known or under investigation. Notwithstanding the above objections, and without waiving the above objections, Nitro responds as follows: Nitro, unlike Acushnet, has already disclosed the documents and witnesses with information relevant to its claims and defenses pursuant to its Rule 26 disclosure.

Acushnet has engaged in a pattern and practice of utilizing its market dominance, threats explicit or otherwise, product disparagement, artificial brand and trademark proliferation and other unlawful tactics to put a halt to the refurbished golf ball industry and companies like Nitro. Acushnet monitored Nitro's progress, by Acushnet's own admission, for years. Only when Nitro began to become successful, Acushnet began an unlawful campaign to devastate Nitro and its business prospects.   For

example, Acushnet issued a press release containing false and disparaging comments regarding Nitro's products as a public warning to any company that would dare to do business with Nitro. Acushnet also directly contacted retailers to make false claims regarding Nitro's products and implicitly threaten retribution should the retailers purchase Nitro's refurbished product.

Acushnet has utilized its monopoly control of the golf ball market to artificially inflate prices and exclude competition. Traditionally, Acushnet would only sell its premium segment Titleist merchandise to on and off-course pro shops, and it would deny such product to off-course retailers such as mass merchandisers and mass sporting goods retailers. Recently, however, it appears that Acushnet has begun to flood the value retail market with lower priced "practice," "x-out" and "logo overrun" models at reduced prices. Although the balls for the large part appear identical to the premier product, the balls are sold at artificially low prices as a further attempt to force Nitro and other golf ball refurbishers out of business. In fact, retailers that have complied with Acushnet's pressure tactics and tacitly agreed to a group boycott of Nitro's refurbished product have been rewarded with such product and other inducements and benefits.

Acushnet's campaign against the refurbished golf ball industry goes back for years and includes attacks against other companies such as Birdie Golf and Players Choice. Even though Acushnet knows full well that refurbishing golf balls is a completely legal practice, Acushnet filed frivolous litigation and utilized scorched earth litigation tactics in an effort to destroy the typically much smaller refurbished golf ball companies.

Acushnet's tactics also have included false advertising of its products in order to increase "shelf space" and push smaller competitors out of the marketplace. Acushnet has utilized a strategy of artificial proliferation of brands and trademarks. As just one example, Acushnet has sold for years various DT models with deceptively crafted side model stamps. Acushnet claims that the side model stamps indicate that the various models have differing performance characteristics. According to Acushnet's own evidence in this case, there are no such performance differences. Further, Acushnet's compression stamping is and has been deceptive and false. According to Acushnet's own evidence, the side model compression stamp bears little if any relation to the actual internal compression of the subject golf balls.

According to Acushnet's evidence in this case, Acushnet has spent millions of dollars attempting to convince the public that the side model stamps actually mean something, but from all evidence so far available, they do not. Nitro is informed and believes that Acushnet now utilizes a

variation of this strategy in regard to the "practice," "x-out" and "logo overrun" versions of golf balls, in addition to other Acushnet brands.

Acushnet's trademark infringement and dilution claims against Nitro cannot succeed. Under the law, used and refurbished product is lawful as long as appropriate disclaimers are used to ensure that the original manufacturer is not identified with the refurbished product. The only exception involves where the change to the product is so material that utilizing the original manufacturer's name would be a misnomer. Here, the golf balls at issue are merely refurbished through the procedures described herein below and in Nitro's previous court filings. Nitro painstakingly sorts the balls to ensure that any mistakes are kept to an absolute minimum or eliminated entirely. Nitro properly notifies consumers of the nature of the product, and that Acushnet is not responsible for the refurbishment process in any way. Nitro's golf ball's initial success in the marketplace demonstrates the quality of Nitro's processes and procedures, as well as its truthful advertising. Differences in performance are expected with such used product, and are immaterial from a trademark law standpoint. In any event, Nitro is informed and believes that Acushnet's internal testing data will evidence that much of any perceived difference in performance results from defects in Acushnet's own products or otherwise from expected wear and tear. For these reasons, the Court in this case denied Acushnet's Motion For Preliminary Injunction, and did not find any showing of improper conduct on Nitro's part.

Acushnet's patent claims similarly fail. In regard to, the '535 patent, the patent is invalid. The patented process is obvious and does not reflect a true invention by Acushnet. Indeed, Acushnet did not invent the refurbishment process identified, and prior art exists to demonstrate that fact, which are believed to be in the files of Sunset Golf. Nitro is investigating whether there was a fraud on the patent office in this regard. In any event, Nitro does not currently utilize any process that involves removing all or a portion of the outside cover of the golf balls. A process that was discontinued long ago did involve the removal of the cover, but the process so utilized did not read upon the claims of the '535 patent. Moreover, Acushnet failed to provide any notice of the patent on packaging or otherwise directly to Nitro. Thus, any claim for monetary relief is barred.

In regard to the various other patents in suit, no process ever utilized by Nitro reads upon the claims of any of those patents at issue. Nitro did not at any time disturb the cores or utilize any manufacturing process so identified. Moreover, any repairs performed by Nitro would fall squarely within the doctrine of permissible repair.

Nitro's claims and defenses have been further described and identified in Nitro's court filings in this case including its Complaint, Answer, Opposition to Motion for Preliminary Injunction, and other such pleadings and filings. All such matter is incorporated herein by this reference. Discovery and investigation are continuing.

### ACUSHNET'S ARGUMENT SPECIFIC TO THIS INTERROGATORY:

Nitro has not satisfied its obligation in answering this Interrogatory. Specifically, no detailed factual basis is provided. The mere assertion of legal conclusions does not constitute a detailed factual basis for a claim. For example, Nitro failed to set forth or to identify a single piece of prior art upon which it asserts, without more, that any patent-in-suit is invalid. Mere allegations that such prior art exists is non-responsive to this Interrogatory. No prior art of any kind is identified and none was produced in response to the document requests.

C.   **INTERROGATORY NO. 5:**

Identify each Relevant Nitro Product and describe in detail how such product is or has been acquired, manufactured, fabricated, refurbished, remanufactured, repaired, recycled, refinished, re-washed, or some other process which is advertised, marketed, sold or offered for sale by Nitro, including without limitation, identification of all acts and documents related thereto and persons having knowledge with respect thereto, identification of the amount and nature of all revenues received with respect thereto.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and general objections set forth above as if fully set forth herein. Nitro objects to this Interrogatory on the basis that it is premature because Acushnet has not complied with Rule 26 of the Federal Rules of Civil Procedure, which is a prerequisite to any discovery, and therefore this interrogatory is premature. Nitro further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product doctrine. Nitro further objects to this Interrogatory because it is over broad, burdensome, oppressive, and compound, and is not limited to anytime period. Nitro further objects to this Interrogatory to the extent that it seeks Nitro's trade secrets and/or Nitro's proprietary business information. Nitro further object to this Interrogatory because it is irrelevant and not calculated to lead to

the discovery of admissible evidence in this lawsuit. Nitro further objects on the grounds this interrogatory is intentionally over broad in order to create unnecessary burden and expense on Nitro. Acushnet consistently has maintained that only the refurbished golf balls of Nitro are currently objectionable to Acushnet. Therefore, inquiring regarding other product is intentionally designed to cause unnecessary burden and expense, especially in light of the continuing and ongoing variations in processes and procedures and the various historical procedures that are no longer utilized. Accordingly, Nitro responds below in regard to the primary process that appears most relevant to this action.

Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: The relevant "Nitro Products", as Nitro understands the term, are all Acushnet Refinished or refurbished models. Nitro's relevant processes have been described in substantial detail in connection with Nitro's evidence submitted in opposition to Acushnet's Motion for Preliminary Injunction. In addition, Nitro will produce non-privileged, non-objectionable documents within its possession, custody or control which are responsive to this interrogatory.

As detailed in evidence previously filed with the Court, the refurbishing processes at Nitro have not been static over the years, and Nitro has consistently attempted to improve and hone its processes and procedures. Further, Nitro will modify its processes and procedures in certain respects, depending on customer need, the nature of the balls to be refurbished and other factors. The primary processes involved in the refurbishment of golf balls can be summarized as follows: To a substantial degree, all of the relevant product are acquired and refurbished in several stages. Initially, the balls are acquired as raw material (Pond Run). This material comes in batches from dive companies or ball companies, Nitro's vendors. Some incoming balls arrive clean and sorted (a small percentage). On most occasions, Nitro nevertheless will wash all balls following their arrival. The balls (as batches) get sorted into ten basic categories. This is sort number one, and called the front end sort. The balls are then graded, and an incoming batch grade sheet is prepared.

The balls that enter the HiRepro/Hipro WIP category (one of the byproducts of the first sort) have the potential to be refurbished. Balls in the HiRepro/Hipro WIP category, as stated just above, are then roughly sorted into manufacturer and model sub groups. This is the second sort, and generally results in a highly specific groupings of golf balls. For instance, all of the Pro V I's are placed together. They are not separated into all of the Pro VI sub-models at this point. For example, the Pro VI Family includes the following: Pro VI, Pro VI Improved, Pro VI Practice, Pro VI X-Out, Pro VI Star, Pro VI Star Practice, Pro V I X-Out, etc.

Nitro's second sort groups these balls into one category called Pro VI. The categories/sorts that result from this process again have just the potential to be refurbished. Next, Pro V I's will proceed to the next sort, the third sort. At this point all of the sub categories are grouped. Balls that are identified into categories to be sold as recycled, are not sorted any further. They are packaged and sold.

Balls that are identified for refurbishment, are sorted one last time (the fourth) to be sure that no mistakes have occurred in the preceding sort, or the ones before that. Each sort, from the first pulls any balls that appear to be damaged/cut.

From the fourth sort, balls are placed into a closed container. Then the balls get pressure washed with aluminum media until the clear coat, paint, (which contains the markings), and markings are removed. As part of this process the balls are washed thoroughly and allowed to dry after the washing.

The balls are then painted with two light coats of paint, stamped with ink, and clear coated. From this point the balls are sorted in a final QC Stage. Sampling of weight, compression, roundness, are implemented. Each ball is checked for its paint job to be sure that it is of excellent quality. Next, the balls are packaged.

In terms of revenue from refurbished product, Nitro's damages were outlined in its FRCP Initial Disclosure document, and documents setting forth the available information will be produced.

Persons with knowledge of the above would, of course, include all past and present employees. Numerous such persons were identified in Nitro's FRCP 26 Disclosure.

## ACUSHNET'S ARGUMENT SPECIFIC TO THIS INTERROGATORY:

Nitro's response is inadequate both in terms of the breadth of the products addressed, and the depth and completeness for the products Nitro did address. As a threshold matter, Nitro improperly defines the phrase "Nitro Relevant Products," and limits Acushnet's definition and therefore, makes Nitro's response inadequate. More particularly, Nitro's efforts to limit its response to "Acushnet Refinished or refurbished models" is an improper attempt to rewrite Acushnet's interrogatory. The term "Relevant

Nitro Product" is clearly defined in the prefatory materials of the Interrogatories as follows:

> The term "Relevant Nitro Product" shall mean any golf ball, new or used, that has been acquired, manufactured, fabricated, refurbished, remanufactured, repaired, recycled, refinished, re-washed, advertised, marketed, sold or offered for sale by or on behalf of Nitro, which product is either (i) created, derived or otherwise produced in any way from, in whole or in part, any Acushnet Product, (ii) embodies or at any time embodied the technology claimed in any claim of any Acushnet patent, or (iii) which bears or at any time bore an Acushnet Trademark or any trademark similar thereto.

The definition is far broader than Nitro's "understanding," and includes, at least, several categories of products that Nitro itself has admitted, directly or indirectly, to exist.  In particular, Interrogatory No. 3 refers to balls that entailed "removal of the cover" of a ball, and alleges that it did not read upon the claims of the patents-in-suit.  This remains to be seen, as a question of fact and law.  However, it is clearly by Nitro's own admission within the scope of discovery, and responsive to Interrogatory No. 5.

Another class of balls includes recycled or re-washed balls, referred to throughout Nitro's documents.  Moreover, a number of documents Nitro has provided make reference to "cored" golf balls sent to U.S. and foreign manufacturers.  Likewise, Acushnet is entitled to full discovery of these washing and remanufacturing processes. These are but two of all possible classes of Relevant Nitro Product, admitted elsewhere to exist, clearly responsive to the Interrogatory, and not the subject of the answer.

Moreover, the Interrogatory expressly requests details not provided in your answer, all of which are properly within the scope of discovery.  For each Nitro Relevant Product, Acushnet is entitled to identification of acts and documents related thereto and persons

having knowledge with respect thereto. Acushnet is further entitled to identification of the manner by which and to whom the products have been sold or offered for sale, and identification of the revenues received with respect thereto. The proposed answer is not only improperly limited in scope, but is also improperly limited with respect to these issues. Nowhere is it stated to any degree of specificity, how balls are refurbished. This includes, but is not necessarily limited to, the particular materials applied, the machinery or tools used to remove and/or place paint or clear coat on balls, or the settings of said machinery. Nowhere is it stated to whom and how the balls have been sold or offered for sale, and amounts of revenue received.

### D.    **INTERROGATORY NO. 6:**

As to each person listed on Plaintiff's Witness List served on May 6, 2002, please set forth their full address and telephone number; their job designation; a complete description of the information they are believed to possess; and state whether the person has given a verbal or written statement to you. If any person has given a verbal or written statement, please describe the statement, give  the date  of the statement and state the name and address of the person to whom the statement was given.

### **NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and general objections set forth  above as if fully set forth herein. Nitro objects to this Interrogatory on the basis that it is premature because Acushnet has not complied with Rule 26 of the Federal Rules of Civil Procedure, which is  a prerequisite to any discovery, and therefore this interrogatory is  premature. Nitro further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product doctrine. Nitro further objects to this Interrogatory because it is over broad, burdensome, oppressive, and compound, and is not limited to anytime period.  Nitro further objects to this Interrogatory to the extent that  it seeks Nitro's trade secrets and/or Nitro's proprietary business information. Nitro further objects to  this Interrogatory because it is irrelevant  and not calculated to lead  to  the  discovery  of  admissible  evidence  in  this  lawsuit. Notwithstanding  the  above  objections, and without waiving the above objections, Nitro responds  as follows: Nitro has already disclosed all of the names, addresses, telephone  numbers and anticipated content of

testimony of witnesses to the extent known by Nitro, pursuant to its Rule 26 disclosure. Nitro has no further information to disclose at this time, and Nitro knows of no non-privileged statements of witnesses that may testify in this action. Discovery and investigation are continuing.

### ACUSHNET'S ARGUMENT SPECIFIC TO THIS INTERROGATORY:

Acushnet is entitled to the addresses, position, and phone numbers of the witnesses listed on Nitro's Witness List in order to adequately prepare for trial. This Interrogatory is not overly broad, burdensome, or oppressive as it only requests the address, phone numbers and position of the witnesses on Nitro's witness list.

E.    **INTERROGATORY NO. 7:**

After May 6, 2002, have you become aware of any other person(s) who have knowledge concerning the issues in the case? If so, please set forth their full address and telephone number; their job designation; a complete description of the information they are believed to possess; and state whether the person has given a verbal or written statement to you. If any person has given a verbal or written statement, please describe the statement, give the date of the statement and state the name and address of the person to whom the statement was given.

**NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and general objections set forth above as if fully set forth herein. Nitro objects to this Interrogatory on the basis that it is premature because Acushnet has not complied with Rule 26 of the Federal Rules of Civil Procedure, which is a prerequisite to any discovery, and therefore this interrogatory is premature. Nitro further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and work product doctrine. Nitro further objects to this Interrogatory because it is over broad, burdensome, oppressive, and compound, and is not limited to anytime period. Nitro further objects to this Interrogatory to the extent that it seeks Nitro's trade secrets and/or Nitro's proprietary business information. Nitro further object to this Interrogatory because it is irrelevant and not calculated to lead to the discovery of admissible evidence in this lawsuit. Nitro will not reveal information relating to individuals with whom its attorneys' have spoken to or interviewed for this lawsuit, because such information is *prima facie* work product and not discoverable. Notwithstanding the above objections,

and without waiving those objections, Nitro responds as follows: Nitro incorporates its response to Interrogatory No. 6 as if fully set forth herein.

### ACUSHNET'S ARGUMENT SPECIFIC TO THIS INTERROGATORY:

Acushnet is entitled to request supplemental witness information to Nitro's Witness List in order to adequately prepare for trial.   This Interrogatory is not overly broad, burdensome, or oppressive as it only requests the identity of other potential witnesses who have relevant information regarding this matter. Furthermore, Acushnet is not seeking communications protected by the work product doctrine and/or attorney-client privileges.

## II.   Acushnet's First Request to Produce, Nitro's Corresponding Responses and Acushnet's Argument.[2]

### A.   REQUEST TO PRODUCE NO. 1:

All Documents and things identified or referred to in the answers to Acushnet's First Set of Interrogatories to Nitro (Nos. 1-7).

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further

---

[2] Legal analysis regarding Nitro's general objections stated in each of its responses follows after the Third Request to Produce and Nitro's Response as set forth below.

objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## B.    REQUEST TO PRODUCE NO. 2:

All Documents relating to the operation, structure and history of Nitro, or any predecessor or related organization, that was involved in any way with the recycling, refurbishment, manufacture, sale or distribution of an Acushnet Product.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as

follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## C.   **REQUEST FOR PRODUCTION NO. 7:**

All Documents relating to Nitro's allegation that Nitro relied on Acushnet's "failure to object to Nitro's allegedly unlawful conduct."

### **NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## D.   **REQUEST TO PRODUCE NO. 8:**

All Documents relating to Nitro's allegation that "Nitro has been severely prejudiced by Acushnet's failure to timely object to Nitro's conduct."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the client-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## E.   REQUEST FOR PRODUCTION NO. 10:

All Documents relating to Nitro's allegation that the "public is not deceived or misled by Nitro's truthful, non-misleading use of Acushnet's alleged trademarks."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit

the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the client-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## F.   **REQUEST FOR PRODUCTION NO. 11:**

All Documents relating to each and every misleading advertisement alleged to have been published by Acushnet.

### **NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter.

Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## G.   REQUEST FOR PRODUCTION NO. 23:

At least one specimen of each and every product, label, package, tag, brochure, advertisement, promotional item, information literature, contribution list, stationery, invoice, and business card on which any name or mark comprised of or including the words) of an Acushnet Trademark, appears or has appeared.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. 'Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro farther objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this

request at a reasonable place and time. Discovery and investigation are continuing.

## H.     REQUEST FOR PRODUCTION NO. 24:

At least one specimen of each and every product, label, package, tag, brochure, advertisement, promotional item, information literature, contribution list, stationery, invoice, and business card, in which or with respect to which an Acushnet Product was sold or resold by or on behalf of Nitro.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses.

Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## I.     REQUEST FOR PRODUCTION NO. 27:

All Documents and things that relate to the methods or manner by which Nitro and/or its licensees have advertised or promoted the sale or

distribution of products in association with any name or mark comprised of or including the words) of an Acushnet Trademark, or any phonetically or visually similar variation thereof.

### NITRO'S RESPONSE NO. 27:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the client-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### J.     REQUEST FOR PRODUCTION NO. 29:

All Documents and packaging that refer, relate to or evidence the way that people see any Acushnet product, used or otherwise, in association with Nitro's products, services or activities.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is

overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## K.   **REQUEST FOR PRODUCTION NO. 33:**

All Documents and things relating to -any surveys that have been conducted to evaluate whether the use of any name or mark including in whole or part the words) of an Acushnet Trademark, or any phonetically or visually similar variation thereof, is likely to cause confusion with any other mark.

### **NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the client-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely

seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond to Nitro's earlier propounded discovery.

## L.    **REQUEST FOR PRODUCTION NO. 35:**

All representative documents and things that indicate where (meaning in which state or geographic area) Nitro sells, distributes, markets or promotes any refurbished, recycled or remanufactured golf ball derived in whole or in part from any Acushnet product.

### **NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the client-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### **ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:**

Specifically, responsive documentation to this Request would include addresses of customers and shipping addresses.  All of this information is relevant, however, Nitro redacted this information from its invoices.

### M.  REQUEST FOR PRODUCTION NO. 37:

All Documents and things relating to actual disputes or potential disputes of which Nitro is aware, between Nitro and any person other than Acushnet, concerning sale, offer for sale or use of any golf ball or process for making a golf ball, including without limitation notices of infringement and unfair competition, infringement investigations, and court and agency proceedings of any type (such as infringement actions, unfair competition actions, oppositions, cancellations and government charity related investigations) in any country.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore this request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the time period or scope of the request. Nitro further objects to this request because it may violate the attorney-client privilege, work product doctrine, or other applicable privileges. Nitro further objects to this request because to the extent that it seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request because it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery.

### N.  REQUEST FOR PRODUCTION NO. 53:

All Documents and things referring or relating to or evidencing Nitro's first receipt of notice of Acushnet's use of the mark Acushnet Trademarks.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Nitro further objects to this request because it is vague, ambiguous and unintelligible with respect to the documents requested, and without a further clarification of the request, Nitro cannot furnish a further response.

### O.   REQUEST FOR PRODUCTION NO. 56:

All Documents, showing, concerning, evidencing, relating or referring to measures taken by Nitro to monitor the quality of its services or goods rendered or supplied bearing any Acushnet Trademark.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses.

Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery.

Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. For example, Nitro document 33331 refers to a "chart for ball Type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball Type" has been produced. Similarly, Nitro document 33344 refers to a "pre-established range" for compression in Nitro's "Final Quality Inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of Nitro's production process.

### P.   REQUEST FOR PRODUCTION NO. 57:

All Documents and things regarding Nitro's policy with respect to retention of documents, including business records.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit

the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## Q.    REQUEST FOR PRODUCTION NO. 59:

All Documents and things, other than those produced in response to any of the foregoing requests, upon which Nitro intends to rely in connection with this litigation.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and general objections as set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Nitro further objects to this request on the basis that it is overbroad, burdensome and oppressive because it is not limited in scope or time, and merely asks for all documents related to this litigation. Without a proper limitation to this request, Nitro cannot respond further.

## R.    REQUEST FOR PRODUCTION NO. 60:

All Documents not specifically requested herein but which were used or referred to by Nitro in preparing responses to these document request or were used or referred to by Nitro to comply with these document requests.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and general objections as set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Nitro further objects to this request on the basis that it is overbroad, burdensome and oppressive because it is not limited in scope or time. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Any documents not offered to be produced in accordance with these requests are properly withheld on the basis of Nitro's objections, including but not limited to privilege and relevancy.

### S.   REQUEST FOR PRODUCTION NO. 61:

All Documents describing the various processes utilized by Nitro for refurbishing golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not

calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. For example, Nitro document 33331 refers to a "chart for ball Type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball Type" has been produced. Similarly, Nitro document 33344 refers to a "pre-established range" for compression in Nitro's "Final Quality Inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of Nitro's production process.

### T.   REQUEST FOR PRODUCTION NO. 62:

All Documents describing the various processes utilized by Nitro for manufacturing its "Nitro Titanium" golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because

Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## U.    REQUEST FOR PRODUCTION NO. 63:

All Documents relating to any process for removing any portion of the outer cover of a golf ball.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections  set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business

information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## V.   REQUEST FOR PRODUCTION NO. 64:

All Documents relating to any process for applying any outer covering or coating to a golf ball.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as

follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## W.     REQUEST FOR PRODUCTION NO. 65:

All Documents relating to any process for applying any printed material to the surface of a golf ball.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. for example, Nitro document 33331 refers to a

"chart for ball type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball type" has been produced. Similarly, Nitro document 33344 refers to a "pre-established range" for compression in nitro's "final quality inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of nitro's production process.

## X.   REQUEST FOR PRODUCTION NO. 66:

All Documents relating to any material applied by Nitro to the exterior of a golf ball.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded

its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. for example, Nitro document 33331 refers to a "chart for ball type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball type" has been produced. Similarly, Nitro document 33344 refers to a "pre-established range" for compression in nitro's "final quality inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of nitro's production process.

### Y.    REQUEST FOR PRODUCTION NO. 67:

All Documents relating to any dimple pattern applied by Nitro to golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is

premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## Z.   <u>REQUEST FOR PRODUCTION NO. 68:</u>

All Documents relating to any and all quality control procedures employed by Nitro in connection with refurbishing of golf balls.

### <u>NITRO'S RESPONSE:</u>

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further

objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. for example, Nitro document 33331 refers to a "chart for ball type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball type" has been produced. Similarly, Nitro document 33344 refers to a "pre-established range" for compression in nitro's "final quality inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of nitro's production process.

## AA.   REQUEST FOR PRODUCTION NO. 71:

All Documents relating to specifications and standards used by Nitro, now or in the past, applying to golf balls refurbished or manufactured by Nitro.

## NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. for example, Nitro document 33331 refers to a "chart for ball type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball type" has been produced.  Similarly, Nitro document 33344 refers to a "pre-established range" for compression in nitro's "final quality inspection."  No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint.  No document showing the "mix ratio" for paint has been produced.  In addition, Nitro has not produced any specification sheet or other document listing any quality control

requirements for incoming raw materials.  Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of nitro's production process.

## BB.   REQUEST FOR PRODUCTION NO. 72:

All Documents relating to standards used by Nitro for determining if ball is to be recycled or refurbished.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. for example, Nitro document 33331 refers to a "chart for ball type" that apparently lists the length of time each model of ball should

remain in the "blaster." No such "chart for ball type" has been produced. Similarly, Nitro document 33344 refers to a "pre-established range" for compression in nitro's "final quality inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of nitro's production process.

## CC.   REQUEST FOR PRODUCTION NO. 73:

All Documents relating to each and every version of every Nitro web site.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. 'Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above

objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. for example, Nitro document 33331 refers to a "chart for ball type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball type" has been produced. Similarly, Nitro document 33344 refers to a "pre-established range" for compression in nitro's "final quality inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of nitro's production process.

## DD.   REQUEST FOR PRODUCTION NO. 101:

All specifications, descriptions or other Documents relating to Nitro's processes or methods of painting or clear coating golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to

this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non - testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. for example, Nitro document 33331 refers to a "chart for ball type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball type" has been produced. Similarly, Nitro document 33344 refers to a "pre-established range" for compression in nitro's "final quality inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of nitro's production process.

## EE.   **REQUEST FOR PRODUCTION NO. 122:**

All Documents relating to the identity of Nitro's sales representatives, including any sales representatives that may have communicated to any person regarding the performance or quality of any Nitro product that is created, in whole or in part, from a product originally manufactured by Acushnet.

### **NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business

information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

A large portion of invoices that Nitro produced had its sales representatives' names redacted. This information is relevant to the case and should be produced in unredacted form.

### FF.   REQUEST FOR PRODUCTION NO. 128:

All Documents and things relating to Acushnet or Acushnet's Products, including, without limitation, any document received from any customer or other person referring to Acushnet or Acushnet's Products, and all documents that reference Acushnet or Acushnet's Products.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and general objections as set forth above as if fully set forth herein. Nitro further objects to this request because it is overbroad, burdensome and oppressive and not limited in any way to scope, time or any other relevant criteria. Nitro further objects to this request because it is vague, ambiguous and unintelligible, and it is unclear what propounding party is requesting. Nitro further objects to this request because the propounding party Acushnet has failed to disclose information and documents pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, and therefore this request is premature. Nitro further objects to this request because it may violate the attorney-client privilege, work product doctrine, and/or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests

several months prior to Acushnet's discovery requests, yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Without a proper limitation on this request, Nitro cannot respond further.

## GG.  REQUEST FOR PRODUCTION NO. 129:

All Documents and things relating to the volume of sales of Nitro's Products, including, without limitation, documents sufficient to show the number and dollar amount of sales of Nitro's Products on a monthly basis over the past three years.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## HH.  REQUEST FOR PRODUCTION NO. 130:

All Documents and things relating to the gross sales revenues, costs and net profits associated with Nitro's Products, including documents sufficient

to show the cost and profit associated with the sale of Nitro's Products on a monthly basis over the past three years.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

II. **ACUSHNET'S REQUEST FOR PRODUCTION NO. 138:**

All Documents relating to communications between Nitro and K-Mart regarding refurbished, re-washed or recycled golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is

overbroad, burdensome', and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## JJ.   REQUEST FOR PRODUCTION NO. 139:

All Documents relating to communications between Nitro and Big Five Sporting Goods regarding refurbished, re-washed or recycled golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this

request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## KK.   REQUEST FOR PRODUCTION NO. 141:

All Documents relating to communications between Nitro and The Sports Authority regarding refurbished, re-washed or recycled golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to property respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## LL.    REQUEST FOR PRODUCTION NO. 142:

All Documents relating to communications between Nitro and any third party retailer regarding refurbished, re-washed or recycled golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## MM.    REQUEST FOR PRODUCTION NO. 143:

All Documents relating to communications between Nitro and BJ's Wholesale Clubs regarding refurbished, re-washed or recycled golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26

of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## NN.    REQUEST FOR PRODUCTION NO. 144:

All Documents relating to communications between Nitro and JJB Sports regarding refurbished, re-washed or recycled golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further

objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## OO.   REQUEST FOR PRODUCTION NO. 165:

All Documents related to the removal by Nitro of golf ball covers.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this

request at a reasonable place and time. Discovery and investigation are continuing.

## PP.  **REQUEST FOR PRODUCTION NO. 169:**

All Documents relating to the removal by Nitro of a clear coat of a golf ball.

### **NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### **ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:**

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. for example, Nitro document 33331 refers to a "chart for ball type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball type" has been produced. Similarly, Nitro

document 33344 refers to a "pre-established range" for compression in nitro's "final quality inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of nitro's production process.

### QQ.    REQUEST FOR PRODUCTION NO. 170:

All Documents relating to any clear coat placed on golf ball by Nitro.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all

non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## ACUSHNET'S ARGUMENT SPECIFIC TO THIS REQUEST:

Nitro did not produce all of its technical specifications for refurbishing golf balls, which are relevant and exist in this matter. for example, Nitro document 33331 refers to a "chart for ball type" that apparently lists the length of time each model of ball should remain in the "blaster." No such "chart for ball type" has been produced. Similarly, Nitro document 33344 refers to a "pre-established range" for compression in nitro's "final quality inspection." No document showing such a "pre-established range" has been produced. Nitro document 33355 apparently instructs Nitro employees to "check mix ratio" for paint. No document showing the "mix ratio" for paint has been produced. In addition, Nitro has not produced any specification sheet or other document listing any quality control requirements for incoming raw materials. Nor has Nitro produced any specification sheet or other document listing quality control requirements for each stage of nitro's production process.

### RR.  REQUEST FOR PRODUCTION NO. 173:

All Documents and things relating to the purchase by Defendant of supplies, molds, machines, or other instruments used in the design, research, testing, manufacture, development or sale of Nitro's golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the

attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses.

Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## SS.   REQUEST FOR PRODUCTION NO. 177:

All Documents relating to monthly and annual sales, both actual and forecasted, by Nitro, or any distributor or vendor, of Nitro's golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded

its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

III.  **Acushnet's Second Request to Produce, Nitro's Corresponding Responses and Acushnet's Argument.**[3]

A.  **REQUEST FOR PRODUCTION NO. 1:**

All documents or communication, which concern or relate to the results flowing from Acushnet's alleged "tortuous [sic] interference" with Nitro's advantageous business relationship.

**NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses.

Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those

---

[3]Legal analysis regarding Nitro's general objections stated in each of its responses follows after the Third Request to Produce and Nitro's Response as set forth below.

objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## B.   REQUEST FOR PRODUCTION NO. 3:

All documents and things, which have been provided to, received from or reviewed by any person listed on "Plaintiff s Witness List", served on May 6, 2002.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## C.   REQUEST FOR PRODUCTION NO. 4:

All documents and things, which concern or relate to lost sales allegedly suffered by Nitro.

**NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

**D.    REQUEST FOR PRODUCTION NO. 5:**

All documents and things, which concern or relate to loss of good will allegedly suffered by Nitro.

**NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable

privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses.  Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## E.    REQUEST FOR PRODUCTION NO. 6:

All financial statements prepared by or for Nitro for the year 1996, 1997, 1998, 1999, 2000, 2001 and 2002.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet ha not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature.  Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request.  Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter.  Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior

to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## III. **Acushnet's Third Request to Produce, Nitro's Corresponding Responses and Acushnet's Argument.**[4]

### A. **REQUEST FOR PRODUCTION NO. 1:**

All documents relating to Nitro's monthly, quarterly and annual sales on unit or dollar basis in each of the years 1996, 1997, 1998, 1999, 2000, 200 1, and 2002, including without limitation, all documents showing such sales through any particular channel of distribution such as on-course golf shops, off-course golf shops, sporting goods stores, other retailers, by mail order, or over the Internet.

### **NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above

---

[4]Legal analysis regarding Nitro's general objections stated in each of its responses follows after the Third Request to Produce and Nitro's Response as set forth below.

objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## B.    REQUEST FOR PRODUCTION NO. 2:

All documents relating to Nitro's monthly, quarterly and annual sales on unit or dollar basis of recycled and refurbished golf balls in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002 including without limitation, all documents showing such sales through any particular channel of distribution such as on-course golf shops, off-course golf shops, sporting goods stores, other retailers, by mail order, or over the Internet.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### C.    REQUEST FOR PRODUCTION NO. 3:

All documents relating to the gross sales revenues, costs and net profits associated with Nitro's recycled and refurbished golf balls, on monthly, quarterly and annual basis, for each of the years 1996, 1997, 1998, 1999, 2000, 2001 and 2002.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is-premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### D.    REQUEST FOR PRODUCTION NO. 4:

All documents relating to any budgets prepared by or for Nitro during any of the years 1996, 1997, 1998, 1999, 2000, 2001 and 2002 relating to its projected gross sales revenues, costs, or net profits with respect to its recycled and refurbished golf balls, for any period of time after such projection was prepared. This should include, without limitation, all

documents containing both such projections and the actual results obtained.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### E.   REQUEST FOR PRODUCTION NO. 5:

All documents relating to the number of store fronts in which your recycled and refurbished golf balls have been sold in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit

the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## F.  REQUEST FOR PRODUCTION NO. 6:

All documents showing specific on-course golf shops, off-course golf shops, sporting goods stores, and other retailers which have sold your recycled and refurbished balls in each of the years 1996,1997, 1998, 1999, 2000, 200 1, and 2002.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this

request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## G.    REQUEST FOR PRODUCTION NO. 7:

All documents relating to any projections or goals prepared by or for Nitro during any of the years 1996, 1997, 1998, 1999, 2000, 2001 and 2002 relating to the number of on course golf shops, off-course golf shops, sporting goods stores, and other retailers that would be selling your recycled and refurbished golf balls during any period of time after such projection or goal was prepared. This should include, without limitation, all documents contain in both such projections or goals and the actual results obtained.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above

objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

**H.    REQUEST FOR PRODUCTION NO. 8:**

All documents relating to your share (on unit or dollar basis) of the domestic market for recycled or refurbished golf balls in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002.

**NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

**I.    REQUEST FOR PRODUCTION NO. 9:**

All documents relating to any projections or goals prepared by or for Nitro in any of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002 regarding your share (on unit or dollar basis) of the domestic market for recycled or refurbished golf balls for any period of time after such

projection or goal was prepared. This should include, without limitation, all documents containing both such projections and the actual results obtained.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### J.    REQUEST FOR PRODUCTION NO. 11:

All documents relating to your share of the domestic golf ball market in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002, including without limitation your share in each such year of any market segment you believe exists of the domestic golf ball market and in which you compete. Such documents should include, without limitation, all documents identifying the other competitors and golf ball models within the domestic golf ball market or any such segment thereof, as well as their shares.

**NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

**K.    REQUEST FOR PRODUCTION NO. 12:**

All documents relating to any projections or goals prepared by or for Nitro in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002 regarding your share of the domestic golf ball market, including without limitation your share of any market segment you believe exists of the domestic golf ball market and in which you compete or intend to compete, for any period of time after said projection or goal was prepared. This should include, without limitation, all documents containing both such projections and the actual results obtained.

**NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because

Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro fritter objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro father objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## L.    REQUEST FOR PRODUCTION NO. 13:

All documents relating to the volume or percentage of your sales on unit and dollar basis accounted for by each manufacturer's refurbished and recycled golf balls.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it

prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## M.     REQUEST FOR PRODUCTION NO. 14:

All documents relating to the volume or percentage of your sales on unit and dollar basis accounted for by each particular model of golf ball.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or -privileged and non-

objectionable documents responsive to this request at a copying all non reasonable place and time. Discovery and investigation are continuing.

## N. REQUEST FOR PRODUCTION NO. 17:

All documents relating to Acushnet's market share or alleged monopoly or market power in what you describe as the premium golf ball market.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro fouler objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## O. REQUEST FOR PRODUCTION NO. 18:

All documents relating to Acushnet's market share or alleged market power in what you describe as the mid-price golf ball market.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because

Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

## P.   REQUEST FOR PRODUCTION NO. 19:

All documents relating to your allegation that Acushnet has focused on what you describe as "mid-price price market" as an area in which it wants to grow.

### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it

prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

**Q.   REQUEST FOR PRODUCTION NO. 20:**

All documents relating to the effect or possible effect of recycled or refurbished golf balls on the domestic market for new golf balls or any segment of that market that you believe exists, including without limitation the markets for new premium golf balls and for midprice golf balls.

**NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as

follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### R.    REQUEST FOR PRODUCTION NO. 47:

All documents relating to any complaint received from any customer of Nitro or any consumer regarding the quality or performance of the golf ball sold by Nitro.

#### NITRO'S RESPONSE:

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro further objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro fritter objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery. Notwithstanding the above objections, and without waiving those objections, Nitro responds as follows: Nitro will make available for inspection and/or copying all non-privileged and non-objectionable documents responsive to this request at a reasonable place and time. Discovery and investigation are continuing.

### S.    REQUEST FOR PRODUCTION NO. 49:

All statements, declarations and affidavits obtained from any Nitro customer, prospective customer or consumer with respect to any of the issues in this case.

**NITRO'S RESPONSE:**

Nitro incorporates its preliminary statement and its general objections set forth above as if fully set forth herein. Nitro objects to this request because Acushnet has not disclosed documents or information pursuant to Rule 26 of the Federal Rules of Civil Procedure, and therefore the request is premature. Nitro further objects to this request on the basis that it is overbroad, burdensome, and oppressive because Acushnet fails to limit the scope and/or time period of the request. Nitro further objects to this request to the extent that the documents sought are protected by the attorney-client privilege, work product doctrine, or other applicable privileges, including but not limited to the self-critical analysis privilege. Nitro further objects to this request to the extent that it seeks documents that contain Nitro's trade secrets, and/or other proprietary business information of Nitro. Nitro further objects to this request to the extent that it prematurely seeks documents from Nitro's expert witnesses. Nitro fritter objects to this request to the extent it seeks documents from non-testifying experts retained by Nitro for consultation. Nitro further objects to this request to the extent that it seeks documents that are irrelevant and not calculated to lead to the discovery of admissible evidence in this matter. Nitro further objects to this request on the grounds that Nitro propounded its discovery requests several months prior to Acushnet's discovery requests; yet Acushnet has yet to properly respond or produce documents to Nitro's earlier propounded discovery.

## IV. Discussion in Support of Motion:

The requested financial, gross sales, costs and net profits by product on a monthly basis over the last three years are imperative to the economic claims made in this matter. Likewise, the technical specifications that Nitro utilizes in the production of "refurbished" golf balls is imperative to Acushnet's trademark and patent claims. With the approaching case-specific expert deadlines, these documents are also required for Acushnet's experts to accurately render an opinion regarding the economic and liability claims on both sides in this matter .

With the fact discovery deadline quickly approaching, it is imperative that Acushnet obtain any and all remaining responsive documents as quickly as possible to

properly prepare for the depositions and expert discovery in this matter. At some point, Acushnet is entitled to confirmation that Nitro has completed its search for responsive documents so that discovery may proceed in an orderly and efficient manner.

This Court has broad discretion in controlling the timing of discovery. *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979); *see also Marroquin-Manriquez v. Immigration and Naturalization Service,* 699 F.2d 129, 134 (3d Cir. 1983).

In *Carpenter Technology,* 1990 WL 61180 (E.D. Pa. 1990), the court stayed the depositions of plaintiff's corporate designees pending production and review of all relevant corporate documents pursuant to outstanding requests for production of documents. *Carpenter Technology,* 1990 WL 61180 at * 1. The court found that taking such depositions prior to complete document production could lead to the need to reconvene the depositions of certain corporate officers for the purpose of a separate examination regarding the documents. *Id.* at *4. The court concluded that requiring plaintiff to produce the same witnesses on two separate occasions would result in undesirable, piecemeal discovery – which was both an inefficient and costly means of pursuing discovery. *Id.*

Therefore, Acushnet respectfully requests that this Court order Nitro to provide better answers and produce all remaining and outstanding responsive documents within ten (10) days of the date of any order entered herein. Further, pursuant to this Court's broad discretion in controlling the timing of discovery, Acushnet respectfully requests that Acushnet be allowed to re-depose and/or reconvene any necessary deponents in this matter after the issues raised in this Motion have been resolved and when Acushnet

has received all of remaining document production and better answers to Interrogatories from Nitro if necessary.

Moreover, Nitro should not be permitted to utilize blanket objections throughout its responses without addressing each specific request. Specifically, Nitro objects to every request on the basis of "self-critical analysis privilege". The Eleventh Circuit has not addressed the self-critical analysis privilege in any context. This so-called privilege is neither widely recognized nor firmly established and is of doubtful viability in light of the decision in University of Pennsylvania, 493 U.S. 182 (1990). Additionally, the origin of this alleged privilege is in order to protect the free flow of the type of information sought in areas where there is a strong public interest, the information sought must be of the type whose flow would be curtailed if discovery was permitted, the information sought must be prepared with the expectation that it would be kept confidential, and the information sought must be subjective analysis designed to have a positive societal effect. See Johnson v. United Parcel Service, 206 F.R.D. 686 (M.D. Fla. 2002). This case, involving refurbishment of golf balls, is not the type of case this alleged objection was meant to protect.

Furthermore, Nitro relies on its blanket objection that it does not have to produce documents or it may delay in producing documents because it alleges that Acushnet procrastinated in its Rule 26 Disclosures and its responses to Nitro's Requests. Nitro completely mischaracterizes the facts. This Court well knows the background with respect to the previous disqualification of counsel and Nitro's objection to release of documents to Acushnet's current counsel. Notwithstanding this, Nitro's objection is inappropriate. See Pulsecard, Inc. v. Discover Card Services, 168 F.R.D. 295, 308

(D.Kan. 1996) (stating a party may not withhold discovery solely because it has not obtained to its satisfaction other discovery).

Therefore, Acushnet requests that this Court order Nitro to produce all remaining and outstanding responsive documents within ten (10) days of the date of any order entered herein.

## CERTIFICATE OF COUNSEL

Pursuant to S.D. Fla. L.R. 7.1A.3., the undersigned certified that they have attempted to work these matters out with opposing counsel, to no avail.

Respectfully submitted,

STEVEN J. BRODIE
Florida Bar No. 333069
E-mail: sbrodie@carltonfields.com
JEFFREY MICHAEL COHEN
Florida Bar No. 091495
E-mail: jmcohen@carltonfields.com
MICHELLE GERVAIS
Florida Bar No. 173827
E-mail: mgervais@carltonfields.com
CARLTON, FIELDS, P.A.
100 SE Second Street; Ste. 4000
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Facsimile and U.S. Mail upon: Counsel for Nitro on 7th day of May, 2003:

Gerald F. Richman
Gary S. Betensky
Richman Greer Weil Brumbaugh Mirabito & Christensen, P.A.
*Attorneys for Nitro*
250 Australian Avenue, Suite 1504
West Palm Beach, FL 33401

Mark W. Yocca
Yocca Patch & Yocca LLP
*Attorneys for Nitro*
19900 Mac Arthur Boulevard
Suite 650
Irvine, CA   92612

CARLTON FIELDS, P.A.
4000 Bank of America Tower
100 SE Second Street
Miami, FL  33131-9101
Telephone:   (305) 530-0050
Facsimile:    (305) 530-0055

By: *[signature]*

STEVEN J. BRODIE, ESQ.
Florida Bar No. 333069
*sbrodie@carltonfields.com*
JEFFREY MICHAEL COHEN
Florida Bar No. 091495
*jmcohen@carltonfields.com*
MICHELLE GERVAIS, ESQ.
Florida Bar No. 173827
*mgervais@carltonfields.com*
- and -
ROBERT CIOTTI
Florida Bar No. 333141
*rciotti@carltonfields.com*
Carlton Fields, P.A.
One Harbour Place
777 S. Harbour Island Blvd.
Tampa, FL  33602-5730
Telephone:    (813) 223-7000
Facsimile:    (813) 229-4133



# EXHIBIT "A"

UNITED-STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

IN RE: NITRO LEISURE PRODUCTS, L.L.C.
_____/

### DEFENDANT ACUSHNET COMPANY'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF NITRO LEISURE PRODUCTS, INC.

Defendant, Acushnet Company ("Acushnet" or "Defendant"), pursuant to Fed. R. Civ. P. Rule 34 requests that Plaintiff, Nitro Leisure Products, Inc., ("Nitro" or "Plaintiff"), produce for inspection and reproduction at the offices of Carlton Fields, P.A., 100 SE 2nd Street, Ste. 4000; Miami, FL 33131, within thirty (30) days of the date hereof, all documents in its possession, custody or control as requested herein.

Each of the following requests is continuing in nature. Accordingly, if after producing any documents, Nitro, or anyone on its behalf, obtains or becomes aware of additional information or documents pertaining to any request for production, Nitro is required, pursuant to Fed. R. Civ. P. Rule 26(e), to provide such information or documents by way of supplemental responses. Such supplemental responses are to be served upon Acushnet within thirty (30) days after Nitro becomes aware of such information or documents, but no later than one (1) week prior to the date of any trial or hearing in this action.

In responding to Acushnet's requests, furnish all information or documents which are available, including documents in the possession, custody or control of Nitro's attorneys or investigators or anyone else acting for or on Nitro's behalf, and not merely those documents held by Nitro. If Nitro is unaware of the existence of any documents responsive to a request, Nitro

MIA#2229254.02

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

should expressly so indicate.  These requests for production of documents should be read, interpreted and responded to in accordance with the definitions and instructions set forth below.

## DEFINITIONS

A.      The term "Plaintiff," or "Nitro" as used herein, shall mean Nitro Leisure Products, Inc., its officers, employees, agents, counsel, associates, accountants, servants, assignees, heirs, personal representatives, and all other persons or entities acting or purporting to act with or on behalf of Nitro as Plaintiff in this action.

B.      The term "Defendant," or "Acushnet" as used herein, shall refer to Acushnet Company, as well as to any officers, employees, agents, counsel, associates, accountants, servants, assignees, heirs, personal representatives, and all other persons or entities acting or purporting to act on behalf of Acushnet in this action.

C.      The "Acushnet Patents" shall mean patents identified in the Complaint, including United States Patent Nos. 5,609,535; 4,846,910; 4,546,980; 4,692,497; 4,770,422 and 5,000,459.

D.      The "Acushnet Trademarks" shall mean all trademarks and commercial styles, logo types, side stamps and service marks of any type or kind owned by Acushnet, including 1 BALL IN GOLF, DT, DT DISTANCE, DT WOUND, PROFESSIONAL, PINNACLE, PRO V1 and their respective logo types, designs and commercial styles, including without limitation the 929,942; 516,729; 316,118; 1,601,034; 1,112,381; 1,165,697; and  1,974,304 and applications Serial Nos. 76/143,347 and 76/320,324.

E.      The term "Acushnet Product" shall mean any golf ball that is manufactured, fabricated, advertised, marketed, sold or offered for sale by Acushnet.

F.      The term "Relevant Nitro Product" shall mean any golf ball, new or used, that has been acquired, manufactured, fabricated, refurbished, remanufactured, repaired, recycled,

refinished, re-washed, or any other process advertised, marketed, sold or offered for sale by or on behalf of Nitro, which product is either (i) created, derived or otherwise produced in any way from, in whole or in part, any Acushnet Product, (ii) embodies or at any time embodied the technology claimed in any claim of any Acushnet patent, or (iii) which bears or at any time bore an Acushnet Trademark or any trademark similar thereto.

G.    The term "including" preceded by a general term and followed by a list of examples shall be construed to include the examples without limitation to the scope of the general term.

H.    The term "Document", as used herein, shall mean every writing, thing, or record of every type and description of which you have knowledge, whether or not in your possession, custody or control including without limitation:   correspondence, memoranda, electronic communications of any kind including e-mails, stenographic and handwritten notes, diagrams, studies, publications, books, pamphlets, pictures, drawings of every type, blue lines, blue prints, films, voice recordings, maps, reports, surveys, minutes, telegrams, telexes, contracts, memoranda of agreement(s), diaries, graphs, charts, checks, bank statements, income tax forms, other tax forms, microfilm microfiche, statistical compilations, data processing cards, computer records, computer tapes and printouts, invoices, bills, receipts, anything conceived by Defendants as a document or thing and every copy of such Document or thing where the original is not in your possession, custody or control.  Any such Document on any sheet or side thereof, any marks, such as (but not limited) to initials, stamped indicia, comments or notations, of any character and not a part of the original text or photographic reproduction thereof, is to be considered and identified as a separate Document.  As used herein, "Document" is to be used to include the word "document" in its customary and broadest sense, but shall also include things,

MIA#2229254.02                                - 3 -

C A R L T O N   F I E L D S , P . A .
Bank of America Tower at  International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida  33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

in particular any tangible object, even-objects other than a document as that word is customarily used, and includes without limitation, prototype models, specimens, computer disks and tapes, video tapes and audio tapes.

I.     The terms "concern", "concerning", "relate", "relating" and similar terms and phases, as used with respect to a request for documents and a subject (e.g., "documents relating to a subject") means a request for all documents relating to or that are related to by the subject, including, without limitation, all documents and things that are, refer to, are referred to by, explain, are explained by, comprise, are comprised of, evidence, tend to evidence, contradict, tend to contradict, mention, are mentioned by, reflect or are reflected by, the subject.

## INSTRUCTIONS

a.     <u>Documents Withheld from Production</u>

If Nitro objects to the production of any **Document** requested below, or if Nitro withholds from production any **Document** encompassed by this request, set forth the following:

  i.     The identity of the **Document** withheld and the legal basis for withholding it;

  ii.    The identity of **the** author, signor, addressee, recipient, and any copied recipient(s) of the withheld **Document**;

  iii.   The date on which the **Document** was drafted;

  iv.    A summary of the Document's contents; and

  v.     The specific basis for the objection to production of the **Documents**.

C A R L T O N   F I E L D S, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

b.      Claim of Privilege

If Nitro objects to the production of any **Document** or part of a **Document** on the basis of either privilege or that the **Document** or the information contained in the **Document** constitutes attorney work product, Nitro should provide a statement signed and verified by Nitro's attorney which sets forth as to each **Document** that is withheld on a claim of privilege the following information:

i.      The name and address of the person(s) who possess or control the **Document** and each copy of the **Document**;

ii.     The name of the author of the **Document**;

iii.    The name of the sender of the **Document** if different from the author;

iv.     The name of the person(s) to whom copies were sent or otherwise made available;

v.      The name of any person(s) known to have seen or have possession of a copy of the **Document** if not identified above;

vi.     The business affiliation and job titles of every person named in (i), (ii), (iii), (iv) and (v) above;

vii.    The date of the **Document**;

viii.   A brief description of the nature (e.g., letter, memorandum, etc.) and subject matter of the **Document**; and

ix.     The basis for the privilege claim.

C A R L T O N   F I E L D S , P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida  33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

    c.    <u>Lost or Destroyed Documents</u>

If any **Document** that would have been responsive to the requests herein has been destroyed or is no longer in Nitro's possession, custody or control, provide the following information:

    i.    The date of the **Document;**

    ii.    The names and job titles of the preparer(s), sender(s), and recipient(s) of the **Documents;**

    iii.    The date of and the identity of the person responsible for its destruction, loss, transfer or other act or omission by which the **Document** left Nitro's possession, custody or control; and

    iv.    The circumstances surrounding the loss of the **Document** or the reason for its destruction.

## **Request for Production**

1.    All Documents and things identified or referred to in the answers to Acushnet's First Set of Interrogatories to Nitro (Nos. 1 – 7).

2.    All Documents relating to the operation, structure and history of Nitro, or any predecessor or related organization, that was involved in any way with the recycling, refurbishment, manufacture, sale or distribution of an Acushnet Product.

3.    All Documents and things that relate to Acushnet's claim for injunctive relief in this action, other than the documents that have already been submitted to the Court prior to or during the hearing on Defendant's Motion for a Preliminary Injunction.

C A R L T O N  F I E L D S, P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

4.      All Documents relating to any admission or denial set forth in the Answer contained within Nitro's Answer and Affirmative Defenses to Amended Counterclaims.

5.      All Documents relating to any allegation set forth in any of the Affirmative Defenses to Nitro's Answer and Affirmative Defenses to Amended Counterclaims.

6.      All Documents relating to Nitro's allegation that "Acushnet's conduct has caused Acushnet's alleged trademarks to lose any significance as symbols of equal quality."

7.      All Documents relating to Nitro's allegation that Nitro relied on Acushnet's "failure to object to Nitro's allegedly unlawful conduct."

8.      All Documents relating to Nitro's allegation that "Nitro has been severely prejudiced by Acushnet's failure to timely object to Nitro's conduct."

9.      All Documents relating to Nitro's allegation that "Acushnet has engaged in a wide variety of inequitable conduct directly relating to the claims it has asserted against Nitro."

10.     All Documents relating to Nitro's allegation that the "public is not deceived or misled by Nitro's truthful, non-misleading use of Acushnet's alleged trademarks."

11.     All Documents relating to each and every misleading advertisement alleged to have been published by Acushnet.

12.     All Documents relating to each and every false and misleading statement alleged to have been made to any person by Acushnet.

13.     All Documents relating to each member of the general public with whom a commercial relationship is alleged to have been interfered with.

MIA#2229254.02                                    . 7 .

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

14.    All Documents relating to each retailer with whom a commercial relationship is alleged to have been interfered with.

15.    All Documents relating to each customer with whom a commercial relationship is alleged to have been interfered with.

16.    All Documents relating to Nitro's allegation that Nitro does not "dilute, infringe, unfairly compete with or otherwise violate any of Acushnet's rights."

17.    All Documents relating to Nitro's allegation that "Neither Nitro nor any of Nitro's products infringe, either directly, indirectly, literally, or under the doctrine of equivalents any claim of any of Acushnet's patents."

18.    All Documents relating to Nitro's allegation that "Acushnet's patents which it alleged that Nitro has infringed, and each claim thereof, are invalid."

19.    All Documents relating to Nitro's allegation that "Acushnet's patents which it alleged that Nitro has infringed, and each claim thereof, are invalid for failing to comply" with 35 U.S.C. § 102.

20.    All Documents relating to Nitro's allegation that "Acushnet's patents which it alleged that Nitro has infringed, and each claim thereof, are invalid for failing to comply" with 35 U.S.C. § 103.

21.    All Documents relating to Nitro's allegation that "Acushnet's patents which it alleged that Nitro has infringed, and each claim thereof, are invalid for failing to comply" with 35 U.S.C. § 112.

22.    All Documents relating to Nitro's allegation that "Acushnet's patents which it alleged that Nitro has infringed, and each claim thereof, are invalid for failing to comply" with

MIA#2229254.02                                              - 8 -

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

35 U.S.C. § 135.

23.     At least one specimen of each and every product, label, package, tag, brochure, advertisement, promotional item, information literature, contribution list, stationery, invoice, and business card on which any name or mark comprised of or-including the word(s) of an Acushnet Trademark, appears or has appeared.

24.     At least one specimen of each and every product, label, package, tag, brochure, advertisement, promotional item, information literature, contribution list, stationery, invoice, and business card, in which or with respect to which an Acushnet Product was sold or resold by or on behalf of Nitro.

25.     All Documents and things relating to the use anywhere of any name or mark comprised of or including the word(s) of an Acushnet Trademark, or any phonetically or visually similar variation thereof, by Nitro and/or its licensees.

26.     All Documents and things relating to the use in commerce in any manner, denominatively or otherwise, of any name or mark comprised of or including the word(s) of an Acushnet Trademark, or any phonetically or visually similar variation thereof, by Nitro and/or its licensees.

27.     All Documents and things that relate to the methods or manner by which Nitro and/or its licensees have advertised or promoted the sale or distribution of products in association with any name or mark comprised of or including the word(s) of an Acushnet Trademark, or any phonetically or visually similar variation thereof.

28.     All Documents and things relating to each different manner in which Nitro has advertised or promoted its products in association with a name or mark comprising in whole or

MIA#2229254.02                                                9

CARLTON FIELDS, P.A.
Bank of America Tower at International Place · Suite 4000 · 100 Southeast Second Street · Miami · Florida 33131-9101 · (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

part the word(s) of an Acushnet Trademark, or any phonetically or visually similar variation thereof.

29.    All Documents and packaging that refer, relate to or evidence the way that people see any Acushnet product, used or otherwise, in association with Nitro's products, services or activities.

30.    All Documents and things relating to expenditures made by Nitro to advertise, solicit or promote the sale or distribution of any refurbished, recycled or manufactured golf ball. Pursuant to Rule 1006, Fed. R. Evid., if the documents and things responsive to this Request are voluminous, responsive information may be produced in summary form, provided the original supporting documents and things, or copies/reproduction of same, will be made available upon Acushnet's request.

31.    All Documents relating to investigations or studies made of Acushnet's business or activities at any time by Nitro.

32.    All Documents and things relating to any marketing survey, focus group, or other analysis conducted by or on behalf of Nitro for any name or mark comprised of or including the word(s) of an Acushnet Trademark, or any phonetically or visually similar variation thereof.

33.    All Documents and things relating to any surveys that have been conducted to evaluate whether the use of any name or mark including in whole or part the word(s) of an Acushnet Trademark, or any phonetically or visually similar variation thereof, is likely to cause confusion with any other mark.

34.    All Documents and things relating to control, supervision, oversight and enforcement of Nitro's efforts to avoid likelihood of confusion with respect to any Acushnet

MIA#2229254.02                                    - 10 -

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

Trademark.

35.     All representative documents and things that indicate where (meaning in which state or geographic area) Nitro sells, distributes, markets or promotes any refurbished, recycled or remanufactured golf ball derived in whole or in part from any Acushnet product.

36.     Produce documents and things that identify all past and current efforts to sell, distribute, market or promote any refurbished, recycled or remanufactured golf ball derived in whole or in part from any Acushnet product.

37.     All Documents and things relating to actual disputes or potential disputes of which Nitro is aware, between Nitro and any person other than Acushnet, concerning sale, offer for sale or use of any golf ball or process for making a golf ball, including without limitation notices of infringement and unfair competition, infringement investigations, and court and agency proceedings of any type (such as infringement actions, unfair competition actions, oppositions, cancellations and government charity related investigations) in any country.

38.     All Documents referring or relating to the revenues collected by Nitro or any related companies or entities as a result of its sales, distributing, marketing or promoting any refurbished, recycled or remanufactured golf ball derived in whole or in part from any Acushnet product, Nitro's overhead costs and expenses diminishing said revenue, and the net revenue realized by Nitro and identify all documents related thereto.

39.     All Documents that refer or relate to revenue received by orders placed via the Internet, or received because of a customer inquiry resulting from the customer's viewing of advertising or promotion on the Internet, sales relating to any refurbished, recycled or remanufactured golf ball derived in whole or in part from any Acushnet product.

MIA#2229254.02                                    - 11 -

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

40.    All Documents evidencing in any way confusion between any Acushnet product and any golf ball sold by Nitro, including but not limited to every instance of misdirected mail, e-mail, complaint, inquiry, or other communication, whether received directly by Nitro or by its fund-raiders or other representatives.

41.    All Documents indicating awareness by Nitro of Acushnet's use or registration of the Acushnet Trademark.

42.    All Documents regarding Nitro's selection, adoption, use or alteration of any name or mark comprised of or including the word(s) of an Acushnet Trademark, or any phonetically or visually similar variation thereof.

43.    All Documents relating to or reflecting Nitro's or its licensees' marketing, growth, and expansion plans related in any way to use or sale of any product including any name or mark comprised of or including the word(s) of an Acushnet Trademark, or any phonetically or visually similar variation thereof, including but not limited to documents referring or relating to products, channels of trade, or geographic scope of promotion or solicitation.

44.    All Documents that Nitro has received relating to the performance or quality of Nitro's golf balls.  These documents should include, but are not limited to, complaints from the general public.

45.    All Documents and things referring or relating to any research, investigation, consumer or market survey or test undertaken by Nitro (or on behalf of Nitro), including but not limited to search reports and investigation reports prepared by or for Nitro, which refer to, relate to, or comment upon any of the issues in this litigation.

46.    All Documents relating to federal and state trademark or service mark

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

applications and any domain name applications for registration filed by or on behalf of Acushnet in connection with the mark Acushnet Trademark, and all documents referring or relating to any such attempts to register.

47.     At least one sample of each and every product, Document or thing in Nitro's possession or under its control that contains an Acushnet Trademark.

48.     At least one sample of each and every Relevant Nitro Product.

49.     All Documents relating to a Relevant Nitro Product.

50.     All Documents in Nitro's possession or control that in any way refer to Acushnet or any Acushnet golf ball.

51.     All Documents and things regarding the types and classes of consumers to whom, and the markets and channels of trade through which Nitro has marketed, offered for sale or sold any golf ball.

52.     All Documents and things referring or relating to or comprising any opinion from counsel, whether or not such counsel was employed by Nitro, concerning Nitro's right to use any Acushnet Trademark, and all documents and things referring or relating to any action taken by Nitro following any such opinion.

53.     All Documents and things referring or relating to or evidencing Nitro's first receipt of notice of Acushnet's use of the mark Acushnet Trademarks.

54.     All Documents showing, concerning, evidencing, relating or referring to Nitro's unit and dollar sales associated with the sale of any golf ball derived from an Acushnet Product or any product bearing any Acushnet Trademark.

C A R L T O N   F I E L D S, P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

55. All Documents showing, concerning, evidencing, relating or referring to the services and/or goods offered by Nitro in connection with any Acushnet Trademark.

56. All Documents, showing, concerning, evidencing, relating or referring to measures taken by Nitro to monitor the quality of its services or goods rendered or supplied bearing any Acushnet Trademark.

57. All Documents and things regarding Nitro's policy with respect to retention of documents, including business records.

58. All Documents and things obtained from or supplied to any expert consulted by Nitro, or any person acting for or on behalf of Nitro, regarding any of the issues involved in this proceeding.

59. All Documents and things, other than those produced in response to any of the foregoing requests, upon which Nitro intends to rely in connection with this litigation.

60. All Documents not specifically requested herein but which were used or referred to by Nitro in preparing responses to these document request or were used or referred to by Nitro to comply with these document requests.

61. All Documents describing the various processes utilized by Nitro for refurbishing golf balls

62. All Documents describing the various processes utilized by Nitro for manufacturing its "Nitro Titanium" golf balls.

63. All Documents relating to any process for removing any portion of the outer cover of a golf ball.

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

64.     All Documents relating to any process for applying any outer covering or coating to a golf ball.

65.     All Documents relating to any process for applying any printed material to the surface of a golf ball.

66.     All Documents relating to any material applied by Nitro to the exterior of a golf ball.

67.     All Documents relating to any dimple pattern applied by Nitro to golf balls.

68.     All Documents relating to any and all quality control procedures employed by Nitro in connection with refurbishing of golf balls.

69.     All Documents relating to any and all quality control procedures employed by Nitro in connection with the manufacturing of Nitro Titanium golf balls.

70.     All Documents relating to all disclaimers used by Nitro, now or in the past, identifying when and how such disclaimers were conveyed to the public.

71.     All Documents relating to specifications and standards used by Nitro, now or in the past, applying to golf balls refurbished or manufactured by Nitro.

72.     All Documents relating to standards used by Nitro for determining if ball is to be recycled or refurbished.

73.     All Documents relating to each and every version of every Nitro web site.

74.     All Documents relating to resellers to whom Nitro has sold refurbished golf balls.

75.     All Documents relating to any investigation of validity or enforceability of Acushnet patents.

C A R L T O N  F I E L D S , P . A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

76. All Documents relating to any investigation of possible infringement of Acushnet patents by golf balls sold by Nitro. All Documents from purchasers of golf balls from Nitro reflecting any complaints or objections regarding quality or performance of such golf balls.

77. All Documents and things relating to any test results or other documentation of performance of Nitro's golf balls, including tests as to distance, spin, feel, dispersion, control, flight qualities, roll characteristics, durability and appearance.

78. All Documents and things relating to any test results or other documentation of performance of Acushnet's golf balls, including tests as to distance, spin, feel, dispersion, control, flight qualities, roll characteristics, durability and appearance.

79. All studies, other Documents and things relating to the market share of Acushnet's golf balls in the domestic market for new golf balls.

80. All studies, other Documents and things relating to the market share of Nitro's golf balls in the domestic market for new golf balls.

81. All studies, other Documents and things relating to the market share of Acushnet's golf balls in the domestic market for premium golf balls.

82. All studies, other Documents and things relating to the market share of Nitro's golf balls in the domestic market for premium golf balls.

83. All studies, other Documents and things relating to the market share of Acushnet's golf balls in the worldwide market for new golf balls.

84. All studies, other Documents and things relating to the market share of Nitro's golf balls in the worldwide market for new golf balls.

C A R L T O N   F I E L D S , P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

85.     All studies, other Documents and things relating to the market share of Acushnet's golf balls in the worldwide market for premium golf balls.

86.     All studies, other Documents and things relating to the market share of Nitro's golf balls in the worldwide market for premium golf balls.

87.     All studies, other Documents and things relating to the effect or possible effect of refurbished golf balls on the domestic market for new golf balls.

88.     All studies, other Documents and things relating to the effect or possible effect of refurbished golf balls on the domestic market for premium golf balls.

89.     All studies, other Documents and things relating to the effect or possible effect or refurbished golf balls on the worldwide market for new golf balls.

90.     All studies, other Documents and things relating to the effect or possible effect of refurbished golf balls on the worldwide market for premium golf balls.

91.     All correspondence, other Documents and things relating to any demand by any person that Nitro cease and desist from refurbishing, remanufacturing, repairing, refinishing, re-washing or recycling golf balls.

92.     All correspondence, other Documents and things relating to any demand by any person that Nitro cease and desist from the purchase or sale of refurbished, re-manufactured, repaired, recycled, refinished, re-washing or otherwise used golf balls.

93.     All pleadings, other Documents and thing relating to any lawsuit regarding refurbishing, re-manufacturing, repairing, refinishing, re-washing or recycling golf balls.

94.     All pleadings, other Documents and things relating to any lawsuit that Acushnet

C A R L T O N  F I E L D S , P . A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

has brought regarding the same or purchase of refurbished, re-manufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls.

95.    All files, portions of files or other Documents relating to refurbished, re-manufactured, recycle, refinished, re-washed, repaired or otherwise used golf balls.

96.    All correspondence, memoranda or other Documents relating to Acushnet.

97.    All studies, reports or other Documents relating to sales or re-sales of Acushnet golf balls, whether new or used.

98.    All presentation Documents, seminar materials or other documents relating to refurbished, re-manufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls.

99.    All memoranda, reports or other Documents relating to test results for Titleist DT brand golf balls, including, without limitation, the golf balls' characteristics as to compression, spin, feel or distance.

100.    All specifications, descriptions or other Documents relating to Acushnet's processes or methods of painting or clear coating golf balls.

101.    All specifications, descriptions or other Documents relating to Nitro's processes or methods of painting or clear coating golf balls.

102.    All Documents relating to mechanical or other testing to reflect differences or similarities between different models of the DT brand golf balls.

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

103. All test results, studies or other Documents relating to the structural integrity of Acushnet's golf balls, including, without limitation, characteristics, such as the roundness of the core of wound golf balls.

104. All test results, studies or other Documents relating to the structural integrity of Nitro's golf balls, including, without limitation, characteristics, such as the roundness of the core of wound golf balls.

105. All memoranda, notes or other Documents relating to refurbished, re-manufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls and sent by or between any sales person or sales representative of Acushnet, on the one hand, and Nitro, on the other hand.

106. All memoranda, notes or other Documents relating to refurbished, re-manufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls and sent by or between any sales person or sales representative of Nitro, on the one hand, and Acushnet, on the other hand.

107. All memoranda, notes or other Documents relating to Nitro sent by or between any sales person or sales representative of Acushnet, on the one hand, and Nitro, on the other hand.

108. All memoranda, notes or other Documents relating to Acushnet sent by or between any sales person or sales representative of Nitro, on the one hand, and Acushnet, on the other hand.

109. All memoranda, correspondence or other Documents relating to Nitro's decision to file suit or take action against Acushnet.

C A R L T O N   F I E L D S , P . A .
Bank of America Tower at International Place · Suite 4000 · 100 Southeast Second Street · Miami · Florida 33131-9101 · (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

110.    All preliminary and draft reports, other Documents and things prepared by any expert or consultant relating to the instant action.

111.    All reports, other Documents and things prepared by any expert or consultant relating to any litigation or threatened litigation between Nitro and any third party concerning the refurbishing, re-manufacturing, repairing, refinishing, re-washing or otherwise recycling of golf balls.

112.    All correspondence, other Documents and things that were transmitted to or received from any expert or consultant relating to the instant action.

113.    All Documents and things provided to Nitro "by retail accounts or employees who receive consumer complaints or directly by customers who purchase balls purportedly manufactured by Acushnet and later realize they are not TITLEIST or PINNACLE balls or do not perform like TITLEIST or PINNACLE balls".

114.    All Documents relating to pleadings and court papers filed in any action that a manufacturer of golf balls brought in any action against any golf ball refurbishers, re-manufacturers, repairers, refinishers, re-washers or otherwise recyclers of golf balls, including, without limitation, Nitro.

115.    All Documents and things relating to Acushnet, Acushnet Trademark or any product manufactured by Acushnet, including, without limitation, each document wherein a reference is made to Acushnet, such as letters to retailers and other in the trade or industry.

116.    All Documents and things relating to the packaging for Nitro's Products.

117.    All Document and things relating to any advertising for Nitro's Products.

C A R L T O N   F I E L D S , P . A .
Bank of America Tower at International Place · Suite 4000 · 100 Southeast Second Street · Miami · Florida 33131-9101 · (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

118.   All Documents and things relating to Nitro's allegations that golfers and other members of the relevant consuming public are aware and know that companies such as Nitro sell refurbished, re-manufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls, including used "Titleist" and "Pinnacle" golf balls, and that Nitro and other such resellers are not connected or associated with the original golf ball manufacturer, including any documented instances of customer confusion or consumer complaints received by Nitro.

119.   All Documents and things relating to the prices of Nitro's Products, and other refurbished, re-manufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls.

120.   All Documents and things relating to the used golf ball industry, including the refurbishing, recycling, re-washing, re-manufacturing, refinishing and reselling of used golf balls.

121.   All Documents and things relating to Nitro's golf balls.

122.   All Documents relating to the identity of Nitro's sales representatives, including any sales representatives that may have communicated to any person regarding the performance or quality of any Nitro product that is created, in whole or in part, from a product originally manufactured by Acushnet.

123.   All Documents relating to any communication between Nitro and any person regarding Nitro or Nitro's Products that are created, in whole or in part, from a product manufactured or sold by Acushnet.

124.   All Documents and things relating to any attempt, effort or action by Acushnet to influence another person not to advertise, distribute or purchase refurbished, re-manufactured,

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

repaired, recycled, refinished, re-washed or otherwise used golf balls, including Nitro's Products.

125. All Documents and things relating to any charge, assertion or allegation against Nitro by any person of trademark infringement, trademark counterfeiting, unfair competition, false designation of origin, federal false advertisement and product disparagement, federal trademark dilution, state statutory and common law trademark and trade name infringement, state statutory trademark dilution, state statutory unfair competition, and unjust enrichment.

126. All Documents and things relating to any instances of consumer confusion with regard to Acushnet's Products, or any consumer complaints received by Nitro concerning Acushnet's Products.

127. All Documents and things relating to Nitro's knowledge of Acushnet, Acushnet's Products, Acushnet's trademarks, Acushnet's advertising, including, without limitation, all documents concerning the date and circumstances under which such knowledge was first obtained and the identify of the persons who first obtained such knowledge, and all documents that provided such knowledge to Nitro.

128. All Documents and things relating to Acushnet or Acushnet's Products, including, without limitation, any document received from any customer or other person referring to Acushnet or Acushnet's Products, and all documents that reference Acushnet or Acushnet's Products.

129. All Documents and things relating to the volume of sales of Nitro's Products, including, without limitation, documents sufficient to show the number and dollar amount of sales of Nitro's Products on a monthly basis over the past three years.

130. All Documents and things relating to the gross sales revenues, costs and net

MIA#2229254.02

· 22

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

profits associated with Nitro's Products, including documents sufficient to show the cost and profit associated with the sale of Nitro's Products on a monthly basis over the past three years.

131. All Documents and things sufficient to establish that Nitro has complied with the public notice and marking requirements of the Patent Act (35 U.S.C. Section 287) relating to Nitro's Alleged Patents.

132. All Documents sent by or between Nitro and any of its insurers relating to Acushnet or this action.

133. All Documents relating to policies of insurance that provide coverage or may provide coverage to Nitro in regard to this action.

134. All tangible reports, physical models, compilations of data, and other materials prepared by an expert, or for an expert, who may testify at any trial or deposition in this lawsuit.

135. All Documents and things concerning any poll, survey, market research, focus group, consumer awareness study, or other research, whether formal or informal, relating to Nitro, Nitro's Products, Nitro's marks, or otherwise related to Nitro's advertising, distribution and/or sale of used golf balls.

136. All Documents and things relating to any poll, survey, market research, focus group, consumer awareness study, or other research, whether formal or informal, concerning Acushnet, Acushnet's Products, Acushnet's marks, or otherwise related to Acushnet's advertising, distribution and/or sale of used golf balls.

137. All Documents and things relating to the possible unlawfulness of Nitro's Products, including, without limitation, all documents relating to all communications whereby any person expressed any concern regarding same and any minutes and notes from all meetings

MIA#2229254.02                                    - 23 -

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

wherein any of the foregoing topics were discussed.

138. All Documents relating to communications between Nitro and K-Mart regarding refurbished, re-washed or recycled golf balls.

139. All Documents relating to communications between Nitro and Big Five Sporting Goods regarding refurbished, re-washed or recycled golf balls.

140. All Documents relating to communications between Nitro and Wal-Mart Canada regarding refurbished, re-washed or recycled golf balls.

141. All Documents relating to communications between Nitro and The Sports Authority regarding refurbished, re-washed or recycled golf balls.

142. All Documents relating to communications between Nitro and any third party retailer regarding refurbished, re-washed or recycled golf balls.

143. All Documents relating to communications between Nitro and BJ's Wholesale Clubs regarding refurbished, re-washed or recycled golf balls.

144. All Documents relating to communications between Nitro and JJB Sports regarding refurbished, re-washed or recycled golf balls.

145. All Documents relating to communications between Nitro and Martin Barrier regarding refurbished, re-washed or recycled golf balls.

146. All Documents referring or relating to or obtained as a result of any patentability, validity, enforceability, or prior-art search, study, or analysis, including but not limited to any search, study, or analysis conducted by or for Acushnet relating to Acushnet's Alleged Patents, including any patents, publications, or potential prior-art identified through any such search,

CARLTON FIELDS, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

study, or analysis.

147.     All Documents referring or relating to any evaluations, reviews, studies, or analysis of the prior art or potential prior art relating to the subject matter of Acushnet's Alleged Patents.

148.     All Documents referring or relating to the conception, design, development, and reduction to practice of any matters or methods claimed in any Acushnet Patent, including without limitation all drawings, sketches, photographs, notes, figures, computations, laboratory notebooks, and disclosure documents.

149.     All Documents referring or relating to, or tending to support or refute, Acushnet's contentions that Nitro's products and/or any methods employed by Nitro infringe any claims of any Acushnet Patent.

150.     All Documents referring or relating to any survey, study, investigation, review, or analysis comparing Nitro's products or any methods employed by Nitro to the claims of any Acushnet Patent.

151.     All Documents referring or relating to the date and circumstances upon which Nitro first had knowledge of any Acushnet Patent.

152.     All Documents referring or relating to any review, analysis, inspection, or testing, of any golf balls by Nitro.

153.     All Documents relating to Acushnet.

154.     All Documents relating to Birdie Golf Ball Company.

155.     All Documents relating to the refurbishment, recycling, re-washing, refinishing,

C A R L T O N   F I E L D S , P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

re-manufacturing and sale of Acushnet golf balls by third parties.

156.    All Documents referring or relating in any way to:

    a.    the conception, design, and development of the matters and/or methods claimed in Acushnet Patents;

    b.    the inventorship of the matters and/or methods claimed in an Acushnet Patent;

    c.    the claim that Nitro has infringed or is infringing an Acushnet Patent;

    d.    the claim that Nitro has willfully infringed or is willfully infringing an Acushnet Patents;

    e.    the state of the art relating to the matters and/or methods claimed in an Acushnet Patent at the time the claimed matters and/or methods were conceived and/or reduced to practice; or

    f.    the validity and/or enforce ability of an Acushnet Patent.

157.    All Documents passing between Nitro, or its counsel, agents, or other representatives and any person that Nitro expects to call as a witness (including both fact and expert witnesses) at any hearing or at trial in this case.

158.    All Documents prepared by any person Nitro expects to call as a witness (including both fact and expert witnesses) at any hearing or at trial in this case.

159.    All Documents relating to purchases of Acushnet golf balls by Nitro or its agents.

160.    All Documents relating to the preparation of a wound golf ball core made, used, sold, imported by or offered for sale by Nitro.

161.    All Documents relating to the composition of golf ball materials made, used, sold, imported by or offered for sale by Nitro.

162.    All Documents relating to processes for making solid golf balls made, used, sold,

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

imported by or offered for sale by Nitro.

163.   All Documents relating to the composition of golf ball covers made, used, sold, imported by or offered for sale by Nitro.

164.   All Documents relating to a process for curing a diene polymer in connection with the fabrication of a golf ball that is employed by, or from which products therefrom are made, used, sold, imported by or offered for sale by Nitro.

165.   All Documents related to the removal by Nitro of golf ball covers.

166.   All Documents related to addition by Nitro of a new layer of material to a golf ball whose cover, or portion thereof, had been removed.

167.   All Documents relating to the repair of golf balls by Nitro.

168.   All Documents relating to the reconstruction of golf balls by Nitro.

169.   All Documents relating to the removal by Nitro of a clear coat of a golf ball.

170.   All Documents relating to any clear coat placed on golf ball by Nitro.

171.   All Documents, including internal memoranda concerning Defendant Nitro's Titanium golf balls, including, but not limited to, (a) the decision to develop Defendants' Nitro golf balls manufactured by Nitro from Acushnet balls and (b) any decision to change from Nitro's golf balls to a revised product.

172.   All Documents relating to any agreements, representations, warranties, covenants or promises, or relating to any communications, between Nitro and any licensor, licensee, vendor, distributor or customer with respect to the design, manufacture, research, development, testing, use, advertising, promotion, sale or distribution of Nitro's golf balls.

CARLTON FIELDS, P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

173.   All Documents and things relating to the purchase by Defendant of supplies, molds, machines, or other instruments used in the design, research, testing, manufacture, development or sale of Nitro's golf balls.

174.   All Documents relating to any aspect of the conception, design, research, development, testing, manufacture, use, advertising, promotion, sale, offer for sale or distribution of Defendants' golf balls.

175.   Documents and things used or made available at any trade show relating to or concerning Nitro's golf balls.

176.   All Documents Nitro may use at trial.

177.   All Documents relating to monthly and annual sales, both actual and forecasted, by Nitro, or any distributor or vendor, of Nitro's golf balls.

178.   All Documents referring or relating to or concerning any research and development done by or on behalf of Nitro with respect to Nitro's golf balls.

179.   All Documents referring or relating to or concerning any comparison of Nitro's golf balls to the design of Acushnet's golf balls.

180.   All Documents concerning opinions of counsel referring or relating to or concerning Plaintiff's intellectual property rights asserted in this action.

C A R L T O N   F I E L D S , P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was telecopied and mailed this _16_ day of January, 2003 to:

Steven E. Siff
McDermott, Will & Emery
*Attorneys for Nitro*
201 S. Biscayne Blvd.
22nd Floor
Miami, FL  33131

Mark W. Yocca
Yocca Patch & Yocca LLP
*Attorneys for Nitro*
19900 Mac Arthur Boulevard
Suite 650
Irvine, CA  92612

CARLTON FIELDS, P.A.
4000 Bank of America Tower
100 SE Second Street
Miami, FL  33131-9101
Telephone:     (305) 530-0050
Facsimile:     (305) 530-0055

By: _____
STEVEN JEFFREY BRODIE
Florida Bar No. 333069
JEFFREY MICHAEL COHEN
Florida Bar No. 091495
MICHELLE GERVAIS, ESQ.
Florida Bar No. 173827

and

DOUGLAS C. McDONALD, Jr., ESQ.
Florida Bar No. 296538
ANDREW C. GREENBERG, ESQ.
Florida Bar No. 996726
Carlton Fields, P.A.
One Harbour Place
777 S. Harbour Island Blvd.
Tampa, FL  33602-5730
Telephone:     (813) 223-7000
Facsimile:     (813) 229-4133

MIA#2229254.02

C A R L T O N  F I E L D S, P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050



# EXHIBIT "B"

UNITED-STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

IN RE NITRO LEISURE PRODUCTS, L.L.C.

_____/

### DEFENDANT ACUSHNET COMPANY'S SECOND REQUEST
### FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF
### NITRO LEISURE PRODUCTS, INC.

Defendant, Acushnet Company ("Acushnet" or "Defendant"), pursuant to Fed. R. Civ. P.

Rule 34 requests that Plaintiff, Nitro Leisure Products, Inc., ("Nitro" or "Plaintiff"), produce for

inspection and reproduction at the offices of Carlton Fields, P.A., 100 SE 2nd Street, Ste. 4000;

Miami, FL 33131, within thirty (30) days of the date hereof, all documents in its possession,

custody or control as requested herein.

Each of the following requests is continuing in nature. Accordingly, if after producing

any documents, Nitro, or anyone on its behalf, obtains or becomes aware of additional

information or documents pertaining to any request for production, Nitro is required, pursuant to

Fed. R. Civ. P. Rule 26(e), to provide such information or documents by way of supplemental

responses. Such supplemental responses are to be served upon Acushnet within thirty (30) days

after Nitro becomes aware of such information or documents, but no later than one (1) week

prior to the date of any trial or hearing in this action.

In responding to Acushnet's requests, furnish all information or documents which are

available, including documents in the possession, custody or control of Nitro's attorneys or

investigators or anyone else acting for or on Nitro's behalf, and not merely those documents held

by Nitro. If Nitro is unaware of the existence of any documents responsive to a request, Nitro

MIA#2229338.023

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

should expressly so indicate. These requests for production of documents should be read, interpreted and responded to in accordance with the definitions and instructions set forth below.

## DEFINITIONS

A.    The term "Plaintiff," or "Nitro" as used herein, shall mean Nitro Leisure Products, Inc., its officers, employees, agents, counsel, associates, accountants, servants, assignees, heirs, personal representatives, and all other persons or entities acting or purporting to act with or on behalf of Nitro as Plaintiff in this action.

B.    The term "Defendant," or "Acushnet" as used herein, shall refer to Acushnet Company, as well as to any officers, employees, agents, counsel, associates, accountants, servants, assignees, heirs, personal representatives, and all other persons or entities acting or purporting to act on behalf of Acushnet in this action.

C.    The "Acushnet Patents" shall mean patents identified in the Complaint, including United States Patent Nos. 5,609,535; 4,846,910; 4,546,980; 4,692,497; 4,770,422 and 5,000,459.

D.    The "Acushnet Trademarks" shall mean all trademarks and commercial styles, logo types, side stamps and service marks of any type or kind owned by Acushnet, including 1 BALL IN GOLF, DT, DT DISTANCE, DT WOUND, PROFESSIONAL, PINNACLE, PRO V1 MIA#2229338.02and their respective logo types, designs and commercial styles, including without limitation the 929,942; 516,729; 316,118; 1,601,034; 1,112,381; 1,165,697; and 1,974,304 and applications Serial Nos. 76/143,347 and 76/320,324.

E.    The term "Acushnet Product" shall mean any golf ball that is manufactured, fabricated, advertised, marketed, sold or offered for sale by Acushnet.

F.    The term "Relevant Nitro Product" shall mean any golf ball, new or used, that has been acquired, manufactured, fabricated, refurbished, remanufactured, repaired, recycled,

MIA#2229338.023

2

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

refinished, re-washed, or any other process advertised, marketed, sold or offered for sale by or on behalf of Nitro, which product is either (i) created, derived or otherwise produced in any way from, in whole or in part, any Acushnet Product, (ii) embodies or at any time embodied the technology claimed in any claim of any Acushnet patent, or (iii) which bears or at any time bore an Acushnet Trademark or any trademark similar thereto.

G.    The term "including" preceded by a general term and followed by a list of examples shall be construed to include the examples without limitation to the scope of the general term.

H.    The term "Document", as used herein, shall mean every writing, thing, or record of every type and description of which you have knowledge, whether or not in your possession, custody or control including without limitation:    correspondence, memoranda, electronic communications of any kind including e-mails, stenographic and handwritten notes, diagrams, studies, publications, books, pamphlets, pictures, drawings of every type, blue lines, blue prints, films, voice recordings, maps, reports, surveys, minutes, telegrams, telexes, contracts, memoranda of agreement(s), diaries, graphs, charts, checks, bank statements, income tax forms, other tax forms, microfilm microfiche, statistical compilations, data processing cards, computer records, computer tapes and printouts, invoices, bills, receipts, anything conceived by Defendants as a document or thing and every copy of such Document or thing where the original is not in your possession, custody or control.  Any such Document on any sheet or side thereof, any marks, such as (but not limited) to initials, stamped indicia, comments or notations, of any character and not a part of the original text or photographic reproduction thereof, is to be considered and identified as a separate Document.  As used herein, "Document" is to be used to include the word "document" in its customary and broadest sense, but shall also include things,

MIA#2229338.023

3

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

in particular any tangible object, even objects other than a document as that word is customarily used, and includes without limitation, prototype models, specimens, computer disks and tapes, video tapes and audio tapes.

I.    The terms "concern", "concerning", "relate", "relating" and similar terms and phases, as used with respect to a request for documents and a subject (e.g., "documents relating to a subject") means a request for all documents relating to or that are related to by the subject, including, without limitation, all documents and things that are, refer to, are referred to by, explain, are explained by, comprise, are comprised of, evidence, tend to evidence, contradict, tend to contradict, mention, are mentioned by, reflect or are reflected by, the subject.

## INSTRUCTIONS

a.    <u>Documents Withheld from Production</u>

If Nitro objects to the production of any **Document** requested below, or if Nitro withholds from production any **Document** encompassed by this request, set forth the following:

    i.    The identity of the **Document** withheld and the legal basis for withholding it;

    ii.    The identity of the author, signor, addressee, recipient, and any copied recipient(s) of the withheld **Document**;

    iii.    The date on which the **Document** was drafted;

    iv.    A summary of the **Document**'s contents; and

    v.    The specific basis for the objection to production of the **Documents**.

MIA#2229338.023

4

CARLTON FIELDS, P.A.
Bank of America Tower at International Place · Suite 4000 · 100 Southeast Second Street · Miami · Florida 33131-9101 · (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

b.   Claim of Privilege

If Nitro objects to the production of any **Document** or part of a **Document** on the basis of either privilege or that the **Document** or the information contained in the **Document** constitutes attorney work product, Nitro should provide a statement signed and verified by Nitro's attorney which sets forth as to each **Document** that is withheld on a claim of privilege the following information:

i.    The name and address of the person(s) who possess or control the **Document** and each copy of the **Document**;

ii.   The name of the author of the **Document**;

iii.  The name of the sender of the **Document** if different from the author;

iv.   The name of the person(s) to whom copies were sent or otherwise made available;

v.    The name of any person(s) known to have seen or have possession of a copy of the **Document** if not identified above;

vi.   The business affiliation and job titles of every person named in (i), (ii), (iii), (iv) and (v) above;

vii.  The date of the **Document**;

viii. A brief description of the nature (e.g., letter, memorandum, etc.) and subject matter of the **Document**; and

ix.   The basis for the privilege claim.

C A R L T O N  F I E L D S, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

    c.    <u>Lost or Destroyed Documents</u>

If any **Document** that would have been responsive to the requests herein has been destroyed or is no longer in Nitro's possession, custody or control, provide the following information:

    i.    The date of the **Document**;

    ii.    The names and job titles of the preparer(s), sender(s), and recipient(s) of the **Documents**;

    iii.    The date of and the identity of the person responsible for its destruction, loss, transfer or other act or omission by which the **Document** left Nitro's possession, custody or control; and

    iv.    The circumstances surrounding the loss of the **Document** or the reason for its destruction.

**<u>Request for Production</u>**

1.    All documents or communication, which concern or relate to the results flowing from Acushnet's alleged "tortuous interference" with Nitro's advantageous business relationship.

2.    All documents and things, which have been provided to, received from, or reviewed by any expert retained by Nitro.

3.    All documents and things, which have been provided to, received from or reviewed by any person listed on "Plaintiff's Witness List", served on May 6, 2002.

4.    All documents and things, which concern or relate to lost sales allegedly suffered by Nitro.

C A R L T O N  F I E L D S, P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida  33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

5.     All documents and things, which concern or relate to loss of good will allegedly suffered by Nitro.

6.     All financial statements prepared by or for Nitro for the year 1996, 1997, 1998, 1999, 2000, 2001 and 2002.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was telecopied and mailed this _16_ day of January, 2003 to:

Steven E. Siff
McDermott, Will & Emery
*Attorneys for Nitro*
201 S. Biscayne Blvd.
22nd Floor
Miami, FL 33131

Mark W. Yocca
Yocca Patch & Yocca LLP
*Attorneys for Nitro*
19900 Mac Arthur Boulevard
Suite 650
Irvine, CA 92612

MIA#2229338.023

7

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

CARLTON FIELDS, P.A.
4000 Bank of America Tower
100 SE Second Street
Miami, FL  33131-9101
Telephone:      (305) 530-0050
Facsimile:      (305) 530-0055


By: _____
STEVEN JEFFREY BRODIE
Florida Bar No. 333069
JEFFREY MICHAEL COHEN
Florida Bar No. 091495
MICHELLE GERVAIS, ESQ.
Florida Bar No. 173827

and

DOUGLAS C. McDONALD, Jr., ESQ.
Florida Bar No. 296538
Carlton Fields, P.A.
One Harbour Place
777 S. Harbour Island Blvd.
Tampa, FL  33602-5730
Telephone:      (813) 223-7000
Facsimile:       (813) 229-4133

MIA#2229338.023

8

C A R L T O N  F I E L D S, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida  33131-9101 - (305) 530-0050



# EXHIBIT "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

**IN RE NITRO LEISURE PRODUCTS, L.L.C.**

_____/

### DEFENDANT ACUSHNET COMPANY'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF NITRO LEISURE PRODUCTS, INC.

Defendant, Acushnet Company ("Acushnet" or "Defendant"), pursuant to Fed. R. Civ. P. Rule 34 requests that Plaintiff, Nitro Leisure Products, Inc., ("Nitro" or "Plaintiff"), produce for inspection and reproduction at the offices of Carlton Fields, P.A., 100 SE 2nd Street, Ste. 4000; Miami, FL 33131, within thirty (30) days of the date hereof, all documents in its possession, custody or control as requested herein.

Each of the following requests is continuing in nature. Accordingly, if after producing any documents, Nitro, or anyone on its behalf, obtains or becomes aware of additional information or documents pertaining to any request for production, Nitro is required, pursuant to Fed. R. Civ. P. Rule 26(e), to provide such information or documents by way of supplemental responses. Such supplemental responses are to be served upon Acushnet within thirty (30) days after Nitro becomes aware of such information or documents, but no later than one (1) week prior to the date of any trial or hearing in this action.

In responding to Acushnet's requests, furnish all information or documents which are available, including documents in the possession, custody or control of Nitro's attorneys or investigators or anyone else acting for or on Nitro's behalf, and not merely those documents held by Nitro. If Nitro is unaware of the existence of any documents responsive to a request, Nitro

MIA#2229311.02

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

should expressly so indicate.   These requests for production of documents should be read, interpreted and responded to in accordance with the definitions and instructions set forth below.

## DEFINITIONS

A.   The term "Plaintiff," or "Nitro" as used herein, shall mean Nitro Leisure Products, Inc., its officers, employees, agents, counsel, associates, accountants, servants, assignees, heirs, personal representatives, and all other persons or entities acting or purporting to act with or on behalf of Nitro as Plaintiff in this action.

B.   The term "Defendant," or "Acushnet" as used herein, shall refer to Acushnet Company, as well as to any officers, employees, agents, counsel, associates, accountants, servants, assignees, heirs, personal representatives, and all other persons or entities acting or purporting to act on behalf of Acushnet in this action.

C.   The "Acushnet Patents" shall mean patents identified in the Complaint, including United States Patent Nos. 5,609,535; 4,846,910; 4,546,980; 4,692,497; 4,770,422 and 5,000,459.

D.   The "Acushnet Trademarks" shall mean all trademarks and commercial styles, logo types, side stamps and service marks of any type or kind owned by Acushnet, including 1 BALL IN GOLF, DT, DT DISTANCE, DT WOUND, PROFESSIONAL, PINNACLE, PRO V1 and their respective logo types, designs and commercial styles, including without limitation the 929,942; 516,729; 316,118; 1,601,034; 1,112,381; 1,165,697; and 1,974,304 and applications Serial Nos. 76/143,347 and 76/320,324.

E.   The term "Acushnet Product" shall mean any golf ball that is manufactured, fabricated, advertised, marketed, sold or offered for sale by Acushnet.

F.   The term "Relevant Nitro Product" shall mean any golf ball, new or used, that has been acquired, manufactured, fabricated, refurbished, remanufactured, repaired, recycled,

refinished, re-washed, or any other process advertised, marketed, sold or offered for sale by or on behalf of Nitro, which product is either (i) created, derived or otherwise produced in any way from, in whole or in part, any Acushnet Product, (ii) embodies or at any time embodied the technology claimed in any claim of any Acushnet patent, or (iii) which bears or at any time bore an Acushnet Trademark or any trademark similar thereto.

G.    The term "including" preceded by a general term and followed by a list of examples shall be construed to include the examples without limitation to the scope of the general term.

H.    The term "Document", as used herein, shall mean every writing, thing, or record of every type and description of which you have knowledge, whether or not in your possession, custody or control including without limitation:   correspondence, memoranda, electronic communications of any kind including e-mails, stenographic and handwritten notes, diagrams, studies, publications, books, pamphlets, pictures, drawings of every type, blue lines, blue prints, films, voice recordings, maps, reports, surveys, minutes, telegrams, telexes, contracts, memoranda of agreement(s), diaries, graphs, charts, checks, bank statements, income tax forms, other tax forms, microfilm microfiche, statistical compilations, data processing cards, computer records, computer tapes and printouts, invoices, bills, receipts, anything conceived by Defendants as a document or thing and every copy of such Document or thing where the original is not in your possession, custody or control.  Any such Document on any sheet or side thereof, any marks, such as (but not limited) to initials, stamped indicia, comments or notations, of any character and not a part of the original text or photographic reproduction thereof, is to be considered and identified as a separate Document.  As used herein, "Document" is to be used to include the word "document" in its customary and broadest sense, but shall also include things,

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

in particular any tangible object, even objects other than a document as that word is customarily used, and includes without limitation, prototype models, specimens, computer disks and tapes, video tapes and audio tapes.

I.     The terms "concern", "concerning", "relate", "relating" and similar terms and phases, as used with respect to a request for documents and a subject (e.g., "documents relating to a subject") means a request for all documents relating to or that are related to by the subject, including, without limitation, all documents and things that are, refer to, are referred to by, explain, are explained by, comprise, are comprised of, evidence, tend to evidence, contradict, tend to contradict, mention, are mentioned by, reflect or are reflected by, the subject.

MIA#2229311.02                                    - 4 -

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

## - INSTRUCTIONS

a.    Documents Withheld from Production

If Nitro objects to the production of any **Document** requested below, or if Nitro withholds from production any **Document** encompassed by this request, set forth the following:

i.    The identity of the **Document** withheld and the legal basis for withholding it;

ii.    The identity of the author, signor, addressee, recipient, and any copied recipient(s) of the withheld **Document**;

iii.    The date on which the **Document** was drafted;

iv.    A summary of the **Document**'s contents; and

v.    The specific basis for the objection to production of the **Documents**.

b.    Claim of Privilege

If Nitro objects to the production of any **Document** or part of a **Document** on the basis of either privilege or that the **Document** or the information contained in the **Document** constitutes attorney work product, Nitro should provide a statement signed and verified by Nitro's attorney which sets forth as to each **Document** that is withheld on a claim of privilege the following information:

i.    The name and address of the person(s) who possess or control the **Document** and each copy of the **Document**;

ii.    The name of the author of the **Document**;

MIA#2229311.02                          - 5 -

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

    iii.    The name of the sender of the **Document** if different from the author;

    iv.    The name of the person(s) to whom copies were sent or otherwise made available;

    v.    The name of any person(s) known to have seen or have possession of a copy of the **Document** if not identified above;

    vi.    The business affiliation and job titles of every person named in (i), (ii), (iii), (iv) and (v) above;

    vii.    The date of the **Document**;

    viii.    A brief description of the nature (e.g., letter, memorandum, etc.) and subject matter of the **Document**; and

    ix.    The basis for the privilege claim.

c.    <u>Lost or Destroyed Documents</u>

If any **Document** that would have been responsive to the requests herein has been destroyed or is no longer in Nitro's possession, custody or control, provide the following information:

    i.    The date of the **Document**;

    ii.    The names and job titles of the preparer(s), sender(s), and recipient(s) of the **Documents**;

C A R L T O N  F I E L D S, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

    iii.    The date of and the identity of the person responsible for its destruction, loss, transfer or other act or omission by which the **Document** left Nitro's possession, custody or control; and

    iv.    The circumstances surrounding the loss of the **Document** or the reason for its destruction.

### Request for Production

1.    All documents relating to Nitro's monthly, quarterly and annual sales – on a unit or dollar basis – in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002, including without limitation, all documents showing such sales through any particular channel of distribution such as on-course golf shops, off-course golf shops, sporting goods stores, other retailers, by mail order, or over the internet.

2.    All documents relating to Nitro's monthly, quarterly and annual sales – on a unit or dollar basis – of recycled and refurbished golf balls in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002 including without limitation, all documents showing such sales through any particular channel of distribution such as on-course golf shops, off-course golf shops, sporting goods stores, other retailers, by mail order, or over the internet.

3.    All documents relating to the gross sales revenues, costs and net profits associated with Nitro's recycled and refurbished golf balls, on a monthly, quarterly and annual basis, for each of the years 1996, 1997, 1998, 1999, 2000, 2001 and 2002.

4.    All documents relating to any budgets prepared by or for Nitro during any of the years 1996, 1997, 1998, 1999, 2000, 2001 and 2002 relating to its projected gross sales revenues, costs, or net profits with respect to its recycled and refurbished golf balls, for any period of time

CARLTON FIELDS, P. A.

Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

after such projection was prepared. This should include, without limitation, all documents containing both such projections and the actual results obtained.

5.    All documents relating to the number of store fronts in which your recycled and refurbished golf balls have been sold in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002.

6.    All documents showing specific on-course golf shops, off-course golf shops, sporting goods stores, and other retailers which have sold your recycled and refurbished balls in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002.

7.    All documents relating to any projections or goals prepared by or for Nitro during any of the years 1996, 1997, 1998, 1999, 2000, 2001 and 2002 relating to the number of on-course golf shops, off-course golf shops, sporting goods stores, and other retailers that would be selling your recycled and refurbished golf balls during any period of time after such projection or goal was prepared.  This should include, without limitation, all documents containing both such projections or goals and the actual results obtained.

8.    All documents relating to your share (on a unit or dollar basis) of the domestic market for recycled or refurbished golf balls in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002.

9.    All documents relating to any projections or goals prepared by or for Nitro in any of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002 regarding your share (on a unit or dollar basis) of the domestic market for recycled or refurbished golf balls for any period of time

C A R L T O N  F I E L D S, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

after such projection or goal was prepared. This should include, without limitation, all documents containing both such projections and the actual results obtained.

10.   All documents relating to your allegation that Nitro is the largest seller of used golf balls.

11.   All documents relating to your share of the domestic golf ball market in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002, including without limitation your share in each such year of any market segment you believe exists of the domestic golf ball market and in which you compete. Such documents should include, without limitation, all documents identifying the other competitors and golf ball models within the domestic golf ball market or any such segment thereof, as well as their shares.

12.   All documents relating to any projections or goals prepared by or for Nitro in each of the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002 regarding your share of the domestic golf ball market, including without limitation your share of any market segment you believe exists of the domestic golf ball market and in which you compete or intend to compete, for any period of time after said projection or goal was prepared. This should include, without limitation, all documents containing both such projections and the actual results obtained.

13.   All documents relating to the volume or percentage of your sales – on a unit and dollar basis – accounted for by each manufacturer's refurbished and recycled golf balls.

14.   All documents relating to the volume or percentage of your sales – on a unit and dollar basis – accounted for by each particular model of golf ball.

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

15.     All documents relating to your efforts to promote recycled or refurbished golf balls, including without limitation, any incentives you provide to golf professionals, on-course or off-course golf shops, or any retail establishments to display such balls.

16.     All documents relating to efforts of any golf ball manufacturer to promote their new golf balls, including, without limitation, any incentives provided by golf professionals to display their balls, any payments to members of the PGA Tour, LPGA Tour, and Senior Tour to play their balls.

17.     All documents relating to Acushnet's market share or alleged monopoly or market power in what you describe as the premium golf ball market.

18.     All documents relating to Acushnet's market share or alleged market power in what you describe as the mid-price golf ball market.

19.     All documents relating to your allegation that Acushnet has focused on what you describe as a "mid-price price market" as an area in which it wants to grow.

20.     All documents relating to the effect or possible effect of recycled or refurbished golf balls on the domestic market for new golf balls or any segment of that market that you believe exists, including without limitation the markets for new premium golf balls and for mid-price golf balls.

21.     All documents relating to your allegation that there is strong consumer demand for refurbished and recycled Titleist golf balls.

C A R L T O N   F I E L D S , P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

22.     All documents relating to your allegation that there is or has been a "flourishing market" for refurbished Titleist Pro V1 golf balls purchased by golfers who otherwise would have bought non-premium balls.

23.     All documents relating to your allegation that there is strong consumer demand for refurbished and recycled Pro V1 golf balls.

24.     All documents relating to your allegation that your recycled and refurbished Pro VI golf balls compete primarily against what you describe as Acushnet's mid-price brands.

25.     All documents relating to your allegation that, for decades, Acushnet has been closely monitoring the success of used golf balls.

26.     All documents relating to your allegation that Acushnet considers used golf balls to be competition for its new golf balls.

27.     All documents relating to your allegation that Acushnet has sought to eliminate competition from used golf balls.

28.     All documents relating to your allegation that Acushnet considers Nitro to be one of its competitors.

29.     All documents relating to your allegation that Acushnet has sought to eliminate Nitro as a competitor.

30.     All documents relating to your allegation that Acushnet has stated to Nitro's customers that Acushnet intended to commence litigation against Nitro on account of Nitro's use

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

of 'Titleist' and 'Pinnacle' in connection with its advertising, promotion, sale and distribution of refurbished 'Titleist' and 'Pinnacle' golf balls.

31.    All documents relating to your allegation that Acushnet has led Nitro's customers to believe that if Nitro's customers sell Nitro's refurbished golf balls, Acushnet may commence legal action against them.

32.    All documents relating to your allegation that Acushnet has threatened Nitro's customers  and potential customers that, if they sell Nitro's recycled or refurbished golf balls, Acushnet will cease supplying Titleist golf balls to those customers.

33.    All documents relating to your allegation that Acushnet has threatened Nitro's customers and potential customers that, if they sell Nitro's recycled or refurbished golf balls, Acushnet will cease supplying Acushnet's mid-price and low-priced golf balls to those customers.

34.    All documents relating to your allegation that Acushnet has knowingly published false, misleading, disparaging or defamatory statements about Nitro or Nitro's products.

35.    All documents relating to your allegation that Acushnet has complained to retailers about the price at which Nitro's golf balls are priced.

36.    All documents relating to any specific retailer, sporting goods store, or on-course or off –course golf shop, you believe has refused to do business with Nitro as a result of any alleged threats by Acushnet that, if such customer were to sell Nitro's recycled or refurbished golf balls, it would cease supplying Titleist golf balls or Acushnet's mid-price or low-priced golf

C A R L T O N   F I E L D S , P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

balls. Such documents should include, without limitation, all documents reflecting any prior sales to that customer as well as any subsequent sales to that customer.

37. All documents relating to any specific retailer, sporting goods store, or on-course or off –course golf shop, you believe has dropped Nitro as a supplier as a result of any alleged threats by Acushnet that, if such customer were to sell Nitro's recycled or refurbished golf balls, it would cease supplying Titleist golf balls or Acushnet's mid-price or low-priced golf balls. Such documents should include, without limitation, all documents reflecting any prior sales to that customer as well as any subsequent sales to that customer.

38. All documents relating to any order you believe was cancelled by a Nitro customer or potential customer as a result of any alleged illegal conduct by Acushnet. Such documents should include, without limitation, all documents reflecting any prior sales to that customer as well as any subsequent sales to that customer.

39. All documents relating to any Nitro customer you believe has declined to continue doing business with Nitro as a result of any alleged illegal conduct by Acushnet. Such documents should include, without limitation, all documents reflecting any prior sales to that customer as well as any subsequent sales to that customer.

40. All documents relating to any golf ball channel of distribution from which you believe Nitro has been excluded as a result of any alleged illegal conduct by Acushnet. Such documents should include, without limitation, all documents reflecting the participants (both sellers and buyers) in that channel of distribution during each of the years 1996, 1997, 1998, 1999, 2000, 2001 and 2002; any prior sales by Nitro into that channel of distribution; and any

CARLTON FIELDS, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

plans or efforts by Nitro to enter (or re-enter) that channel of distribution that you believe were or have been thwarted by Acushnet's alleged illegal conduct.

41.     All documents relating to the impact you believe any alleged illegal conduct by Acushnet has had on your sales, including without limitation, the impact you believe has occurred on your sales in each of the following:  to on-course golf shops, off-course golf shops, sporting goods stores, other retailers, by mail order, or over the internet.  Such documents should include, without limitation, all documents relating to the number of lost sales (including by units and dollars), and lost profits, including without limitation, any documents showing these by lost sales of specific golf ball models or manufacturers, in specific channels of distribution, or in specific outlets.

42.     All documents relating to your allegation that Acushnet's alleged illegal conduct has resulted in actual injury to competition.

43.     All documents relating to your allegation that Acushnet's alleged illegal conduct has restrained, foreclosed and eliminated competition from efficient and effective competitors. This should include, without limitation, all documents identifying each competitor you believe has been restrained, foreclosed and eliminated from the competition as a result of Acushnet's alleged illegal conduct.

44.     All documents relating to your allegation that Acushnet's alleged illegal conduct has caused prices of golf balls to be higher than they otherwise would be.

CARLTON FIELDS, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

45.     All documents relating to your allegation that Acushnet's alleged illegal conduct has caused the output of golf balls, or any particular type or model of golf ball, to be less than it otherwise would be.

46.     All documents relating to your allegation that Acushnet's alleged illegal conduct has caused the quality of golf balls to be poorer than it otherwise would be.

47.     All documents relating to any complaint received from any customer of Nitro or any consumer regarding the quality or performance of the golf ball sold by Nitro.

48.     All documents relating to any complaint received from any customer of Nitro or any consumer regarding their having purchased a recycled or refurbished ball sold by Nitro believing it to have been a new Titleist or Pinnacle ball.

49.     All statements, declarations and affidavits obtained from any Nitro customer, prospective customer or consumer with respect to any of the issues in this case.

50.     All reports, compilations of data, documents or other materials prepared by, prepared for, or provided to any expert who may testify at any hearing or trial in this litigation.

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was telecopied and mailed this _16_ day of January, 2003 to:

Steven E. Siff
McDermott, Will & Emery
*Attorneys for Nitro*
201 S. Biscayne Blvd.
22nd Floor
Miami, FL 33131

Mark W. Yocca
Yocca Patch & Yocca LLP
*Attorneys for Nitro*
19900 Mac Arthur Boulevard
Suite 650
Irvine, CA 92612

CARLTON FIELDS, P.A.
4000 Bank of America Tower
100 SE Second Street
Miami, FL 33131-9101
Telephone:    (305) 530-0050
Facsimile:    (305) 530-0055

By: _____
STEVEN JEFFREY BRODIE
Florida Bar No. 333069
JEFFREY MICHAEL COHEN
Florida Bar No. 091495
MICHELLE GERVAIS, ESQ.
Florida Bar No. 173827

and

DOUGLAS C. McDONALD, Jr., ESQ.
Florida Bar No. 296538
Carlton Fields, P.A.
One Harbour Place
777 S. Harbour Island Blvd.
Tampa, FL 33602-5730
Telephone:    (813) 223-7000
Facsimile:    (813) 229-4133

MIA#2229311.02

- 16 -



# EXHIBIT "D"

UNITED-STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

IN RE: NITRO LEISURE PRODUCTS, L.L.C.

_____/

## DEFENDANT, ACUSHNET COMPANY'S FIRST SET OF
## INTERROGATORIES TO PLAINTIFF, NITRO LEISURE PRODUCTS, INC.

Pursuant to Fed. R. Civ. P. 33, Defendant propounds the following Interrogatories to Plaintiff, Nitro Leisure Products, Inc. ("Nitro"), to be answered separately and fully in writing, under oath, by Nitro, with said answers to be served on plaintiff's undersigned counsel within thirty (30) days after service of these Interrogatories.

These Interrogatories are to be considered continuing in nature within the meaning of Fed. R. Civ. P. 26(e)(1) and (2), requiring Nitro to supplement or amend its responses to these Interrogatories as provided in Rule 26(e)(1) and (2) of the Fed. R. Civ. P. if and when Nitro obtains additional responsive information before the final hearing in this matter.

### DEFINITIONS

A.     The term "Plaintiff" or "Nitro" as used herein, shall mean Nitro Leisure Products, Inc., d/b/a Golf Ball Direct.Com and Second Chance its officers, employees, agents, counsel, associates, accountants, servants, assignees, heirs, personal representatives, and all other persons or entities acting or purporting to act on behalf of the plaintiff in this action including, but not limited to, Nitro Leisure Services, LLC d/b/a Nitro Golf.Com and Nitro Golf.

B.     The term "Defendant" or "Acushnet" as used herein, shall refer to Acushnet Company, as well as to any officers, employees, agents, counsel, associates, accountants,

MIA#2229266.02

C A R L T O N  F I E L D S, P. A .
Bank of America Tower at International Place · Suite 4000 · 100 Southeast Second Street · Miami · Florida 33131-9101 · (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

servants, assignees, heirs, personal representatives, and all other persons or entities acting or purporting to act on behalf of Acushnet in this action.

C. The "Acushnet Patents" shall mean patents identified in the Complaint, including United States Patent Nos. 5,609,535; 4,846,910; 4,546,980; 4,692,497; 4,770,422 and 5,000,459.

D. The Acushnet Trademarks shall mean all trademarks and commercial styles, logo types, side stamps and service marks of any type or kind owned by Acushnet, including without 1 BALL IN GOLF, DT, DT DISTANCE, DT WOUND, PROFESSIONAL, PINNACLE, PRO V1 MIA#2229266.02and their respective logo types, designs and commercial styles, including without limitation the 929,942; 516,729; 316,118; 1,601,034; 1,112,381; 1,165,697; and 1,974,304 and applications Serial Nos. 76/143,347 and 76/320,324.

E. The term "Acushnet Product" shall mean any golf ball that is manufactured, fabricated, advertised, marketed, sold or offered for sale by Acushnet.

F. The term "Relevant Nitro Product" shall mean any golf ball, new or used, that has been acquired, manufactured, fabricated, refurbished, remanufactured, repaired, recycled, refinished, re-washed, advertised, marketed, sold or offered for sale by or on behalf of Nitro, which product is and/or was either (i) created, derived or otherwise produced in any way from, in whole or in part, any Acushnet Product, (ii) embodies or at any time embodied the technology claimed in any claim of any Acushnet patent, or (iii) which bears or at any time bore an Acushnet Trademark or any trademark similar thereto.

G. The term "Document", as used herein, shall mean every writing, thing, or record of every type and description of which you have knowledge, whether or not in your possession, custody or control including without limitation: correspondence, memoranda, electronic communications of any kind including e-mails, stenographic and handwritten notes, diagrams,

MIA#2229266.02

2

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

studies, publications, books, pamphlets, pictures, drawings of every type, blue lines, blue prints, films, voice recordings, maps, reports, surveys, minutes, telegrams, telexes, contracts, memoranda of agreement(s), diaries, graphs, charts, checks, bank statements, income tax forms, other tax forms, microfilm microfiche, statistical compilations, data processing cards, computer records, computer tapes and printouts, invoices, bills, receipts, anything conceived by Defendants as a document or thing and every copy of such Document or thing where the original is not in your possession, custody or control. Any such Document on any sheet or side thereof, any marks, such as (but not limited) to initials, stamped indicia, comments or notations, of any character and not a part of the original text or photographic reproduction thereof, is to be considered and identified as a separate Document. As used herein, "Document" is to be used to include the word "document" in its customary and broadest sense, but shall also include things, in particular any tangible object, even objects other than a document as that word is customarily used, and includes without limitation, prototype models, specimens, computer disks and tapes, video tapes and audio tapes.

H.     The term "fact" as used herein shall include, without limitation, every relevant matter, occurrence, act, event, transaction, occasion, meeting, document, instance, circumstance, recitation, writing, or other happening.

I.     "Person" means any individual, partnership, firm, association, corporation, or other government, legal or business entity.

J.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

K.     "Identify" (when referring to a person) means to give, to the extent known, the person's full name, present or last known address, relationship with or responsibility to Nitro, the

MIA#2229266.02

3

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

basis for the person being identified, and the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person and the basis for the person being identified, need be listed in response to subsequent discovery requesting the identification of that person.

L.    "Identify" (with respect to documents) means to give, to the extent known, the type of document; general subject matter; date of document; and author(s), addressee(s) and recipient(s).

M.    "Identify" (with respect to a business organization or other entity that is not a natural person) means to give, to the extent known, the full name of such organization or entity; the present or last known address (designating which) of such organization or entity; and the form of such organization (i.e., corporation, trust, partnership, proprietorship, joint venture, etc.).

N.    "Identify" (with respect to a communication) means to give, to the extent known, the date, nature and purpose of the communication; the place or places where such communication occurred; each person who originated, received or participated in such communication; the type of communication (i.e., letter, telegram, telephone conversation, etc.); substance of such communication; any person who authorized or ordered such communication; and any document relating or referring to, or comprising such communication.

O.    "Identify" (with respect to an act or activity) means to state each transaction or act constituting the act or activity; to state the date such act or activity occurred; to state the place where such act or activity occurred; to identify the circumstances and purposes of such act or activity; to identify each document referring or relating to such act or activity; to identify such person participating or engaging in such act or activity; and to identify each officer, director, agent, representative, or employee of Nitro who authorized or ordered such act or activity.

MIA#2229266.02

4

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

P.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

Q.    "Owner" means a shareholder of a corporation, a partner of a partnership or an individual proprietor.

## INSTRUCTIONS

A.    The singular and masculine form of any noun or pronoun shall embrace, and be read and applied, as the plural or feminine or neutral, as circumstances may make appropriate.

B.    If Nitro claims that any document, or description, record or recollection of any act, activity or meeting is privileged from discovery or confidential in any fashion, Acushnet requests that said document, description, record or recollection of any such act, activity or meeting be identified with sufficient particularity to enable Acushnet to seek a ruling under Fed. R. Civ. P. Rule 37(a).

C.    Whenever a full and complete answer to any Interrogatory contained herein or subpart thereof is contained in a document or documents, such document or group of documents, appropriately identified as answering a specific, numbered Interrogatory or subpart thereof, may be supplied in lieu of a written answer.

D.    Whenever in these Interrogatories information is requested which was previously furnished in answer to another Interrogatory, such information need not be restated, and it will suffice to identify the previous answer containing the information requested.

E.    Interrogatories calling for numerical or chronological information shall be deemed, to the extent that precise figures or dates are not known, to call for estimates if any exist. In each instance that an estimate is given, it should be identified as such together with the source of information underlying the estimate.

MIA#2229266.02

5

CONSOLIDATED CASE NO.  02-14008-CIV-MIDDLEBROOKS

F.      Whenever an Interrogatory calls for information that is not available to you in the form requested but is available in another form or can be obtained at least in part from other data in your possession, so state and either supply the information requested in the form in which it is available or supply the date from which the information requested can be obtained.

G.      Unless otherwise required by the context, each Interrogatory should be construed independently and not by reference to any other Interrogatory herein for purposes of limitation.

MIA#2229266.02

6

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO.  02-14008-CIV-MIDDLEBROOKS

## INTERROGATORIES

**INTERROGATORY NO. 1:**   Identify every individual answering or otherwise providing information regarding these Interrogatories.

**RESPONSE NO. 1:**

MIA#2229266.02

7

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO.  02-14008-CIV-MIDDLEBROOKS

**INTERROGATORY NO. 2:**        Identify every individual interviewed, or with whom a discussion has been held in regard to this lawsuit, or from whom a statement (whether written, oral or otherwise recorded) has been taken, relating to this lawsuit, including answers to all pleadings and discovery.  For each such individual, state the substance of each such interview, discussion or statement, and identify all documents relating to, consisting of, or otherwise memorializing said interview, discussion or statement.

    **RESPONSE NO. 2:**

MIA#2229266.02

8

CARLTON FIELDS, P.A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

**INTERROGATORY NO. 3**:          Explain with particularity and describe the detailed factual basis for Nitro's claims and defenses in this lawsuit, including without limitation, identification of all evidence, persons, acts and documents that support or tend to contradict Nitro's claims set forth in its Complaint, as amended, or that either support or tend to contradict Nitro's denials of allegations or defenses as set forth in its Reply, as amended, and further including without limitation, identification of all persons who have knowledge regarding Nitro's claims, denials and defenses.

**RESPONSE NO. 3.**

C A R L T O N   F I E L D S, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO.  02-14008-CIV-MIDDLEBROOKS

**INTERROGATORY NO. 4:**        Describe in detail Nitro's marketing and/or sales strategies that have been considered and/or implemented that relate to any refurbished, remanufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls.

**RESPONSE NO. 4.**

MIA#2229266.02

10

C A R L T O N   F I E L D S, P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO.  02-14008-CIV-MIDDLEBROOKS

**INTERROGATORY NO. 5**:        Identify each Relevant Nitro Product and describe in detail how such product is or has been acquired, manufactured, fabricated, refurbished, remanufactured, repaired, recycled, refinished, re-washed, or some other process which is advertised, marketed, sold or offered for sale by Nitro, including without limitation, identification of all acts and documents related thereto and persons having knowledge with respect thereto, identification of the manner by which and all entities to whom a Relevant Nitro Product has been sold or offered for sale, and identification of the amount and nature of all revenues received with respect thereto.

**RESPONSE NO. 5.**

C A R L T O N  F I E L D S , P. A .
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida  33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

**INTERROGATORY NO. 6:** As to each person listed on Plaintiff's Witness List served on May 6, 2002, please set forth their full address and telephone number; their job designation; a complete description of the information they are believed to possess; and state whether the person has given a verbal or written statement to you. If any person has given a verbal or written statement, please describe the statement, give the date of the statement and state the name and address of the person to whom the statement was given.

**RESPONSE NO. 6.**

MIA#2229266.02

12

CARLTON FIELDS, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

**INTERROGATORY NO. 7:**     After May 6, 2002, have you become aware of any other person(s) who have knowledge concerning the issues in the case?  If so, please set forth their full address and telephone number; their job designation; a complete description of the information they are believed to possess; and state whether the person has given a verbal or written statement to you.  If any person has given a verbal or written statement, please describe the statement, give the date of the statement and state the name and address of the person to whom the statement was given.

**RESPONSE NO. 7.**

MIA#2229266.02

13

CARLTON FIELDS, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO.  02-14008-CIV-MIDDLEBROOKS

I HEREBY CERTIFY that all of the above answers are true and complete to the best of my

knowledge and belief.


BY:_____


STATE OF _____

COUNTY OF _____

    BEFORE ME, the undersigned authority, personally appeared _____,
well known to me to be the person acknowledging before me the execution of the foregoing to be
his/her free and voluntary act and deed for the uses and purposes and in the capacity therein
stated and expressed.

    WITNESS my hand and official seal at _____,
_____ County, _____, this _____ day of
_____, 2003.


_____
Notary Public

My Commission Expires:


MIA#2229266.02

14

CARLTON FIELDS, P. A.
Bank of America Tower at International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050

CONSOLIDATED CASE NO.  02-14008-CIV-MIDDLEBROOKS

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was telecopied and mailed this **16** day of January, 2003 to:

Steven E. Siff
McDermott, Will & Emery
*Attorneys for Nitro*
201 S. Biscayne Blvd.
22nd Floor
Miami, FL  33131

Mark W. Yocca
Yocca Patch & Yocca LLP
*Attorneys for Nitro*
19900 Mac Arthur Boulevard
Suite 650
Irvine, CA  92612

CARLTON FIELDS, P.A.
4000 Bank of America Tower
100 SE Second Street
Miami, FL  33131-9101
Telephone:     (305) 530-0050
Facsimile:     (305) 530-0055

By: _____
STEVEN JEFFREY BRODIE
Florida Bar No. 333069
JEFFREY MICHAEL COHEN
Florida Bar No. 091495
MICHELLE GERVAIS, ESQ.
Florida Bar No. 173827

and

MIA#2229266.02

15

CONSOLIDATED CASE NO.  02-14008-CIV-MIDDLEBROOKS

DOUGLAS C. McDONALD, Jr., ESQ.
Florida Bar No. 296538
ANDREW C. GREENBERG, ESQ.
Florida Bar No.  996726
Carlton Fields, P.A.
One Harbour Place
777 S. Harbour Island Blvd.
Tampa, FL  33602-5730
Telephone:        (813) 223-7000
Facsimile:         (813) 229-4133

MIA#2229266.02

16

CARLTON FIELDS, P.A.
Bank of America Tower at  International Place - Suite 4000 - 100 Southeast Second Street - Miami - Florida 33131-9101 - (305) 530-0050



# EXHIBIT "E"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CONSOLIDATED CASE NO.: 02-14008-CIV-MIDDLEBROOKS

IN RE: NITRO LEISURE PRODUCTS, LLC,
_____/

### JOINT STIPULATION FOR ENTRY OF CONFIDENTIALITY ORDER

Plaintiff, Nitro Leisure Products, LLC, d/b/a Golfballdirect.com and Second

Chance (collectively, "Nitro") and Defendant Acushnet Company ("Acushnet") hereby file

this Joint Stipulation for Entry of Confidentiality Order, pursuant to the Federal Rules of

Civil Procedure, to prevent undue disclosure of confidential information, trade secrets and

proprietary information, and agree and request the Court to enter an Order as follows:

1.　　Designation of Confidential Information

Counsel of record for any party may designate as "Confidential Information"

information (regardless of form) produced or furnished by such party (or by any other party

or witness concerning the designating party) in response to any party's discovery request or

inquiry, formal or informal, which a party reasonably believes in good faith to constitute or

contain Confidential Information as defined herein below, and may (but not necessarily will)

include, without limitation, research, development or commercial information, projections,

analyses or studies, market development, marketing, sales, promotion, profits or losses, costs,

revenues, other financial or marketing information, pricing, purchasing, contracting,

customer lists or customer relations, employee labor relations, or other confidential, non-public proprietary information.

2.      Definition of Confidential Information

As used herein, the term Confidential Information means confidential, proprietary non-public information, which may be designated as such by a party in writing, or orally if recorded as part of a deposition or court proceeding and will include information which is derived therefrom. Confidential Information shall include all such designated information whether disclosed during interviews, depositions, court proceedings, settlement discussion, or in a document, answer to an interrogatory, admission, production of tangible evidence, testimony or other discovery response or objection to discovery. Confidential Information shall not include information which a producing party has made generally available to the public whether or not such publication was made in connection with this lawsuit.

3.      Identification of Documents Containing Confidential Information

A producing party shall, at the time of production of a document, designate to the other party which documents are considered confidential by including on the document (or otherwise marking the document in a way that brings to the attention of a reasonable examiner the request for confidential treatment) the legend "CONFIDENTIAL.@

Interrogatory answers, responses to requests for admission, deposition transcripts and exhibits, pleadings, motions, affidavits, and briefs that quote, summarize or

contain Confidential Information may also be stamped accordingly, but, to the extent feasible, such materials shall be prepared in a manner such that the Confidential Information is bound separately from that not entitled to protection.

4.   <u>Limit on Copying</u>

Confidential Information may be copied and summaries, digests, or abstracts may be made, but all such copies, digests, abstracts and summaries shall be regarded as Confidential Information and subject to the provisions of this order.

5.   <u>Protection of Confidentiality</u>

Confidential Information and any notes, summaries, digests, memoranda, exhibits or other documents which include or describe Confidential Information, shall be retained by counsel of record and shall not be disclosed to any person except as provided herein. Persons to whom access to Confidential Information is given pursuant to this Order, shall keep, and shall employ reasonable precautions to keep, Confidential Information secure in accordance with the purposes and intent of this Order.

6.   <u>Access to Confidential Information</u>

Counsel for all parties are to be governed by the following restrictions in the use of the Confidential Information produced and information derived therefrom.

Except on further application to the Court, Confidential Information may not be disclosed except for the purpose of litigating this action. For that purpose only, counsel for the parties may disclose such information to (1) the Court; (2) court or deposition reporters; (3) other counsel actively engaged in the conduct of this litigation; (4) shareholders, partners, associates, secretaries, paralegal assistants, and employees of counsel of record to the extent reasonably necessary to render professional services in this litigation; (5) persons with prior knowledge of the documents or the Confidential Information contained therein and (6) named parties and their corporate affiliates, officers, directors, employers, employees or agents, provided they agree to be bound by the terms of this order and provided counsel deems such disclosure to be necessary to aid in the prosecution or defense of this litigation.

In addition, for the purpose of litigating this action, such Confidential Information may be disclosed to (1) outside experts or consultants retained for the purpose of assisting counsel for the parties in the litigation including, but not limited to, independent accountants, statisticians and economists; (2) employees of third-party contractors providing litigation support services; and (3) witnesses to the extent deemed necessary by counsel of record for the prosecution or defense of this litigation; provided, however; that in all such cases the individual to whom disclosure is to be made has signed a form, substantially in the form of Appendix A hereto, containing the recital that the signatory has read and understands this Order and agrees to be bound by its terms, which form shall be retained by counsel of record for the party making the disclosure.

7.    Depositions

Nothing contained in this order shall prevent the use of Confidential Information and Specially Restricted Information, as defined below, at depositions, with appropriate safeguards. In particular, unless otherwise agreed by the parties, a deponent who is not a party or a present officer, director, employee or representative of a party shall not be examined about Confidential Information and shall not have Confidential Information revealed to him or her unless he or she has been furnished with a subpoena or notice of deposition which attaches a copy of this order and has read and signed a confidentiality form in the form of Appendix A. Persons in attendance at depositions, other than those listed in paragraph 6, may be limited at the request of a party during the disclosure of Confidential Information.

Moreover, unless otherwise agreed by the parties, a deponent who is allowed access to Specially Restricted Information as stated below, shall not be examined about Specially Restricted Information and shall not have Specially Restricted Information revealed to him or her unless he or she has been furnished with a subpoena or notice of deposition which attaches a copy of this order and has read and signed a confidentiality form in the form of Appendix A. Persons in attendance at depositions, other than those listed in paragraph 6, may be limited at the request of a party during the disclosure of Specially Restricted Information.

A party may designate on the record information disclosed during a deposition

as Confidential Information or Specially Restricted Information.

Regardless of whether such information was designated as Confidential Information or Specially Restricted Information at the time of the deposition, each party shall have thirty (30) days after the deposition transcript has been made available to designate as Confidential Information or Specially Restricted Information those portions of the deposition testimony or exhibits which they deem to contain or reveal Confidential Information or Specially Restricted Information.

Until expiration of the thirty (30) day period, the entire deposition transcript shall be treated as Confidential Information or Specially Restricted Information under this Order depending on the designation used in the deposition, unless otherwise agreed by the parties. If no party timely designates information disclosed during a deposition as Confidential Information or Specially Restricted Information, then none of the deposition or its exhibits (except those previously designated as Confidentiality Information or Specially Restricted Information) will be treated as designated.

If all or part of the transcript of deposition testimony or exhibits are treated as Confidential Information or Specially Restricted Information (whether by automatic operation of this order or by a party so designating), but are used in other depositions, such Confidential Information or Specially Restricted Information and all portions of the transcripts of such other depositions and exhibits thereto which refer to such Confidential Information or Specially Restricted Information shall be treated as designated, and if filed

with the Court, shall be filed under seal.

8.    <u>Specially Restricted Information</u>

In addition to labeling documents or other material "Confidential," the designating party may provide a further level of confidentiality by additionally labeling the documents or material "<u>Specially Restricted</u>." As used herein, the term Specially Restricted Information means confidential, proprietary non-public information that: (a) qualifies for trade secret protection under the Uniform Trade Secrets Act (18 U.S.C. § 1839); and (b) the disclosing party reasonably believes in good faith could be utilized to promote the business interests of the receiving party.    Notwithstanding other provisions of this stipulation, information so labeled, as "Specially Restricted" may only be disclosed to:

a.    The following outside attorneys for the respective parties to the litigation and their employees or clerical assistants:

1.    For Nitro:

(a)    Richman Greer Weil Brumbaugh Mirabito
& Christensen P.A.

(b)    Yocca Patch & Yocca LLP

2.    For Acushnet:

(a)    Carlton Fields, P.A.

(b)    Howrey, Simon, Arnold & White LLP

b.    Expert witnesses and expert consultants retained for this litigation and

their employees or clerical assistants.

c.   Court personnel.

d.   [Subject to further negotiation or ruling by the Court].

Information and documents labeled "Specially Restricted" will be released to no persons except those listed in 8a, b, c, and d above, unless successfully challenged as set forth below.

9.   Confidential and Specially Restricted Information to be Filed with Court Under Seal.

All portions of any pleadings, motions, briefs, memoranda or other documents filed with the Court purporting to reproduce, summarize or paraphrase Confidential Information or Specially Restricted Information shall be filed under seal or submitted to the Court in such other manner as the parties may agree in writing or the Court may order. Any party or person filing any document or thing containing Confidential Information or Specially Restricted Information shall file such document or thing in a sealed envelope or other container on which shall be endorsed the title of this action, an indication of the nature of the contents of such sealed envelope or container, the words "CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER" and a statement in substantially the following form:

> This envelope contains information which has been designated as Confidential and is not to be opened and its contents are not to be disclosed to any person other than the Court, its Clerks, or Counsel for the Parties except by order of the Court, or upon the stipulation of the parties.

A copy of the pleading, motion, brief, memorandum or other document, as the case may be, shall be filed in the public record with the confidential material deleted. If a party who originally designated information as Confidential Information or Specially Restricted Information makes use of such information in a pleading, motion, brief, memorandum or other document filed with the Court without following the provisions of this paragraph, the confidentiality protection for that document shall be deemed waived by that party, but the waiver extends to that document only.

    10.    <u>Dispute as to Confidentiality</u>

A party may contest the designation of any information as Confidential Information or Specially Restricted Information. A failure to challenge the designation shall not constitute agreement that it is valid and shall not prejudice any party. However, a party must challenge the other party's designation of a document as containing Confidential Information or Specially Restricted Information no later than sixty (60) days before the pretrial conference or thirty (30) days after receipt of the designation of the document as confidential (whichever is later), or be deemed to have waived its right to challenge that designation.

If a party objects, in writing, to another party's designation of information as Confidential Information or Specially Restricted Information, and the parties are unable to resolve the dispute within ten (10) working days of receipt of that writing, then the party alleging that the specified information is Confidential or Specially Restricted shall, within ten

(10) working days thereafter, seek an appropriate order from the Court and have the burden of proving by the preponderance of the evidence that the material is properly classified for the protection sought. The information shall be treated as so designated until the motion is determined or until the expiration of the ten (10) day period if the disclosing party does not file a motion within that time.

11.  Amendment

This Order may be amended by the written agreement of counsel for the parties in the form of a stipulation subject to approval by the Court. Nothing in this Order shall prevent any party from seeking modification of this Order by the Court or from compelling or objecting to discovery that it believes to be otherwise improper for any reason cognizable under the Federal Rules of Procedure or Evidence.

12.  Oral Argument, Trial and Post-Trial

This Order shall in no event apply to any oral arguments before the Court or trial to the triers of fact in this case, although any party may seek a protective order with respect thereto. It shall apply post-trial to any designated information not in the public record.

13.  Disposition on Termination of Action

Within sixty (60) days of the entry of a Judgment or Order finally terminating this action, including all appeals, and unless the parties agree otherwise, each party shall:

a.  assemble and turn over to counsel for the producing party all documents designated as Specially Restricted Information produced by that party, all copies thereof, and

all materials, documents, summaries, digests, and abstracts containing Specially Restricted Information and all copies thereof;

       b.    assemble and either turn over to counsel for the producing party or destroy all documents designated as Confidential produced by that party, all copies thereof, and all materials, documents, summaries, digests, and abstracts containing Confidential Information and all Copies thereof, provided, however, that counsel of record for each party may retain one set of pleadings, documents filed with the Court, depositions and discovery responses, and may retain any documents and copies thereof which are work product, said materials to remain subject to this Confidentiality Order;

       c.    Each party's counsel shall certify in writing that the procedures set forth in paragraph 13(a) and (b) above have been completed.

    14.   <u>Retained Jurisdiction</u>

       The Court shall retain jurisdiction to make such amendments, modifications and additions to this Order as the Court may from time to time deem appropriate. The Court shall further retain jurisdiction to resolve any disputes concerning the disposition of materials

containing Confidential Information or Specially Restricted Information at the termination of

this action.


Richman Greer Weil Brumbaugh Mirabito &            CARLTON FIELDS, P.A.
Christensen P.A.                                   Attorneys for Acushnet
Attorneys for Nitro                                4000 Bank of America Tower
250 Australian Ave. South Suite 1504               100 S.E. Second Street
West Palm Beach, FL 33401-5016                     Miami, FL 33131-9101
Telephone:  (561) 803-3500                         Telephone: (305) 530-0050
Facsimile: (561) 820-1608                          Facsimile: (305) 530-0055


By: _____

                                                   By: _____

Dated: _____                              STEVEN J. BRODIE, ESQ.
                                                       Florida Bar No. 333069
                                                       JEFFREY MICHAEL COHEN
YOCCA PATCH & YOCCA LLP                                 Florida Bar No. 091495
Attorneys for Nitro
19900 MacArthur Blvd., Suite 650                   Dated: _____
Irvine, CA 92612


By: _____

        MARK W. YOCCA
        California Bar No. 137189

Dated: _____


        DONE AND ORDERED in Chambers, this ___ day of _____, 2003


                                         _____
                                         United States District Court Judge

## APPENDIX A

## AGREEMENT TO RESPECT CONFIDENTIAL INFORMATION

I have read and understand the Joint Stipulation for Entry of Confidentiality Order entered by the United States District Court, Southern District of Florida, on the ____ day of _____, 2003, in In re Nitro Leisure Products, LLC, Consolidated Case No. 02-14008-CIV-MIDDLEBROOKS, a copy of which has been delivered to me to keep with my copy of this Agreement. I agree to be bound by all the terms of the Joint Stipulation for Entry of Confidentiality Order and hereby agree not to use or disclose the Confidential Information to be disclosed to me except for purposes of this litigation as stipulated in the foregoing Order.

_____
(Signature)

_____
Name (Printed)

_____
Street Address

_____
City     State     Zip

_____
Occupation or Business

## APPENDIX B

## AGREEMENT TO RESPECT CONFIDENTIAL AND SPECIALLY RESTRICTED INFORMATION

I have read and understand the Joint Stipulation for Entry of Confidentiality Order entered by the United States District Court, Southern District of Florida, on the ____ day of _____, 2003, in In re Nitro Leisure Products, LLC, Consolidated Case No. 02-14008-CIV-MIDDLEBROOKS, a copy of which has been delivered to me to keep with my copy of this Agreement. I agree to be bound by all the terms of the Joint Stipulation for Entry of Confidentiality Order and hereby agree not to use or disclose the Confidential or Specially Restricted Information to be disclosed to me except as stipulated in the foregoing Order. With respect to my receipt of Specially Restricted Information, I further certify that:

a. Neither I nor any company with which I am associated is a publisher or member of the press; or a manufacturer, refinisher, distributor or seller of any product that is in competition with any product manufactured, distributed or sold by the party who designated the information as Specially Restricted Information (hereinafter "a competitor of the designating party"); or a vendor that sells or seeks to sell products or services to the designating party or a competitor of the designating party; and

b. Neither I nor any company with which I am associated plans to become or anticipates becoming a publisher or member of the press; or a manufacturer, refinisher, distributor or seller of any product that is in competition with any product

manufactured, distributed or sold by the party who designated the information as

Specially Restricted Information (hereinafter "a future competitor of the designating

party"); or a vendor that sells or seeks to sell products or services to the designating party

or a competitor of the designating party; and

        c.     If at any point during my involvement in the proceedings in this case,

I am advised or have reason to believe that my representations in sub-part (a) above were,

have become or may be inaccurate, I will immediately so advise the counsel that is

disclosing the Specially Restricted Information to me (hereinafter, "the disclosing

counsel"); and

        d.     I will not make a copy of any written document that contains

Specially Restricted Information; and

        e.     I will not make any notes, in any form, about any Specially

Restricted Information that is disclosed to me.

 

_____

(Signature)

_____

Name (Printed)

_____

Street Address

_____

City    State    Zip

_____

Occupation or Business



# EXHIBIT "F"

# In Re Nitro Leisure Products, LLC
## Case No. 02-14008-CIV-Middlebrooks

## PRIVILEGE LOG

| No. | Date | Author | Recipient | Relationship of Author/Recipient | Document Type | Subject Matter of Document | Privilege |
|---|---|---|---|---|---|---|---|
| 1. | 1/9/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Correspondence regarding litigation with Acushnet | Attorney-Client |
| 2. | 1/9/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Correspondence regarding litigation with Acushnet | Attorney-Client/ Work Product |
| 3. | 1/4/02 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro board matters | Attorney-Client |
| 4. | 1/2/02 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro trademark issues | Attorney-Client |
| 5. | 12/12/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 6. | 11/28/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 7. | 11/9/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client/ Work Product |
| 8. | 11/9/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client/ Work Product |
| 9. | 11/7/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 10. | 11/7/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 11. | 11/7/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 12. | 11/7/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 13. | 11/6/01 | Amin Khoury | M. Wild | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 14. | 11/6/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client/ Work Product |
| 15. | 11/5/01 | Amin Khoury | Chris McLeod | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 16. | 11/3/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 17. | 11/3/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 18. | 11/3/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 19. | 10/22/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 20. | 9/20/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 21. | 9/17/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 22. | 9/10/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |

| No. | Date | Author | Recipient | Relationship of Author/Recipient | Document Type | Subject Matter of Document | Privilege |
|-----|------|--------|-----------|----------------------------------|---------------|----------------------------|-----------|
| 23. | 9/5/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 24. | 8/30/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 25. | 8/27/01 | Amin Khoury | Brian West | Attorney/Client | E-mail | Correspondence regarding Nitro legal matters | Attorney-Client |
| 26. | 8/21/01 | Amin Khoury | David Rapp | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client/ Work Product |
| 27. | 8/20/01 | Amin Khoury | David Rapp | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client/ Work Product |
| 28. | 7/10/01 | Amin Khoury | David Rapp | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 29. | 6/28/01 | Amin Khoury | David Rapp | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 30. | 6/27/01 | Amin Khoury | David Rapp | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 31. | 6/21/01 | Amin Khoury | David Rapp | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 32. | 6/11/01 | Amin Khoury | David Rapp | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 33. | 6/11/01 | Amin Khoury | David Rapp | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client |
| 34. | 4/19/01 | Amin Khoury | Craig Eller | Attorney/Client | E-mail | Correspondence regarding Nitro legal matters | Attorney-Client |
| 35. | 3/20/01 | Amin Khoury | John French | Attorney/Client | E-mail | Nitro third party acquisition | Attorney-Client |
| 36. | 3/13/01 | Amin Khoury | Craig Eller | Attorney/Client | E-mail | Potential third party litigation involving Nitro | |
| 37. | 3/8/01 | Amin Khoury | Craig Eller | Attorney/Client | E-mail | Correspondence regarding Nitro legal matters | Attorney-Client |
| 38. | 3/2/01 | Amin Khoury | John French | Attorney/Client | E-mail | Review of legal document | Attorney-Client |
| 39. | 2/27/01 | Amin Khoury | Deborah Brucato | Attorney/Client | E-mail | Nitro legal expenses | Attorney-Client |
| 40. | 7/9/01 | Kami Seward | Steve Siff | Attorney/Client | E-mail | Correspondence regarding Nitro legal matters | Attorney-Client |
| 41. | 10/26/99 | Amin Khoury | Kami Seward | Supervisor/employee | E-mail | Documents regarding Nitro's legal matters | Work Product |
| 42. | 3/12/01 | Sean Geary | Amin Khoury | Attorney/Client | E-mail | Third party acquisition | Attorney-Client/ Work Product |
| 43. | 3/5/01 | John French | Amin Khoury | Attorney/Client | E-mail | Third party acquisition | Attorney-Client/ Work Product |
| 44. | 10/25/00 | Julio Gonzalez | Amin Khoury | Employee/supervisor | E-mail | Nitro third party litigation | Work Product |
| 45. | 8/29/00 | John French | Kami Seward | Attorney/Client | E-mail | Nitro subscription agreement | Attorney-Client/ Work Product |
| 46. | 8/28/00 | John French | Kami Seward | Attorney/Client | E-mail | Nitro subscription agreement | Attorney-Client/ Work Product |

Nitro/Discovery/Privilege Log

| No. | Date | Author | Recipient | Relationship of Author/Recipient | Document Type | Subject Matter of Document | Privilege |
|---|---|---|---|---|---|---|---|
| 47. | 7/7/00 | John French | Kami Seward | Attorney/Client | E-mail | Nitro Promissory Note with third party | Attorney-Client/ Work Product |
| 48. | 7/5/00 | Gregg Fierman | Kami Seward | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client/ Work Product |
| 49. | 7/5/00 | Gregg Fierman | Kami Seward | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client/ Work Product |
| 50. | 8/4/00 | Bryn Jedlic | Amin Khoury | Attorney/Client | E-mail | Questionnaire | Attorney-Client/ Work Product |
| 51. | 6/30/00 | Gregg Fierman | Kami Seward | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client/ Work Product |
| 52. | 6/26/00 | Gregg Fierman | Kami Seward | Attorney/Client | E-mail | Nitro third party litigation | Attorney-Client/ Work Product |
| 53. | 6/22/00 | John French | Amin Khoury | Attorney/Client | E-mail | Nitro subscription agreement | Attorney-Client/ Work Product |
| 54. | 6/15/00 | Gregg Fierman | Kami Seward | Attorney/Client | E-mail | Nitro third party acquisition | Attorney-Client/ Work Product |
| 55. | 6/14/00 | Gregg Fierman | Kami Seward | Attorney/Client | E-mail | Nitro third party acquisition | Attorney-Client/ Work Product |
| 56. | 6/12/00 | B. West | Kami Seward | Attorney/Client | E-mail | Nitro third party acquisition | Attorney-Client/ Work Product |
| 57. | 6/12/00 | B. West | Kami Seward | Attorney/Client | E-mail | Nitro third party acquisition | Attorney-Client/ Work Product |
| 58. | 6/9/00 | John French | Kami Seward | Attorney/Client | E-mail | Nitro private placement memorandum | Attorney-Client/ Work Product |
| 59. | 7/19/00 | Robert Zelnick | Amin Khoury | Attorney/Client | Letter | Legal Opinion regarding Refurbishment | Attorney-Client/ Work Product |
| 60. | 7/20/00 | Robert Zelnick | Amin Khoury | Attorney/Client | Letter | Legal Opinion regarding Advertisements | Attorney-Client/ Work Product |

| # | Date | Nitro, Nitro's employees and/or agents, including but not limited to insurers and consultants | Nitro's counsel | Attorney/Client | Correspondence, including letters, e-mails and memos | Documents regarding case | Attorney-Client/Work Product |
|---|---|---|---|---|---|---|---|
| 61. | 1/10/02 – Current | Nitro, Nitro's employees and/or agents, including but not limited to insurers and consultants | Nitro's counsel | Attorney/Client | Correspondence, including letters, e-mails and memos | Documents regarding case | Attorney-Client/Work Product |
| 62. | 1/10/02- Current | Nitro's counsel | Nitro, Nitro's employees and/or agents, including but not limited to insurers and consultants | Attorney/Client | Correspondence, including letters, e-mails and memos | Documents regarding case | Attorney-Client/Work Product |
| 63. | 7/26/02 | Chet Shira | Mark Yocca | Consultant/Attorney | Report | Discussion of golf ball performance measures | Attorney-Consultant/Work Product |
| 64. | 4/25/02 | Amin Khoury | Steve Siff | Attorney/Client | E-mail | Documents Regarding potential witnesses | Attorney-Client |
| 65. | 4/23/02 | Amin Khoury | John French | Attorney/Client | E-mail | Docs. Regarding First Amended Complaint | |
| 66. | 4/22/02 | Amin Khoury | Steve Siff | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 67. | 4/22/02 | Amin Khoury | Deborah Brucato | Supervisor/employee | E-mail | Attorney Invoices | Attorney-Client |
| 68. | 4/22/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Payments to Experts | Attorney-Client |
| 69. | 4/22/02 | Amin Khoury | Steve Siff | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 70. | 4/22/02 | Amin Khoury | Steve Siff | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client/ |
| 71. | 4/19/02 | Amin Khoury | Jay French | Attorney/Client | E-mail | Memo regarding refurbishment | Attorney-Client/ Work Product |
| 72. | 4/17/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 73. | 4/17/02 | Amin Khoury | Jay French; John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 74. | 4/16/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 75. | 4/15/02 | Amin Khoury | Earl Saxman | Client/Consultant | E-mail | Attorney meeting | Attorney-Client |
| 76. | 4/15/02 | Amin Khoury | Craig Seebald | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 77. | 4/12/02 | Amin Khoury | Craig Seebald | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |

| # | Date | | | | | | |
|---|------|---|---|---|---|---|---|
| 78. | 4/11/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 79. | 4/8/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 80. | 4/8/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 81. | 4/5/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 82. | 4/4/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 83. | 4/3/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 84. | 3/27/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 85. | 3/16/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 86. | 3/14/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 87. | 3/13/02 | Amin Khoury | Earl Saxman | Client/Consultant | E-mail | Documents Regarding Attorneys | Work Product |
| 88. | 3/12/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 89. | 3/11/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 90. | 3/11/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 91. | 3/11/02 | Amin Khoury | Earl Saxman | Client/Consultant | E-mail | Documents Regarding Case | Work Product |
| 92. | 3/11/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 93. | 3/4/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 94. | 3/4/02 | Amin Khoury | Bob Zelnick | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 95. | 2/28/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 96. | 2/25/02 | Amin Khoury | John Dabney | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 97. | 2/20/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 98. | 2/19/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 99. | 2/19/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 100. | 1/21/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client/ Work Product |
| 101. | 1/21/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client/ Work Product |
| 102. | 1/21/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client/ Work Product |
| 103. | 1/18/02 | Amin Khoury | John French | Attorney/Client | E-mail | Documents Regarding Case | Attorney-Client |
| 104. | 1/11/02 | Amin Khoury | Deborah Wilcox | Attorney/Client | E-mail | Legal Issues Regarding Internet | Attorney-Client |
| 105. | 1/10/02 | Amin Khoury | John French | Attorney/Client | E-mail | Legal Issues Regarding Internet | Attorney-Client/ Work Product |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **PRIVILEGE**

**LOG**, was served via regular U.S. Mail this 26th day of March, 2003, on Jeffrey M. Cohen,

Esq., Carlton Fields, P.A., 100 S.E. Second Street, Suite 4000, Miami, Florida 33131 and

Robert L. Ciotti, Jr., Esq., Carlton Fields, P.A., 777 S. Harbour Island Boulevard, Tampa,

Florida 33602.

Paul Kim