**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**



**CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS/LYNCH**

IN RE: NITRO LEISURE PRODUCTS, LLC

_____/

## MOTION OF NITRO LEISURE PRODUCTS, LLC FOR
## SANCTIONS FOR FAILURE TO COMPLY WITH COURT ORDER
## RE: MOTION TO COMPEL FURTHER RESPONSES
## TO NITRO'S FIRST SET OF SPECIAL INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 37(b)(2), Plaintiff and Counter-Defendant Nitro Leisure Products LLC ("Nitro") moves this Court for an Order imposing sanctions against Acushnet Company ("Acushnet") for its failure to comply with this Court's Omnibus Order on Discovery Motions, filed May 23, 2003, (the "Order") granting in part Nitro's Motion to Compel Further Responses to Nitro's First Set of Interrogatories (DE #187).

In particular, Nitro requests an Order that the following facts shall be taken as established against Acushnet (or, in the alternative, that Acushnet be prohibited from disputing the following facts): (1) Acushnet has monopoly power in the domestic golf ball business; and (2) Acushnet has willfully acquired or maintained its monopoly power through exclusionary means in violation of section 2 of the Sherman Act.  Nitro further requests that the Court award it the reasonable expenses, including attorney's fees, that Nitro incurred in bringing this Motion.

Nitro\Acushnet\Pleadingsy030625.Sanctions.Rogs.wpd

The Motion will be brought on the grounds that Acushnet's Amended Answers to Interrogatories fail to comply with the Court's Order granting Nitro's motion to compel further responses to the eleventh and twelfth interrogatories.

The Motion is based on this Motion; the attached Memorandum of Law; the Declaration of Paul Kim, filed concurrently herewith; the pleadings and papers on file herein, and on such other evidence as may be presented at any time of hearing on the Motion.

Dated: June 27, 2003

YOCCA PATCH & YOCCA LLP

By: _Mark W Yocca_

Mark W. Yocca
California State Bar No. 137189
Paul Kim
California State Bar No. 157608
19900 MacArthur Boulevard, Suite 650
Irvine, California 92612
Telephone:   (949) 253-0800
Facsimile:   (949) 253-0870

Gerald F. Richman
Florida Bar No. 066457
Gary S. Betensky
Florida Bar No. 434302
**RICHMAN GREER WEIL
BRUMBAUGH MIRABITO &
CHRISTENSEN, P.A.**
One Clearlake Centre - Suite 1504
250 Australian Avenue, South
West Palm Beach, FL 33401
Telephone: (561) 803-3500
Facsimile: (561) 820-1608

*Attorneys for Nitro Leisure Products, LLC*

## **CERTIFICATION**

I, the undersigned counsel for Nitro Leisure Products, LLC, hereby certify that I have conferred with opposing counsel in a good faith effort to resolve the issues raised in this motion, but was unable to do so.

_____
Mark W. Yocca

# MEMORANDUM OF LAW

## PRELIMINARY STATEMENT

Nitro commenced the underlying action against Acushnet on January 10, 2002. In its Amended Complaint, Nitro alleges that Acushnet sought to destroy its used golf ball business by engaging in false advertising, product disparagement, unfair competition and by attempting to eliminate Nitro as a competitor. Among other things, the action states claims for relief for monopolization and attempted monopolization under section 2 of the Sherman Act (15 U.S.C. § 2).

On October 4, 2002, Nitro served its First Set of Interrogatories (Kim Decl. ¶ 2 & ex. A). Acushnet thereafter sought a 30-day extension of time in which to respond to the October Discovery Requests. Nitro did not object to Acushnet's request for extension of time, and, on November 12, 2002, the Court granted Acushnet's Motion for Enlargement of Time to Respond to Plaintiff's Written Discovery Requests. (Kim Decl. ¶ 3). As a courtesy to opposing counsel, Nitro granted a further extension of time to respond to the special interrogatories up to and including December 16, 2002 (Kim Decl. ¶ 4). Finally, on February 25, 2003, almost five months after the special interrogatories were served, Acushnet served its unverified responses thereto. (Kim Decl. ¶ 5 & ex. B).

Based on Acushnet's improper and deficient responses, Nitro filed its Motion to Compel Further Response to Nitro's First Set of Special Interrogatories on April 14, 2003. (Kim Decl. ¶7). At the May 22, 2003 hearing on that motion, the Court granted Nitro's

motion as to the eleventh and twelfth interrogatories.   The following colloquy among the court and counsel is reprinted from the transcript of that hearing:

> THE COURT: Interrogatory number 11, market share, you think that's vague and incomprehensible.  Is that where we are?
>
> MR. BRODIE: Interrogatory number 11?
>
> THE COURT: Yes.
>
> MR. BRODIE: * * *
>
> As far as the defendant's products, we aren't prepared and have given them information, are giving them information dealing with and are prepared to plead in an interrogatory response regarding defendant's products meaning golf balls. . . .
>
> THE COURT: Okay.  What's the situation on interrogatory 11?
>
> MR. YOCCA: Your Honor, they have not agreed to answer it.  Mr. Brodie was on the phone for 20 hours, Mr. Betensky and I were on the phone for 30 hours with other lawyers.  We asked straight up, "Will you answer the interrogatory?"  They said, "No."
>
> MR. YOCCA: . . .[T]his interrogatory has nothing to do with other products other than golf balls.  They  point out that they have produced some documents, not all relating to their market share, however, Mr. Seine [*sic*] testified in deposition he disagrees with those documents.  So we are entitled - - and they have different figures they believe to be accurate.

We are entitled in a monopoly case about golf balls. The answer to us was flat off no. . . .

THE COURT: I am going to grant the motion to compel as to interrogatory 11.

On 12, it's marketing and sales strategies that Acushnet has considered or implemented regarding refurbished balls. Essentially, as I understand it, you answer that it's privileged; is that right?

* * *

With respect to interrogatory number 12, I am going to grant the motion to compel as to these marketing and sales strategies. I note the response was essentially boilerplate responses of privilege. I don't think the privilege log was provided and so whether something was considered could, may lead to relevant evidence, so I am going to grant that motion.

R.T. p. 9, lines 1-5 & 15-19; p. 11, lines 6-21; p. 12, lines 1-6; p. 20, lines 12-19. (Kim Decl. ex. D).

In sum, the Court overruled all of Acushnet's objections and rejected its technique of merely producing documents in lieu of answering. In fact, Acushnet's counsel even represented to the Court that it would provide the requested information in the interrogatory itself. The Court also ordered Acushnet to disclose all of the marketing and sales strategies it has "considered" regarding used balls. Yet, once again, Acushnet has totally failed to provide proper "answers." In response to Interrogatory No. 11, Acushnet demurs to

answering this question until after its "experts" have examined the issue and instead references over 3,200 pages of documents from which Nitro is supposed to divine an answer as to Acushnet's market share.  (Kim Decl. ex. E).

Acushnet similarly stonewalls the question on what marketing and sales strategies it has "considered" implying that the only proposal it reviewed was that of Performance Indicator, Inc. Yet, as reflected in Exhibits F and G to the Kim Declaration, Acushnet's own documents reflect that: (1) Titleist has indeed considered other options to address what it refers to as the pond ball "problem" balls; (2) at least at one time, Acushnet refurbished not only Titleist golf balls but also golf balls of other manufacturers; and (3) Acushnet has even obtained a patent on refurbishment.  Moreover, contrary to Acushnet's contention that is has not implemented any strategies regarding the used golf ball industry, based on its own emails, that statement is false.  (Kim Decl. ex. H).

## ARGUMENT

### THE COURT SHOULD DEEM THE

### CONTESTED FACTS TO BE TAKEN

### AS ESTABLISHED AGAINST ACUSHNET

Federal Rule of Civil Procedure 37(b)(2) states, in pertinent part:

If a party. . . fails to obey an order to provide or permit discovery. . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

* * *

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make the award unjust.

"Punishment and deterrence are valid and important considerations in determining whether to impose sanctions for failure to comply with a discovery order. Courts must have the power to impose punitive measures if they are to preserve their capacity to promote the orderly progress of litigated cases. While the particular sanction must be sufficiently potent to be efficacious, it also must be narrowly tailored to serve only its necessary function. . . ." 7 MOORE'S FEDERAL PRACTICE § 37.50[1][a] (3d ed. 2000).

"[D]eeming the establishment of certain facts is one of the least harsh sanctions available to courts under Rule 37(b). Indeed, it is only more severe than the granting of

8

expenses and attorney's fees." *Chilcutt v. United States,* 4 F.3d 1313, 1320 n. 17 (citations omitted).  Both sanctions are appropriate here.

## INTERROGATORY NO. 11

INTERROGATORY NO. 11

Describe in detail, including but not limited to percentages, Defendant's market share for each of Defendant's Products.

ACUSHNET'S ORIGINAL RESPONSE

Objection vague, incomprehensible and not limited in time.  Defendant further construes this request as limited to market area with respect to its golf balls and not products manufactured under the brand names of FootJoy or Cobra.  Subject to that construction and its objections, all non-privileged, non-confidential documents will be produced.

ACUSHNET'S AMENDED RESPONSE

The term market share is not defined in Nitro's interrogatories.  To the extent this interrogatory calls for information related to the definition of the market for Acushnet's products, Acushnet will produce, on the date agreed to by both parties for the exchange of expert reports, the report(s) of any experts who may have been or may be retained by Acushnet to testify at trial related to such matters, and will also produce at that time all data or other information considered by the expert in forming the opinions expressed in such report.

Acushnet responds, pursuant to Rule 33(d), that it has produced, and continues to produce, documents from which market share information may be derived, and that the burden of deriving the answer is substantially the same for Nitro as it is for Acushnet. Such documents include, but are not limited to, Bates Nos. 666-1247, 4565-4575, 8398-9599, 11592.1-11592.872, 11595-11659, 13481-13839, 13856, 14061-14068, 14350-14371, 15272-15298, 15302-15307, 15674-15678, 15770-15890, 19309-19332, 56766-56767, 56770-56771, 67069-67119, 67645-67657, 71232-71456, 71695-71704, 71720-71725, 71742-71770, 71814-71952. Acushnet's discovery and investigation are continuing and it continues to collect further information related to these subjects. Acushnet anticipates completing production of documents responsive to this interrogatory on or before June 13, 2002.

As these documents show, Acushnet relies primarily on third party companies for market share information. Acushnet conducts only limited and informal reconciliation of these third party company's market share estimates with its own figures reflecting actual shipments of golf ball products. Documents reflecting this informal reconciliation have been produced.

ARGUMENT IN FAVOR OF GRANTING SANCTIONS

In effect, Acushnet's Amended Response is the same as its original response: the definition of market share is vague and here's a bunch of documents–go and figure it out for yourself. In addition, Acushnet now raises a new objection: that this is a matter for the

experts, and we'll provide you with an answer when their reports are ready. This is clearly unsatisfactory.

This court has already overruled Acushnet's objection that this interrogatory is vague and ambiguous; yet, the defendant persists in refusing to provide any meaningful discovery regarding market share. It simply defies credulity that a long-established manufacturer, such as Acushnet, would have no idea without consulting experts as to what is its market share. In a monopolization case, market share is a key, if not **the** key, element for which the plaintiff bears the burden of proof. Nitro is entitled to an answer, not more objections and promises of a later response.

Similarly improper is Acushnet's reliance on Federal Rule 33(d). This Court has already dismissed Acushnet's previous attempt to invoke Rule 33(d) and ordered Acushnet to **answer** this interrogatory. In fact, Acushnet's own counsel represented at the hearing that he would provide a written answer in the interrogatory itself. (R.T., P.9, ll. 15-19). Despite all this, Acushnet has once again merely referenced thousands and thousands of pages of documents and demanded that Nitro figure out the answer. This is improper. Acushnet must provide an answer to this simple and straightforward interrogatory. Moreover, Acushnet's contention that it does not have any of its own documents concerning its market share for its golf balls smacks of bad faith.

Nevertheless, even assuming *arguendo* that Acushnet still has the right to "answer" the interrogatory by providing this type of response, "the records must be specified 'in sufficient detail to permit the interrogating party to locate and identify, as readily as the party

served, the records from which the answer may be obtained." Fed. R. Civ. P. 33(d).  Clearly, that is not the case here when Acushnet identifies over 3,200 pages of documents from which the answer may purportedly be gleaned.

Rule 33(d) "is not designed to impose on an interrogating party a mass of records and thereby make the ascertaining even more burdensome or expensive on the interrogating party." *Thomason v. Leiter* 52 F.R.D. 290, 291 (M.D. Ala. 1971).  Thus, in *Oleson v. Kmart Corp.,* 175 F.R.D. 560, 564 (D. Kan. 1997), the defendant's reference to plaintiff's 307-page personnel file in answer to plaintiff's interrogatories was held to be insufficient to comply with Rule 33(d).  The responding party may not simply refer to a mass of records, but must specifically identify, in answer to an interrogatory, which documents contain requested information.  *Id.*

Similarly, in *Tutu Wells Contamination Litigation*, 162 F.R.D. 46, 68 (D.V.I. 1995), the court held that a party does not satisfy its discovery obligations "by dumping several volumes of unspecified raw data on opposing counsel."  *See also* 7 MOORE'S FEDERAL PRACTICE, *supra*, at § 33.105[3] & n. 15; *Rainbow Pioneer #44-18-04A v. Hawaii-Nevada Investment Corporation,* 711 F.2d 902 (9th Cir. 1983)(the 1980 amendment to Rule 33  was "to make it clear that a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived")(citation omitted).

## INTERROGATORY NO. 12

INTERROGATORY NO. 12

Describe in detail Defendant's marketing and/or sales strategies that have been considered and/or implemented by Defendant that refer or relate to refurbished, re-manufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls.

ACUSHNET'S ORIGINAL RESPONSE

Objection, this interrogatory requests information that is protected by attorney-client and work product privileges.  Defendant further objects that this requests information that is highly confidential and proprietary in nature.  Without waiving said objections, Defendant has not implemented marketing and/or sales strategies that refer to the refurbished, re-manufactured, or otherwise used golf balls.

ACUSHNET'S AMENDED RESPONSE

Acushnet has not implemented any marketing or sales strategies that refer or relate to refurbished, re-manufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls.

The term "considered" is not defined by Nitro in its interrogatories.  For the purpose of this response, Acushnet understands the term "considered" to mean "to think about carefully: as a: to think of especially with regard to taking some action. . ." (Mirriam-Webster).

Acushnet has reviewed information prepared and presented independently by an unrelated commercial entity, Performance Indicator, that refers or relates to refurbished,

13

remanufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls (e.g., Acushnet 13955-15946).   Performance Indicator met with Acushnet personnel and communicated with Acushnet personnel in an effort to interest Acushnet in Performance Indicator's proposal, set forth in its documents, which Acushnet has produced.  Acushnet declined to pursue a relationship with Performance Indicator.

ARGUMENT IN FAVOR OF GRANTING SANCTIONS

Acushnet's amended response identifies the information it received from Performance Indicator as the only proposal which it "considered" which refers or relates to the used ball business.  However, documents that Acushnet has reluctantly produced evidence that, in fact, this is not the case.

First, a string of emails between William Morgan and Maureen Costa (Kim Decl. ¶ 12 & ex. F) reveal that Acushnet has also considered "lowering the price of its new balls," "dumping so called 'Club Special' and 'Green Ray' specials into the marketplace," and "buying all of the pond balls and selling them as practice balls" to address "the problem" of "the pond ball business."   Second, Acushnet's documents show that they, themselves have been refurbishing golf balls of other manufacturers as far back as 1942. (Kim Decl. ¶ 13 & ex. G ).  In fact, Acushnet even obtained a patent on refurbishment of a golf ball.  (Kim Decl. ¶ 14 & ex. I).  Strange indeed would be a company who obtains a patent yet does not at least "consider" "marketing and/or sales strategies" by which this patent may be exploited.

Moreover, the documents produced to date by Acushnet evidence that its statement that it has not implemented any strategies is likewise false. Numerous emails exchanged between Acushnet representatives regarding one of its customers and Nitro's customers (Walmart Canada) explicitly states that Acushnet is punishing its customer for carrying Nitro products. By way of example, one of the emails states in pertinent part:

> At issue here is the deterioration of our partnership due to the lack of support of our
> Pinnacle brand and the assault on the Titleist brand resulting from their choice to sell
> a repainted golf ball stamped with our trademark logo. This latter choice came with
> no communication from WalMart and with no regard for the damage it has caused to
> our brand. These are the key issues that must be addressed prior to moving forward
> with product expansion in Canada. It will be WalMart's decision whether or not they
> will support our two brand strategy, and discontinue selling and supporting products
> that damage our brand.

(Kim Decl. ex. H).

Collectively, these documents abundantly evidence that Acushnet has in fact "considered and implemented" a number of marketing and sales strategies that "refer or relate to refurbished, remanufactured, repaired, recycled, refinished, re-washed or otherwise used golf balls." Indeed, in Nitro's opinion, Acushnet has deliberately misrepresented its own sales and marketing plans to address the "Pond ball issue." Such conduct mandates the award of substantial sanctions.

"When parties present no valid objections to discovery and intentionally withhold properly requested information, courts have the authority to presume that the party's refusal to produce the information is 'an admission of the want of merit in the asserted defense.'" *Chilcutt, supra,* 4 F. 3d at 1324 (quoting *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909)). Accordingly, Nitro suggests that the Court enter an Order denying Acushnet the ability to argue that it acquired or maintained its monopoly power "as a consequence of a superior product, business acumen, or historic accident" (*United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966) and instead take as an established fact that Acushnet has willfully acquired or maintained its monopoly power through exclusionary means in violation of section 2 of the Sherman Act. *See, e. g., Stearns Airport Equipment Co. v. FMC Corp.*, 170 F.3d 518, 522 (5th Cir. 1999).

Yet, even if this Court finds that Acushnet's answer was not intentionally misleading, the same sanctions should be imposed. Willful or contumacious conduct has never been a prerequisite to sanctions which are less harsh than a dismissal or default judgment. *Chilcutt, supra*, 44 F.3d at 1322 & n.23.

## CONCLUSION

For the reasons stated herein and in the Declaration of Paul Kim filed concurrently herewith, Nitro respectfully submits that Acushnet has violated this Court's Omnibus Order on Discovery Motions, filed May 23, 2003 and sanctions should be awarded. In particular, Nitro prays that the Court enter an Order that the following facts shall be taken as established

against Acushnet (or, in the alternative, that Acushnet be prohibited from disputing the following facts): (1) Acushnet has monopoly power in the domestic golf ball business; and (2) Acushnet has willfully acquired or maintained its monopoly power through exclusionary means in violation of section 2 of the Sherman Act.    Nitro further requests that the Court award it the reasonable expenses, including attorney's fees, of $ 3,275 that Nitro has incurred in bringing this Motion.

Dated: June 27, 2003

**YOCCA PATCH & YOCCA LLP**

By: _____

Mark W. Yocca
California State Bar No.137189
Paul Kim
California State Bar No. 157608
19900 MacArthur Boulevard, Suite 650
Irvine, California 92612
Telephone:    (949) 253-0800
Facsimile:    (949) 253-0870

Gerald F. Richman
Florida Bar No. 066457
Gary S. Betensky
Florida Bar No. 434302
**RICHMAN GREER WEIL
BRUMBAUGH MIRABITO &
CHRISTENSEN, P.A.**
One Clearlake Centre - Suite 1504
250 Australian Avenue, South
West Palm Beach, FL 33401
Telephone: (561) 803-3500
Facsimile: (561) 820-1608

*Attorneys for Nitro Leisure Products, LLC*

Nitro\Acushnet\Pleadingsy030625.Sanctions.Rogs.wpd                    17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Motion for Sanctions for Failure to Comply with Court Order was delivered via Hand Delivery this _____ day of June, 2003 to: Robert L. Ciotti, Esquire and Steven J. Brodie, Esquire, Carlton Fields, P.A., 222 Lakeview Avenue, Suite 1400, West Palm Beach, FL 33401-6149.

By: _____
DONALL O'CARROLL
Florida Bar No. 0107816