

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

IN RE NITRO LEISURE PRODUCTS, L.L.C.
_____/

ACUSHNET'S MOTION FOR PROTECTIVE ORDER AGAINST
NITRO'S RE-NOTICE OF SECOND VIDEOTAPED DEPOSITION
OF ACUSHNET'S CORPORATE REPRESENTATIVE
AND INCORPORATED MEMORANDUM OF LAW

Acushnet Company ("Acushnet"), through its attorneys and pursuant to the Rule 26(c)(4) of the Federal Rules of Civil Procedure, moves for a Protective Order with regard to Plaintiff/Counter Defendant's, Nitro Leisure Products, L.L.C. ("Nitro") Re-Notice of Second Videotaped Deposition of Acushnet's Corporate Representative Pursuant to Fed.R.Civ.P. 30(b)(6) ("Re-Notice"). As grounds for this motion, Acushnet states:

1. On June 16, 2003, Nitro served Acushnet with its Re-Notice of a deposition of an Acushnet corporate representative to take place on July 1, 2003.

2. Nitro's Re-Notice seeks testimony regarding the following categories:

> (1) Any and all golf balls relied on, reviewed, and/or inspected in connection with the preliminary injunction motion.
>
> (2) Any and all golf balls relied on, reviewed, and/or inspected in connection with this action since the hearing on the preliminary injunction motion before the District Court.
>
> (3) Any and all golf balls relied on by Acushnet in support of its trademark claims in connection with the preliminary injunction motion.
>
> (4) Any and all golf balls relied on by Acushnet in support of its patent claims in connection with the preliminary injunction motion.

*IN RE NITRO LEISURE PRODUCTS, L.L.C.*
*CONS. CASE NO. 02-14008-CIV-MIDDLEBROOKS*

(5) Any and all golf balls Acushnet intends to rely on in support of its trademark claims at trial.

(6) Any and all golf balls Acushnet intends to rely on in support of its patent claims at trial.

3. To protect a party from discovery abuse during depositions, Federal Rule of Civil Procedure 26(c)(4) enables this Court to order that certain matters not be inquired into or that the scope of the disclosure or discovery be limited to specific matters.

4. Acushnet objects to all six categories of inquiry covered by the Re-Notice because they are vague and overbroad. These categories fail to define with particularity what Nitro seeks. An inquiry into "[a]ny and all golf balls relied on, reviewed, and/or inspected," in connection with this action since the preliminary injunction motion and hearing places no limitation on these requests since the motion and hearing dates. Moreover, "any and all golf balls Acushnet intends to rely on at trial" could encompass a voluminous quantity and undefined quantity of information, as Acushnet's intentions for trial are not yet clearly determined, and therefore, are practically unlimited at this time.

5. Federal Rule of Civil Procedure 30(b)(6) requires a party to describe with "reasonable particularity" the matters on which examination is requested. Thus, this Court must limit discovery where it is vague or overbroad.

6. Categories 2, 5, and 6 violate the work product rule as these tangible things have been or will be strategically selected by Acushnet's counsel in anticipation of this litigation. Likewise, the reasons for the use of certain golf balls at trial implicate the legal tactics, legal opinion, and mental impressions and conclusions of counsel as it prepares for trial.

7. Federal Rule of Civil Procedure 26(b)(3), defining the work product doctrine, prevents discovery documents and things prepared in anticipation of litigation or for trial by or for a party.

8. Finally, all six categories would require Acushnet to reveal its expert witnesses prior to the date on which Acushnet must inform Nitro of its testifying witnesses in compliance with Rule 26(b)(4)(A). As Acushnet is not yet required to designate its expert witnesses, these issues should be reserved for questioning by Acushnet's expert witnesses at the appropriate time. Thus, to the extent that the Re-Notice seeks testimony of an expert, it is untimely.

WHEREFORE, Acushnet requests that this Court enter a protective order precluding questioning at deposition on these vast and unlimited categories, prohibiting inquiries into Acushnet's work product, and questions better suited for Acushnet's expert witnesses who have yet to be designated in this case.

## MEMORANDUM OF LAW

The work product doctrine attaches to documents and tangible things prepared in anticipation of litigation. See Fed.R.Civ.P. 26(b)(3). The Supreme Court delineated the basis for the doctrine in Hickman v. Taylor, 329 U.S. 495 (1947). Originally, the doctrine stated that material prepared by an attorney in anticipation of litigation is protected from disclosure to other parties. However, Rule 26 broadened the holding of Hickman to provide protection for material prepared on behalf of a party, not merely that prepared by an attorney. The doctrine applies to both documents and tangible things assembled by a party. See In re Sahlen & Associates, Inc., 1990 WL 284508 * 3 (S.D. Fla. November 5, 1990).

In categories 2, 5, and 6, Nitro seeks information regarding any and all golf balls relied on since the preliminary injunction motion and hearing as well as those balls intended to be relied on at trial. The assembly of such tangible things and supporting documentation would blatantly violate the doctrine, as Nitro demands information specifically culled and prepared in anticipation of trial and used since the preliminary injunction motion and hearing shaped this litigation. The requests constitute a hornbook example of a work product doctrine violation and thus must be excluded from discovery, as the parties are not required to yet provide its exhibit list.

Moreover, under the work product doctrine, a party may obtain factual work product only upon a showing of substantial need and undue hardship. See Hickman, 329 U.S. at 495; Castle v. Sangamo Weston, Inc., 774 F.2d 1464 (11th Cir. 1984). Opinion work product, mental impressions, conclusions, and legal theories, however, are absolutely protected even if the requisite showing of substantial need and undue hardship is made. See Board of Trustees of Leland Stanford Junior Univ. v. Coulter Corp., 118 F.R.D. 532 (S.D. Fla. 1987).

For instance, in Moore USA, Inc. v. Standard Register Co., 206 F.R.D. 72 (W.D.N.Y. 2001), the defendant in a patent infringement case complained that it did not know which batches or samples of the plaintiff's products the plaintiff relied on to prosecute its claims. The defendant sought discovery from the plaintiff's expert regarding those products before the plaintiff designated its testifying expert witnesses. See Moore USA, 206 F.R.D. at 76. The court denied the discovery, finding that the defendant's gripe amounted to "an inability to learn of the decisions and choices that were made by Moore's counsel in requesting analysis from" the expert. Id. Continuing, the court concluded:

*IN RE NITRO LEISURE PRODUCTS, L.L.C.*
*CONS. CASE NO. 02-14008-CIV-MIDDLEBROOKS*

> In seeking discovery of documents which evidence the precise adhesives that were tested by Moore's non-testifying expert, SRC seeks a window into Moore's litigation strategy and into Moore's ultimate theories on the case. This kind of information falls squarely under the heightened protections given to an attorney's core work product.

Id. at 72.

In the instant case, Nitro's intention to question Acushnet's corporate representative regarding its reliance, review, or inspection of <u>any and all golf balls</u> Acushnet has selected since the hearing and in preparation for trial would invade the opinions, mental impressions, conclusions, and legal theories of Acushnet. Acushnet's choice of golf balls for use at trial and since the hearing resulted from the direction of its counsel and the legal approaches counsel may employ at trial. Of course, Acushnet will disclose all required information either in its pretrial statement or expert report at the proper time. But to divulge which golf balls Acushnet plans to use at this early stage and the reasons for those selections would betray Acushnet's legal tactics and provide Nitro an unlawful sneak preview of Acushnet's litigation blueprint. See <u>Gutter v. E.I. Dupont De Nemours and Co.</u>, 1998 WL 2017926 (S.D. Fla. May 18, 1998) (protecting from discovery documents regarding legal strategy); <u>United States v. Lockheed Martin Corp.</u>, 995 F.Supp. 1460 (M.D. Fla. 1998) (legal thought processes protected from discovery).

Furthermore, none of the six categories should be subject to discovery as they are vague and overbroad. Rule 30(b)(6) requires that a party's notice of deposition "describe with reasonable particularity" the matters for examination. Nitro has failed to adhere to this rule. Instead, Nitro requests "any and all golf balls relied on, reviewed, and/or inspected," not merely to be used at trial, but also since the preliminary injunction motion and hearing. These requests

conceivably would encompass every minutiae of Acushnet's handling of this case since that motion and hearing. Such a demand lacks the requisite particularity and is overbroad and vague.

Several cases demonstrate this point. In Fishel v. BASF Group, 175 F.R.D. 525, 531 (S.D. Iowa 1997), the plaintiff requested the information the defendants "rely on" for their motions and "which may support" the defendants' positions. The court found the wide-ranged requests overbroad and, thus, devoid of the requisite particularity. As in Fishel, Nitro requests information regarding all golf balls relied on and in support of Acushnet's patent and trademark claims. Because these requests contain virtually no restrictions but essentially give Nitro carte blanche to interrogate Acushnet's corporate representatives, the requests should be deemed to be overbroad and invalid.

Similarly, in Ealne Corp. v. Town of Auburn, 176 F.R.D. 433, 437 (D. Mass. 1997), the plaintiff sought "each and every document that you will use in the course of this litigation." Finding the request both overbroad and an improper request for attorney work product, the court denied the discovery. See Ealne Corp., 176 F.R.D. at 437. Nitro's sweeping requests should meet the same fate. These categories seek information about not only any and all balls used in this litigation, but also any and all balls Acushnet merely *considers* using in this litigation. Indeed, Nitro's requests are broader than the plaintiff's in Ealne Corp. Surely Nitro's virtually unlimited universe of questioning should also be denied as overbroad and an improper request for work product. See Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237 (S.D.N.Y. 2002) (scope of deposition found overbroad and insufficiently particularized where deponent would have to explain the contents of twelve documents including but not limited to the areas specified); Evans v. Allstate Ins. Co., 2003 WL 21382474 (N.D. Okla. June 13, 2003) (granting

protective order on Rule 30(b)(6) notice on grounds that it is overbroad and seeks irrelevant information).

Lastly, Nitro's Re-Notice seeks expert testimony from non-expert witnesses and before Acushnet is required to designate its testifying experts. This is improper. Rule 26(b)(4)(B) allows testimony from consulting non-testifying experts only in exceptional circumstances. One reason for the rule is to protect the important interest in allowing counsel to "obtain the expert advice they need in order to properly evaluate and present their clients' position without fear that every consultation with an expert may yield grist for the adversary's mill." Rubel v. Eli Lilly & Co., 160 F.R.D. 458, 460 (S.D.N.Y. 1995); see also, FMC Corp. v. Ven'do Co., 196 F. Supp.2d 1023, 1043 (E.D. Cal. 2002). In other words, the rule aims to "prevent a party from building his case on the diligent preparation of his adversary." In re Shell Oil Refinery, 132 F.R.D. 437, 440 (E.D. La. 1990).

Rule 26(a)(2)(A) requires a party to disclose to other parties the identity of any person who may testify as an expert witness at trial. Importantly, "discovery is limited to trial witnesses, and may be obtained only at a time when the parties know who their expert will be." In re Shell Oil, 132 F.R.D. at 440. See also S.D. Fla. Local R. 26.1.F(1)(b) ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial. The deposition shall not be conducted until after the expert summary or report required by Local Rule 16.1.K. is provided.")

Nitro's six categories invade the province of expert testimony prematurely, as Acushnet is not required to disclose its testifying expert witnesses until July 7, 2003. The expert witnesses' consideration of and reliance on certain golf balls and recommendations to

*IN RE NITRO LEISURE PRODUCTS, L.L.C.*
*CONS. CASE NO. 02-14008-CIV-MIDDLEBROOKS*

Acushnet's counsel comprise expert opinions. See <u>Moore USA, Inc. v. Standard Register Co.</u>, 206 F.R.D. 72 (W.D.N.Y. 2001) (protecting from discovery information regarding party's reliance on certain technology as advised by party's expert unless and until party designates expert as testifying expert). If the experts who formed these opinions and made these strategic choices of evidence for Acushnet's case will testify at trial, Nitro will be entitled to depose those experts when Acushnet discloses that information in its expert report in accordance with Rule 26(b)(4). Nitro should solicit these opinions from Acushnet's testifying experts at the time of their designation.

WHEREFORE, Acushnet respectfully requests the Court to enter a Protective Order precluding Nitro from questioning Acushnet's corporate representative on vast and unlimited topics, work product information, and issues properly reserved for expert testimony at the time Acushnet designates its testifying expert witnesses.

## CERTIFICATE OF COUNSEL

The undersigned certified that he has conferred with opposing counsel in an effort to work this matter out absent court intervention, to no avail.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by Facsimile and U.S. Mail this _____ day of June, 2003, to

Gerald F. Richman, Esquire
Gary S. Betensky, Esquire
Richman Greer Weil Braumbaugh Mirabito &
Christensen, P.A.
*Attorneys for Nitro*
250 Australian Avenue S., Suite 1504
West Palm Beach, FL 33401

Mark W. Yocca, Esquire
Yocca Patch & Yocca LLP
*Attorneys for Nitro*
19900 Mac Arthur Boulevard
Suite 650
Irvine, CA 92612

*IN RE NITRO LEISURE PRODUCTS, L.L.C.*
*CONS. CASE NO. 02-14008-CIV-MIDDLEBROOKS*

CARLTON FIELDS, P.A.
4000 Bank of America Tower
100 SE Second Street
Miami, FL 33131-9101
Telephone:     (305) 530-0050
Facsimile:     (305) 530-0055

By: /s/ *signature*
STEVEN J. BRODIE
Florida Bar No. 333069
*sbrodie@carltonfields.com*
JEFFREY MICHAEL COHEN
Florida Bar No. 091495
*jmcohen@carltonfields.com*
MICHELLE GERVAIS
Florida Bar No. 173827
*mgervais@carltonfields.com*
and
ROBERT CIOTTI
Florida Bar No. 333141
*rciotti@carltonfields.com*
Carlton Fields, P.A.
One Harbour Place
777 S. Harbour Island Blvd.
Tampa, FL 33602-5730
Telephone:     (813) 223-7000
Facsimile:     (813) 229-4133

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS

**IN RE NITRO LEISURE PRODUCTS, L.L.C.**
_____/

**ORDER ON ACUSHNET'S MOTION FOR PROTECTIVE ORDER
AGAINST NITRO'S RE-NOTICE OF SECOND VIDEOTAPED
DEPOSITION OF ACUSHNET'S CORPORATE REPRESENTATIVE
AND INCORPORATED MEMORANDUM OF LAW**

THIS CAUSE came before the Court upon the Acushnet Company's Motion for Protective Order Against Nitro's Re-Notice of Second Videotaped Deposition of Acushnet's Corporate Representative; and

This Court having reviewed the Motion and being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that the Motion is **GRANTED.**:

**DONE AND ORDERED** in West Palm Beach, Palm Beach County, Florida this _____ day of July, 2003.

_____
U.S. DISTRICT COURT JUDGE

Copies furnished to:

Jeffrey Michael Cohen and Steven J. Brodie, Carlton Fields, P.A.; *Attorneys for Acushnet;* 100 S.E. Second Street, Suite 4000; Miami, FL 33131; Chris S. Coutroulis and Robert L. Ciotti; Carlton Fields, P.A.; *Attorneys for Acushnet;* 777 S. Harbour Island Boulevard; Tampa, FL 33602-5730; Gerald F. Richman and Gary S. Betensky; Richman Greer Weil Brumbaugh Mirabito & Christensen, P.A.; *Attorneys for Nitro;* 250 Australian Avenue, Suite 1504; West Palm Beach, FL 33401; Mark W. Yocca; Yocca Patch & Yocca LLP; *Attorneys for Nitro;* 19900 Mac Arthur Boulevard, Suite 650; Irvine, CA 92612.