UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 02-14008-CIV-MIDDLEBROOKS/LYNCH

IN RE: NITRO LEISURE PRODUCTS, LLC



NOTICE OF FILING ORIGINAL DECLARATION OF RICHARD J. GALES
IN SUPPORT OF NITRO'S MOTION FOR SUMMARY JUDGMENT

Nitro Leisure Products, LLC, by and through its undersigned counsel, hereby files the original Declaration of Richard J. Gales in support of Nitro's Motion for Summary Judgment.

CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the Notice of Filing Original Declaration was sent via ~~Electronic Mail and~~ U.S. Mail this 6th day of November, 2003 to: Robert L. Ciotti, Esquire, Carlton Fields, P.A., One Harbour Place, 777 South Harbour Island Boulevard Tampa, FL 33602-5730 and Steven J. Brodie, Esquire, Carlton Fields, P.A., 100 S.E. Second Street, Suite 4000, Miami, FL 33131.

RICHMAN GREER WEIL BRUMBAUGH
MIRABITO & CHRISTENSEN, P.A.
One Clearlake Centre – Suite 1504
250 Australian Avenue, South
West Palm Beach, FL 33401
Tel: (561) 803-3500
Fax: (561) 820-1608

By: _____
GERALD F. RICHMAN
Florida Bar No. 066457
grichman@richmangreer.com
GARY S. BETENSKY
Florida Bar No. 434302
gbetensky@richmangreer.com
DONALL O'CARROLL
Florida Bar No. 0107816
docarroll@richmangreer.com

and

MARK YOCCA, ESQUIRE



*In Re: Nitro Leisure Products, LLC*
Case No. 02-14008-CIV-MIDDLEBROOKS/LYNCH
Notice of Filing Declaration

myocca@ypylaw.com
RYAN M. PATCH, ESQUIRE
rpatch@ypylaw.com
PAUL KIM, ESQUIRE
pkim@ypylaw.com
YOCCA PATCH & YOCCA, LLP
19900 MacArthur Blvd., Suite 650
Irvine, CA 92612
Tel: (949) 253-0800
Fax: (949) 253-0870

i:\litig\6984-1\pleadings\not. of filing declaration of richard j. gales.doc

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 02-14008-CIV-MIDDLEBROOKS

IN RE: NITRO LEISURE PRODUCTS, L.L.C.

_____/

DECLARATION OF RICHARD J. GALES IN SUPPORT OF
NITRO'S MOTION FOR SUMMARY JUDGMENT

I, Richard J. Gales, hereby declare as follows:

1. I worked for Spalding Sports World Wide from 1974-1992. During that time I held technical positions where I developed, performed, or supervised others performing methods for manufacturing golf balls and management positions where I ran golf ball manufacturing operations.

2. As early as 1980, Glebar Company Inc. ground golf balls to a diameter of approximately 1.580 inches for Spalding, over which new covers with dimples were applied. Glebar ground golf balls to remove an exterior portion of the cover all around the golf ball. This grinding was performed by Glebar for Spalding beginning in 1980 and continuing for multiple years. The golf balls that were ground (the "original golf balls") were new golf balls that were approximately 1.680 inches in diameter, meeting USGA regulations, with a core and a cover (i.e., two-piece golf balls) and with dimples and indicia. Glebar was informed by Spalding that the covers were about 0.04 to 0.09 inches thick. Glebar ground an exterior amount of the cover off the golf balls for Spalding until they were $1.580 \pm 0.003$ inches in diameter. This removed the entire exterior surface until the diameter reached 1.58 inches, and removed any dimples and indicia on the original golf ball. Because the cover was on the exterior of the original golf ball, grinding off the exterior portion necessarily reduced the thickness of the cover to a second

WDC99 830583-1 051998.0073

thickness that was less than the original thickness. After grinding, Glebar returned the ground golf balls to Spalding. Glebar ground these golf balls because there were defects in the original covers and so that Spalding could re-cover the golf balls by adding material with dimples all over the surface of the portion of the golf balls remaining after the grinding.

3. At least as early as 1980, I supervised the grinding of golf balls at Spalding to a diameter of approximately 1.580 inches, over which covers with dimples were applied. Spalding ground golf balls to remove an exterior portion of the cover all around the golf ball. This grinding continued for multiple years. Spalding ground new golf balls that were approximately 1.680 inches in diameter, meeting USGA regulations, with a core and a cover (i.e., two-piece golf balls) and with dimples and indicia. Spalding had originally manufactured these golf balls with covers that were about 0.04 to 0.09 inches thick. Spalding knew the thickness of the covers because that was the thickness set by Spalding's manufacturing process. Spalding ground the exterior of the cover off the golf balls until they were $1.580 \pm 0.003$ inches in diameter. Because the cover constituted the exterior of the original golf ball, grinding the golf ball reduced the thickness of the cover. After grinding, the golf balls had no dimples or indicia. Spalding ground these golf balls so that it could then add a new cover with dimples, and subsequently add indicia.

4. Further, Spalding re-covered golf balls as early as 1980. As early as 1980, I was aware that Spalding received from Glebar the ground golf balls having diameters of $1.580 \pm 0.003$ inches. At Spalding, I supervised the adding of new covers to the golf balls ground by Glebar and Spalding. The covers included dimples and the material added to make the covers had a thickness substantially equal to the thickness of the material removed by grinding. The material was added by injection molding the material to the surface of the portion of the golf ball remaining after the grinding. After adding the material, the golf ball had a diameter that was

substantially equal to the diameter of the original golf ball before grinding, which was approximately 1.680 inches. The resulting golf balls were then sold to the public.

I declare under penalty of perjury of the laws of the State of Florida and of the United States that the foregoing is true and correct to the best of my knowledge, information and belief. Executed at  WASHINGTON   D.C.,  , this 22 day of October, 2003.

_____
Richard J. Gales