UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED by _____ D.C.
NOV 07 2003
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

CASE NO.: 02-14008-CIV-MIDDLEBROOKS

IN RE: NITRO LEISURE PRODUCTS, LLC
_____/

OPPOSITION OF PLAINTIFF NITRO LEISURE
PRODUCTS, LLC TO ACUSHNET
COMPANY'S MOTION TO BIFURCATE

Plaintiff and Counterdefendant Nitro Leisure Products, LLC ("Nitro") respectfully submits this Memorandum of Law in opposition to the motion of Acushnet Company ("Acushnet") to bifurcate. For the reasons discussed more fully below, Acushnet's motion should be denied. First, "separation of issues for trial is not to be routinely ordered," Fed. R. Civ. P. 42(b), 1966 advisory committee note, and Acushnet has failed to meet its burden of proving that bifurcation will both promote judicial economy and not prejudice Nitro. Second, the patent, trademark, and antitrust claims in the present case are so interwoven as to preclude effective separation. Third, Nitro's complaint mostly presents "'pure' Sherman Act claims" and only in small part involves "'patent type antitrust' claims." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986). Accordingly, the rationale underlying *Innotron* and its progeny are factually inapposite to the instant case.

Nitro\Acushnet\Pleadings03 1030 Opp Bifurcate.wpd



## PRELIMINARY STATEMENT

Nitro originally filed this action against Acushnet in the Southern District of Florida for violations of the Lanham Act (15 U.S.C. §1051 *et seq.*), the Sherman Act (15 U.S.C. §2) and Florida common law ("Florida Action"). The gravamen of Nitro's complaint is that Acushnet sought to destroy its used golf ball business by engaging in false advertising, product disparagement and unfair competition and by attempting to eliminate Nitro as a competitor. Nitro's anti-trust claims are based, only in part, on Acushnet's improper conduct concerning its alleged intellectual property rights.

Despite Nitro's pending lawsuit in this forum, Acushnet filed its own action in the Central District of California ("California Action") for trademark and patent infringement. Over Acushnet's opposition, the California Action was transferred to Florida. On April 30, 2002, this Court *sua sponte* entered a Consolidation Order consolidating the two actions. Acushnet did not seek a reconsideration of that order or otherwise challenge that determination for 18 months. Now, however, after discovery has closed and the parties have already started their trial preparation, Acushnet brings a motion to bifurcate demanding that the Counterclaimant's patent and trademark claims be tried before the Plaintiff's antitrust and tort claims.

In essence, Acushnet's motion proceeds on the assumption that it will prevail on its infringement issues and thereby "moot portions of the antitrust claims." Not surprisingly, therefore, the moving papers studiously ignore the long procedural history in this case. In

denying Acushnet's motion for a preliminary injunction on August 9, 2003, this Court held that Acushnet had not met its burden of demonstrating a substantial likelihood of success on either its trademark or patent claims. That Order was affirmed by the Federal Circuit in an opinion expressly holding that "the district court did not abuse its discretion in denying Acushnet's motion in view of Acushnet's failure to show a reasonable likelihood of success on the merits." *Nitro Leisure Products, L.L.C. v. Acushnet Company*, 341 F.3d 1356, 1357 (Fed. Cir. 2003). In its moving papers, Acushnet has not offered even a scintilla of additional evidence which would dictate a contrary result now. Based thereon, at least at this juncture, it appears more probable that Acushnet will **not** be able to prevail on its infringement claims at the time of trial. Therefore, bifurcation would in no way shorten the trial proceedings. It would only lengthen them, thereby causing additional expense and delay to Plaintiff. Moreover, even if Acushnet were to be successful on its infringement claims, Plaintiff still could proceed on the majority of its affirmative claims, including its antitrust claims. Accordingly, bifurcation will not preserve judicial resources; to the contrary, bifurcation will create the necessity of two separate trials that potentially will include duplicative testimony and evidence from the same witnesses, thus creating unnecessary burden and expense to the judicial system and the parties.

## ARGUMENT

### POINT I

### ACUSHNET FAILS TO MEET ITS BURDEN OF SHOWING THAT BIFURCATION WILL RESULT IN JUDICIAL ECONOMY AND NOT UNDULY PREJUDICE ANY PARTY

"Severance is a 'procedural device to be employed only in exceptional circumstances.'" *Hatfield v. Herz*, 9 F. Supp. 2d 368, 373 (S.D.N.Y. 1998); *See also Marisol A. v. Giuliani*, 929 F. Supp. 662, 693 (S.D.N.Y. 1996). Motions to separate "'are to be granted by the court on a case-by-case basis only when the separation will result in judicial economy and will not unduly prejudice any party.'" *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992)(citations omitted).  As the party seeking bifurcation, Acushnet has the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Accord, Lowe v. Philadelphia Newspapers, Inc.*, 594 F. Supp. 123, 125 (E.D. Pa. 1984). That burden has not been met here.

### A. BIFURCATION WILL NOT RESULT IN JUDICIAL ECONOMY AS THERE IS A SUBSTANTIAL OVERLAP OF ISSUES AND WITNESSES ON THE TRADEMARK, PATENT AND ANTITRUST ISSUES

"[S]eparation of issues for trial is not to be routinely ordered." Fed. R. Civ. P. 42(b), 1966 advisory committee note. To the contrary, the general principle is that a single trial

tends to lessen the delay, expense and inconvenience to all parties, and the burden of overcoming this presumption is on the party seeking bifurcation. *Lowe*, 594 F. Supp. at 125.

"[A]n overlapping of issues is significant to the decision whether to bifurcate." *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1434 (D. Del. 1989), *cited with approval in Spectra-Physics Lasers*, 144 F.R.D. at 101. Where, as here, the issues concerned are too tightly interwoven to be tried separately, bifurcation should be denied. "[T]he anticipated overlapping of evidence on all issues counsels toward a unified trial particularly since no real prejudice will inure to any of the parties." *Genentech Inc. v. The Wellcome Foundation Ltd.*, 14 U.S.P.Q.2d 1363, 1373 (D Del. 1990)(determining that it would be "inappropriate" to bifurcate the Defendant's antitrust claims from the Plaintiff's patent suit.").

*Light v. Allstate Insurance Co.*, 182 F.R.D. 210 (S.D. W. Vir. 1998), addresses a similar situation in which the claims raised in the Complaint and Counterclaims were likewise inextricably intertwined. The Lights sued their automobile insurer, Allstate, after it denied their claim for underinsured motorist benefits. The Lights had previously settled with the negligent driver and owner of the other motor vehicle, the Kellers, for the full policy limits of the Kellers' policy with State Farm. The Lights' complaint stated separate claims against Allstate for breach of contract and for "unfair settlement practices" under state law. In response, Allstate asserted that it was the Lights who breached the insurance policy by settling with State Farm and thereby prejudicing its subrogation rights against the Kellers.

Allstate then moved to bifurcate the contract and unfair settlement practices claims. The district court found that the "analysis and interpretation of the insurance contract and its term as well as inquiry into Allstate's practice of claim review constitute the focal point of both causes of action" and denied the motion. *Id.* at 212.

> The Court is . . . unpersuaded by Allstate's argument that bifurcation fosters judicial economy and convenience. Bifurcation might prove economical should Allstate win on the contract issue, but if Allstate does not prevail, the Court is faced with two voir dires, two phases of discovery and another round of seemingly endless motion filing and responses, all in addition to two separate trials. This can be very expensive and no doubt time consuming for all those involved. Therefore, this Court finds that judicial economy weighs on the side of a unitary trial.
>
> . . . Furthermore, evidence presented concerning the breach of contract claim is very likely to overlap with evidence introduced on the bad faith claim. For example, tortious bad faith claim involves a determination of whether Allstate had a reasonable basis for denying coverage. The evidence used to support that issue would be relevant to determine whether Allstate owed coverage.

In the instant case, Plaintiff's affirmative claims principally rest on allegations that Acushnet disparaged Plaintiff's products, interfered with Plaintiff's business relationships and engaged in a pattern of anti-competitive conduct in the marketplace. Plaintiff, however,

also contends that Acushnet's abuse of its intellectual property rights serves as further evidence of Acushnet's anti-competitive conduct. These same facts serve as the basis for certain of the defenses to Acushnet's infringement claims. Because of these areas of overlap, bifurcation is especially inappropriate.

The Lanham Act provides that plaintiff's use of its trademark to violate the antitrust laws is a defense to a trademark infringement claim. 15 U.S.C. § 1115(b)(7); *accord Carl Zeiss Stiftung v. VEB Carl Zeiss, Jena,* 298 F. Supp. 1309 (S.D.N.Y. 1969); *Electrical Info. Publications, Inc. v. C-M Periodicals, Inc.,* 163 U.S.P.Q. 624 (N.D. Ill. 1969). In addition, plaintiff's unclean hands is also a defense to a trademark infringement action. *See generally* 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition,* § 31:44 (4th ed. 2003) ("There is no doubt that in an appropriate case, unclean hands can constitute a bar to some or all of the relief sought for trademark infringement or unfair competition."); *See, also, Morton Salt Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806 (1945) (misuse of patent upheld as a defense even though antitrust laws were not violated). As such, the issue of Acushnet's improper use of its alleged intellectual property rights will have to be addressed during Acushnet's infringement case and Nitro's antitrust case.
*Id.* at 213.

Here, bifurcation may *arguably* resolve some issues in this litigation **if** Acushnet should prevail on its trademark and patent infringement issues. Which is highly dubious since Acushnet was unable to do so in the preliminary injunction proceedings and the

subsequent appeal. Regardless, even if Acushnet is successful on its infringement claims, there will still be two different trials because Nitro's antitrust and tort claims are not solely based on Acushnet conduct as it relates to its intellectual property rights. If Acushnet does not prevail at trial, which it probably will not, this Court will be faced with two lengthy pre-trial conferences, four sets of proposed jury instructions, two lengthy voir dires, two separate lengthy trials and, conceivably, two separate appeals. Judicial economy clearly weighs on the side of a unitary trial.

### B. PLAINTIFF WOULD BE PREJUDICED BY A BIFURCATION OF THE PROCEEDINGS

"[U]nder the principles enunciated in *Willemijn*...prejudice 'may simply amount to unfair delay of the final disposition of the matter.'" *Spectra-Physics Lasers*, 144 F.R.D. at 101. Bifurcation of the instant action not only decreases Acushnet's incentive to settle the case prior to trial, but also impedes upon swift judicial resolution and convenience. As the court cogently observed in the *Light* case,

> With respect to the incentive to settle, bifurcation affords [the insurer], the holder of vast resources, to go forward with this...action in piecemeal fashion. [The insurer] would be allowed to first try the contract claim, and should defense of that claim prove fruitless, then and only then be faced with the bad faith claim. As articulated by the Lights, "bifurcation of these claims would

give [the insurer] two bites at the apple." In addition, once an insurance carrier is faced with defending a breach of contract and bad faith claim in the same trial, the carrier's incentive to settle before trial increases for fear of having the same jury decide both claims.

*Light*, 182 F.R.D. at 213.

The last consideration expressed above by the *Light* court also assumes constitutional dimensions in light of the express language of Fed. R. Civ. P. 42(b) which Acushnet chose to ignore in its quotation of this rule. "The court, in furtherance of convenience or to avoid prejudice. . . may order a separate trial of any claim. . . or issues, **always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.**" Fed. R. Civ. P. 42(b)(Emphasis added). "Of particular relevance here, the judge must not divide issues between two separate trials in such a way that the same issue is reexamined by different juries . . . . The right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them (provided there are no errors warranting a new trial), and not reexamined by another finder of fact." *In re Rhone-Poulenc Rorer Inc.*. 51 F.3d 1293, 1303 (7th Cir. 1995), *cert. denied,* 516 U.S. 867 (1995).

"'Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" *Beacon Theatres, Inc. v. Westover*, 359 U.S.500, 501, (1959); *Dimick v. Schiedt*, 293 U.S. 474,1935). "In cases . . . in which the parties have a constitutional or statutory right of trial by jury, separation of issues may give rise to problems. *See, e.g. United Air Lines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir. 1961)." Fed. R. Civ. P. 42, 1966 advisory committee note.

Furthermore, both Acushnet and Nitro have filed motions for summary judgment. A motion to bifurcate is premature where one or more parties intends to file a summary judgment motion. *Krueger v. New York Telephone Co.*, 163 F.R.D. 446, 448-49 (S.D.N.Y. 1995); *Contini v. Hyundai Motor Co.*, 149 F.R.D. 41, 41 (S.D.N.Y. 1993).

## POINT II

## BIFURCATION IS NOT WARRANTED WHEN "PURE" ANTITRUST CLAIMS PREDOMINATE IN THE LITIGATION

Similar to the common phenomenon of a law firm's suit for legal fees being commonly answered with a counterclaim for malpractice, so too has a counterclaim for "patent misuse" become almost obligatory in patent infringement suits. *In re Innotron Diagnostics,* 800 F.2d 1077, 1084 (Fed. Cir. 1986)("'Patent type antitrust' counterclaims are

routinely filed in response to patent infringement complaints."). It was to these "patent type antitrust" claims that *Innotron* was addressed. However, that court also impliedly recognized that bifurcation may not be appropriate when, as here, "'pure' Sherman Act claims predominate.

> It may contribute to the elucidation of the question to note that the present case involves two species of antitrust claims. One may be described as "pure" Sherman Act claims, e.g., those set forth in Innotron's original complaint. The other may be described as "patent type antitrust" claims, e.g., those set forth in Innotron's counterclaim and in the amendment of its original complaint, (e.g., enforcement of patent knowingly obtained through inequitable conduct, tie-in with the patent of unpatented products). The present petition concerns only a "patent type antitrust" counterclaim.
>
> * * *
>
> Innotron focuses here on separation of its antitrust counterclaim and not at all on separation of its original antitrust claim.

*Id.* at 1084-85.

"Pure" antitrust claims predominate here. While Acushnet proclaims that the "heart of Nitro's antitrust claims consists of the allegation that Acushnet monopolized a purported 'super-premium' golf ball market by threatening and then instituting its trademark and patent infringement claims in bad faith" (Acushnet' Mem. p.2), in truth, this charge constitutes only

one of twelve specific charges of unlawful anticompetitive conduct which Nitro alleges in paragraph 27 and 115 of its Third Amended Complaint.." For example, there are no "patent type" elements in Nitro's claims that "Acushnet has threatened Nitro's customers that if they sell Nitro's refurbished golf balls, Acushnet will cease supplying Titleist golf balls to those customers" (Third Amended Complaint ¶ 27(c)), Acushnet has engaged in artificial brand proliferation (*id.* at ¶ 115) or it entered into exclusive dealing arrangements with various vendors. (*id.*).

Another important distinction between *Innotron* and the instant case is the stage in the proceedings when the motion was brought. "The question of whether to bifurcate specific claims, affirmative defenses, or issues for hearing or trial should be raised early in the pretrial stages before discovery is launched. . . .Indeed, one of the primary purposes of bifurcation is to defer costly discovery pending resolution of preliminary issues such as liability." 8 MOORE'S FEDERAL PRACTICE § 42.23[2]-[3] (2000). In *Innotron,* for example, the severance motion was brought soon after the pleadings were closed: "Expedition is served because the patent issues on the present schedule will be ready for trial more than a year before the antitrust issues can be made ready." *Id.* at 1085. In sharp contrast, Acushnet waited until one month *after* fact discovery had *closed* before bringing its motion here.

"A party seeking bifurcation should request relief as soon as the need becomes apparent. Delay may be a factor affecting the court's exercise of discretion." 3 W. SCHWARZER, A.W. TASHIMA & J. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL

¶ 16:160.1 (2003). In the instant case, Acushnet's purported "need" should have been apparent upon its receipt of Nitro's original complaint, not two years later. In exercising its discretion, the Court should consider Acushnet's unconscionable delay and the effect it would have on Nitro having to redirect the focus of its trial preparation at this late date.

## CONCLUSION

For the reasons stated herein, Nitro respectfully submits that Acushnet's motion should be denied.

By: *[signature: Mark W. Yocca]*

**YOCCA PATCH & YOCCA LLP**

Mark W. Yocca
California State Bar No. 137189
19900 MacArthur Boulevard, Suite 650
Irvine, California 92612
Tel:   (949) 253-0800
Fax:   (949) 253-0870

**RICHMAN GREER WEIL BRUMBAUGH MIRABITO & CHRISTENSEN, P.A.**
Gerald F. Richman
Florida Bar No. 066457
Gary S. Betensky
Florida Bar No. 434302
Donall O'Carroll
Florida Bar No. 107816
One Clearlake Centre - Suite 1504
250 Australian Avenue, South
West Palm Beach, FL 33401
Tel: (561) 803-3500
Fax: (561) 820-1608
*Attorneys for Nitro Leisure Products, LLC*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served this 7th day of November 2003 by First Class Mail, postage prepaid, upon the following:

Steven J. Brodie, Esq.
Jeffrey Michael Cohen, Esq.
CARLTON FIELDS, P.A.
4000 Bank of America Tower
100 S.E. Second Street
Miami, FL 33131

Chris S. Coutroulis, Esq.
Robert Ciotti, Esq.
CARLTON FIELDS, P.A.
777 S. Harbour Island Boulevard
Tampa, Florida 33602

PAUL KIM