NIGHT BOX
FILED

JAN 8 2004

CLARENCE MADDOX
CLERK, USDC / SDFL / WPB

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 02-14008-CIV-MIDDLEBROOKS/LYNCH

IN RE: NITRO LEISURE PRODUCTS, LLC
_____/

## PLAINTIFF NITRO'S MOTION IN LIMINE NO. 3 TO EXCLUDE TESTIMONY AND REPORT OF ACUSHNET'S SURVEY EXPERT, CHARLES COWAN

Plaintiff Nitro Leisure Products, LLC ("Nitro"), by and through undersigned counsel, will and hereby does move The United States District Court for the Southern District of Florida, The Honorable Donald M. Middlebrooks District Court Judge Presiding, for an Order to strike under the Federal Rules of Evidence and *Daubert*, Acushnet's offer of a telephone survey conducted by Charles Cowan in support of its trademark claim. This motion is brought on the grounds that Mr. Cowan's telephone survey is misleading, elicits irrelevant information, and does not support his opinion.



Indeed, even Cowan himself admitted that he was unaware of a survey like the one he conducted here ever being used in a trademark case.

Dated: January 8, 2004

**YOCCA PATCH & YOCCA LLP**

By: /s/ Mark W. Yocca
Mark W. Yocca
California State Bar No. 137189
Ryan M. Patch
California State Bar No. 128042
19900 MacArthur Boulevard, Suite 650
Irvine, California 92612
Telephone:   (949) 253-0800
Facsimile:    (949) 253-0870

**RICHMAN GREER WEIL BRUMBAUGH MIRABITO & CHRISTENSEN, P.A.**
Gerald F. Richman
Florida Bar No. 066457
Gary S. Betensky
Florida Bar No. 434302
Donall O'Carroll
Florida Bar No. 107816
One Clearlake Centre - Suite 1504
250 Australian Avenue, South
West Palm Beach, FL 33401
Tel: (561) 803-3500
Fax: (561) 820-1608

*Attorneys for Nitro Leisure Products, LLC*

## MEMORANDUM OF LAW

## STATEMENT OF FACTS

### I. FACTS

#### A. Nitro and Acushnet

Nitro is in the business of selling used and refurbished golf balls. Every one of Nitro's refurbished golf balls contain a prominent and conspicuous notification: USED & REFURBISHED BY SECOND CHANCE. Moreover, Nitro's refurbished balls are sold in a package which contains additional prominent disclaimers, such as "Refurbished golf balls are not endorsed by the original manufacturer." When purchasing Nitro's refurbished golf balls from Nitro's website, there are additional disclaimers further informing the consumer that Acushnet is not associated and/or affiliated in any way with Nitro's refurbished golf balls. Nitro's refurbished balls are sold for a fraction of the price of new golf balls.

Acushnet has alleged claims for trademark infringement, false designation of origin, counterfeiting and unfair competition based on Nitro's sale of refurbished Titleist golf balls. Acushnet claims that Nitro's re-stamping of the original markings on the refurbished golf balls causes a likelihood of confusion as to whether Acushnet endorses or approves Nitro's refurbished balls.

#### B. The Cowan Survey

Acushnet has offered a survey of Charles Cowan ("Cowan") in support of its trademark claims. (Exhibit A, Charles C. Cowan Report.) Cowan's survey was

conducted in person. Instead, it was conducted by telephone. (Id. at 3.) Persons over the age of 21 and who had played golf within the past five years were qualified for the survey. (Id.) Respondents were asked a series of questions regarding "the results of a research study about golf balls." (*Id.*; survey screener at Acushnet Doc. Nos. 137458-64; Ex. B., Cowan Dep. at 42 ("The telephone survey that I conducted had to do with people's reactions to being presented information about differences from an experiment.").) The "research study" that was described was Acushnet's expert, Mr. Felker's study in this case. (Cowan Report at 4-5.)

> The following statement was read to each Respondent:
>
> I'd like to describe the results of a research study about golf balls and ask for your opinion. Three varieties of golf balls were tested using a machine – a mechanical golfer – to hit the golf balls. The test used a machine so that the balls would be hit with a driver off a tee. The machine hit each ball the same way with the same effort each time. All balls were made by the same manufacturer and were all the same type of ball. The only difference between the balls was that some were new, some were used and washed, and some were used and refurbished. Washed balls are pond balls that have been washed and repackaged to be sold. Refurbished ball are pond balls that have been stripped of the paint coating and then repainted and remarked with the original manufacturer's name. Several hundred golf balls overall were tested." (Id. At 3.)

Respondents were then asked to predict how the washed balls and refurbished balls would perform under these research conditions. (Id. 4.) First, Respondents were asked "Would you expect that there would be a difference in performance between the washed balls and the refurbished golf balls?" (Id. & survey questionnaire at Acushnet Doc. No. 137462. ) Respondents were then asked "Which would you expect to perform better, washed or refurbished golf balls." (Survey Questionnaire at Acushnet Doc. No. 137463.)

Finally, Respondents were asked to react to two specific outcomes of the Felker test. (Id.) Respondents were told: "In the final two questions I would like you to focus on the differences between the performance of the washed and the refurbished golf balls." (Id.) Respondents were then asked:

> In the test I described earlier, the new balls went 4 yards further than the washed balls. In the same test the new balls went 11 yards further than the refurbished balls. In comparing the washed with the refurbished balls, would you say that the performance of the refurbished balls is
>
> (a) much better than I would have expected
> (b) somewhat better
> (c) about what I would have expected
> (d) somewhat worse
> (e) much worse than I would have expected (Id.)

The last question in the survey was as follows:

> In the test, the distance the balls traveled was one measurement. In addition, the test measured how much dispersion or scatter there was in the path of the balls. In other words, if each ball was hit in exactly the same way, you might expect that they would land in about the same spot. The test measured how much they went to one side or the other from a straight line that was the average path.
>
> In the test that I described earlier, there was no difference in the side to side dispersion between new and washed balls. In the same test, refurbished balls had a scatter that was 3 yards greater than the washed balls. In comparing the washed balls with the refurbished balls, would you say that the performance of the refurbished balls is
>
> (a) much better than I would have expected
> (b) somewhat better
> (c) about what I would have expected
> (d) somewhat worse
> (e) much worse than I would have expected. (Id.)

In addition to the fact that Cowan's survey is based on the false and prejudicial Felker tests, Cowan's survey did not provide respondents with critical information

concerning Felker's tests. Respondents were not told that the washed and refurbished balls were processed by a company *other than* the original manufacturer. (Survey Questionnaire, Acushnet Doc. Nos. 137462-63.) In fact, the questionnaire expressly suggests that the balls were processed by the original manufacturer. (See id. at 137462 ("All balls were made by the same manufacturer and were all the same type of ball. The only difference between the balls was that some were new, some were used and washed and some were used and refurbished." (emphasis added).)

Based on the survey results, Cowan opines that "a large portion of the population has an expectation that the refurbished balls will outperform used balls. " (Cowan Report At 5.) For the reasons that follow, the Court should preclude Acushnet from offering any testimony from Dr. Cowan regarding his telephone survey and should strike his expert report.

## II.  ARGUMENT

### A.  Standards For The Admission of Expert Testimony

The purpose of expert testimony is to assist the trier of fact with issues that are not within common knowledge. Fed. R. Evid. 702. Rule 702 provides that expert testimony is admissible only if: "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied principles and methodology reliably to the facts of the case." *See also Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 591 (1993). Before accepting testimony and an

opinion of an expert, the court must determine that the opinion is both relevant and based on sound reliable theory. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The court's "gatekeeper" role is essential because "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. "Expert testimony with a greater potential to mislead than to aid the jury should be excluded." *Virginia Vermiculite, Ltd. V. W.R. Grace & Co.-Conn. & The Historic Green Springs, Inc.*, 98 F. Supp.2d 729, 735 (W.D. Va. 2000) (excluding expert report where it was unreliable due to flaws in methodology); *United States v. Dorsey*, 45 F.3d 809, 815-16 (4th Cir. 1995).

In assessing whether to admit expert testimony, the court must determine whether that testimony "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. If the expert's opinion is not tied to the facts of the case, it is not relevant and cannot aid the jury. *Id.* "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Trademark surveys are routinely excluded under *Daubert* and Federal Rule of Evidence 403 if they are not sufficiently tied to the facts of the case. "The court need not and should not respond reflexively to every criticism by saying that it merely goes to the weight of the survey rather than to it admissibility. If the flaws in the proposed survey are too great, the court may find that the probative value of the survey is substantially outweighed by the prejudice, waste of time and confusion that it will cause at trial."

*Simon Property Group, L.P. v. mySimon, Inc.*, 104 F. Supp.2d 1033, 1040 (S.D. Ind. 2000). That is especially true where, as here, the case is to be decided by jury as opposed to the court. *See, e.g., id.* ("The court has a responsibility to jurors not to waste their time or to make their task unduly difficult by admitting evidence that is likely to be complex and time-consuming, as this survey evidence would be, when it offers essentially nothing of real probative value.").

### B. Cowan's Survey Elicits Irrelevant Information And Does Not Support His Expert Opinion

Cowan's survey elicits information concerning golfers' predictions about "the results of a research study involving golf balls." (Cowan Expert Report at 3-5; Cowan Dep. at 42 ("The telephone survey that I conducted had to do with people's reactions to being presented information about differences from an experiment.")). But that information has nothing to do with this case. This case involves whether Nitro's refurbishing process so changes the used Titleist ball that it is a "misnomer" to reaffix the Titleist name. *Nitro v. Acushnet*, 341 F.3d 1356, 1363 (Fed. Cir. 2003). To answer that question, this Court properly considered:

> the nature and extent of the alterations, the nature of the device and how it is designed, whether a market has developed for service or spare parts and, most importantly, whether end users of the product are likely to be mislead as to the party responsible for the composition of the product. *Id.* at 1364.

Cowan's survey bears on none of these factors or any other relevant factor. The fact that some Respondents guessed that a refurbished ball would perform better than a washed ball in a "research study" involving a "mechanical robot" does not shed light on

whether a refurbished ball performs as expected under marketplace conditions, i.e., when struck with a golf club by a human being. *See, e.g., J & J SNACK FOODS, CORP. v. EARTHGRAINS CO.,* 220 F. Supp.2d 358 (D. N.J. 2002) (striking trademark survey -- "Above all, the survey's design must fit the issue which is to be decided by the jury, and not some inaccurate restatement of the issue, lest the survey findings inject confusion or inappropriate definitions into evidence, confounding rather than assisting the jury."); *Coherent Inc. v. Coherent Techs., Inc.*, 935 F.2d 1122, 1126 (10th Cir. 1991) (rejecting trademark survey because it elicited information on an irrelevant inquiry).

In fact, Cowan admits that his survey has nothing to do with "golfers' expectations after playing a Nitro golf ball," (Cowan Dep. at 45), and that his survey did not replicate marketplace conditions because it was not important, (Cowan Dep. at 190). *See, e.g., Sears, Roebuck & Co. v. Menard, Inc.*, 2003 U.S. Dist. LEXIS 951 (N.D. Ill. 2003) (striking trademark survey on motion in limine because it "distorted marketplace conditions"). *See generally Calvin Klein Cosmetics Corp. v. Lenox Labs, Inc.*, 815 F.2d 500, 504 (8th Cir. 1987) ("A realistic evaluation of consumer confusion must attempt to recreate the conditions in which buying decisions are made, and the court should try to determine . . . what a reasonable purchaser in market conditions would do."). Cowan also concedes that his survey provides no guidance on whether golfers expect that refurbished golf balls will "measure up to and perform at the same level as if new," *Nitro,* 341 F.3d at 1362, or whether consumers "expect differences in the [refurbished golf ball] compared to new and unused [golf balls]," *id.* (Cowan Dep. at 150-51). Moreover, the

survey results do not even support Cowan's own opinion that golfers expect that refurbished balls will perform better than recycled balls. (*See* Cowan Report at 5.) Respondents may have many expectations or beliefs about how a golf ball will perform when struck by a mechanical golfer in a controlled research environment, but Cowan is unable to provide any evidence that those expectations about a mechanical golfer correlate in any way to a golfers' expectations about a golf ball's performance under marketplace conditions. *See General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (opinion that is connected to data only by ipse dixit of expert is inadmissible).

Not surprisingly, Cowan admitted that he was unaware of a survey like the one he conducted here ever being used in a trademark case. (Cowan Dep. Tr. At 166.)

### C.  Cowan's Survey Is Misleading

Cowan's survey also is misleading because it suggests false facts about Felker's study. Cowan's survey does not inform respondents that the refurbished golf balls were processed by a company *other* than the original manufacturer. (Survey Questionnaire, Acushnet Doc. Nos. 137462-63.) Instead, Cowan's survey lead respondents to believe that the original manufacturer did process the refurbished golf balls referred to in the "research study." (Survey Questionnaire, Acushnet Doc. No. 137463 ("All balls were made by the same manufacturer and were all the same type of ball. The only difference between the balls was that some were new, some were used and washed and some were used and refurbished." (emphasis added).) If respondents believed that the original

manufacturer had done the refurbishing, respondents may have believed that the original manufacturer's refurbishing brought the refurbished balls back to a higher level of performance than a recycled golf ball. *See, e.g., Sears, Roebuck & Co. v. Menard, Inc.*, 2003 U.S. Dist. LEXIS 951 (N.D. Ill. 2003) (striking trademark survey on motion in limine because the survey stimulus "distorted marketplace conditions" by removing "important cues regarding affiliation or lack of affiliation between the parties"); *Simon Property Group, L.P. v. mySimon, Inc.*, 104 F. Supp.2d 1033, 1040 (S.D. Ind. 2000) (proposed survey in trademark case inadmissible because it "distorts marketplace experience" by "removing" information that may eliminate consumer confusion -- "the obvious effect of these distortions would be to exaggerate any confusion that might be detected, which thoroughly undermines the reliability of the surveys.").

## IV. CONCLUSION

For the foregoing reasons, Nitro respectfully requests that the Court exclude the testimony and report of Charles Cowan as they relate to Cowan's telephone survey.

Dated: January 8, 2004          **YOCCA PATCH & YOCCA LLP**

*[signature]*
FBN 010786
ATTORNEY OF RECORD

By: _/s/ Mark W. Yocca_
Mark W. Yocca
California State Bar No. 137189
Ryan M. Patch
California State Bar No. 128042
19900 MacArthur Boulevard, Suite 650
Irvine, California 92612
Telephone:   (949) 253-0800
Facsimile:   (949) 253-0870

**RICHMAN GREER WEIL BRUMBAUGH MIRABITO & CHRISTENSEN, P.A.**
Gerald F. Richman
Florida Bar No. 066457
Gary S. Betensky
Florida Bar No. 434302
Donall O'Carroll
Florida Bar No. 107816
One Clearlake Centre - Suite 1504
250 Australian Avenue, South
West Palm Beach, FL 33401
Tel: (561) 803-3500
Fax: (561) 820-1608

*Attorneys for Nitro Leisure Products, LLC*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served this 8th day of January 2004 by U.S. Mail and Facsimile upon the following:

Chris S. Coutroulis, Esq.
CARLTON FIELDS, P.A.
777 S. Harbour Island Boulevard
Tampa, Florida 33602-5730
ccoutroulis@carltonfields.com
Facsimile 813-229-4133

_____
MARK W. YOCCA